UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 05-10057-RCL |
| ) | |
| ABDUL RAZZAQUE AHMED ) | |
| ) | |
| Defendant ) | |

## MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION TO DISQUALIFY RICHARD M. EGBERT, ESQ., AS TRIAL COUNSEL

Defendant's counsel, Richard M. Egbert, Esq., is a potential Government witness in the upcoming trial of this matter. Documents provided by Attorney Egbert to the United States on behalf of defendant Abdul Razzaque Ahmed, as well as contemporaneous statements made on defendant Ahmed's behalf by Attorney Egbert during the investigation, are at the heart of Count Twenty-Two of the Indictment, which charges defendant Ahmed with obstruction of a criminal investigation into a health care fraud offense. In pertinent part, that Count alleges that on or about October 25, 2001, defendant Ahmed sought to obstruct an ongoing investigation of a Federal health care offense "by causing false documents to be prepared and produced, *through his retained defense counsel*," to representatives of the United States who were investigating his Medicare billings. Count Twenty-Two, Indictment, ¶ 40 (emphasis added). Attorney Egbert was the "retained defense counsel" referenced in this Count. Because Attorney Egbert's conduct and statements are at issue, Attorney Egbert cannot, consistent with his ethical obligations and with the due administration of justice, both represent defendant Ahmed and be a witness for the Government.

Cognizant of defendant Ahmed's qualified right to be represented by counsel of his choice, the United States has, on multiple occasions, suggested to defense counsel that it would consider entering into a stipulation of facts that might obviate the need to call counsel as a witness. Unfortunately, those suggestions have neither been responded to nor acknowledged. Accordingly, the United States has, at this time, no available alternative but to seek counsel's disqualification.

## I. FACTUAL BACKGROUND

A.    The Indictment's Allegations

On March 15, 2005, the grand jury returned an Indictment charging defendant Ahmed, a physician who established and operated a medical practice under the name "Center For Blistering Diseases," with a variety of criminal offenses, including, *inter alia,* mail fraud, health care fraud, money laundering, and obstruction of justice. At the heart of the Indictment is a scheme to defraud the Medicare program with respect to certain patients who were suffering from a blistering skin disease known as pemphigoid. The Indictment charged that defendant Ahmed concocted a scheme in which he falsely represented that certain patients, who were in fact suffering from pemphigoid, were also suffering from a different rare blistering skin disease known as pemphigus vulgaris ("pemphigus").[1] The Indictment explained that defendant Ahmed enacted this scheme and made false "dual-diagnoses" in which he misrepresented these patients'

---

[1] Pemphigus and pemphigoid are two separate and distinct autoimmune blistering skin diseases. Indictment, ¶ 7. Pemphigus attacks the body's immune system by sending antibodies to attack inter-cellular cement, the mortar holding the cells of the skin place and can be fatal. *Id.*, ¶ 8. In contrast, pemphigoid is generally not a fatal disease, and attacks the foundation of the skin known as the basement membrane zone. *Id.*, ¶ 9. Both diseases can generally be diagnosed by biopsies of tissue or by laboratory analysis of blood sera.. *Id.*, ¶ 10.

2

diagnoses, because during the relevant period, Medicare allowed reimbursement for extremely expensive intravenous immunoglobulin ("IVIG") treatments for patients suffering from pemphigus, but did not allow for similar reimbursements for those patients suffering from pemphigoid. *See* Indictment, ¶ 14. The Indictment charged defendant Ahmed with fraudulently billing Medicare over $5 million for IVIG treatments for patients who only suffered from pemphigoid and did not have pemphigus. *See generally* Indictment, ¶¶ 20-31.

The grand jury alleged that, to cover up his fraudulent billing scheme and further his continued receipt of Medicare funds for these patients, defendant Ahmed created false documents and bogus Immunopathology Reports that falsely reflected that his pemphigoid patients also were suffering from pemphigus. Indictment ¶ 28. The grand jury further charged that, as part of his scheme and to further justify his false Medicare billings with respect to his pemphigoid patients, defendant Ahmed mixed the blood sera of one or more of his patients suffering from pemphigus with the blood sera of certain patients suffering from only pemphigoid and then sent vials of the mixed blood to a testing laboratory, thereby causing that testing laboratory to issue test results revealing the presence of pemphigus with respect to patients who were, in fact, suffering only from pemphigoid. Indictment, ¶¶ 29-30.

Counts Twenty-One and Twenty-Two of the Indictment alleged that defendant Ahmed sought to obstruct the investigation into his Medicare billing activities. Count Twenty-One charged that, upon learning of the investigation by the United States into his Medicare billings, defendant Ahmed sought to obstruct justice by falsifying written documents pertaining to those patients who had received IVIG treatments but suffered only from pemphigoid, so as to make it appear that they were also suffering from pemphigus. *See* Count Twenty-One, Indictment, ¶¶ 37-

38. Defendant Ahmed then caused those false documents to be produced to representatives of the United States who were investigating his Medicare billing practices. *Id.*, ¶ 38.

Count Twenty-Two of the Indictment charged that defendant Ahmed further sought to obstruct the ongoing investigation into his billing practices by causing other false documents to be prepared that incorporated the fraudulent test results that had been previously obtained from the mixing of the blood sera samples of pemphigoid patients with the blood sera of patients suffering from pemphigus. *Id.*, ¶ 40. According to the Indictment, on or about October 25, 2001, defendant Ahmed caused these false documents to be produced "*through his retained counsel*" to representatives of the United States who were conducting the investigation. *Id.* (emphasis added).

It is this Count that presents the conflict involving Richard M. Egbert, Esq. Attorney Egbert was the "retained counsel" for defendant Ahmed, who on October 25, 2001, produced the false documents discussed in Count Twenty-Two. *See* Declaration of Assistant U.S. Attorney James E. Arnold (hereafter "Arnold Declaration"), ¶¶ 6-8; Exhibit B to Arnold Declaration (Memorandum of Meeting with Attorney Egbert and Attorney Sparks 10/25/01). As reflected in Exhibit B, Attorney Egbert met with representatives of the United States, presented the documents in question, *see, e.g.,* Exhibit C to Arnold Declaration, and had a lengthy discussion with the representatives in which he explained the import and significance of the documents he was producing pertaining to the patients in question. *See* Exhibit B. During the course of this meeting, Attorney Egbert stated that the materials he was producing to the Government should convince the Government "beyond a doubt that the patients have pemphigus," *id.*, thus suggesting that the Government stop its investigation of defendant Ahmed.

4

B.   The Government's Communications with Counsel Concerning Counsel's Conflict

Defendant Ahmed had his initial appearance on March 16, 2005, and Attorney Egbert appeared with defendant Ahmed as retained counsel. In a conversation in the courtroom just before the initial appearance, counsel for the United States discussed with Attorney Egbert that Count Twenty-Two concerned the events in which Attorney Egbert participated and advised Attorney Egbert that he was likely to be a witness for the Government at trial. Counsel for the United States expressed concern that Attorney Egbert had a non-waivable conflict that would prevent his participation at trial on behalf of defendant Ahmed. Attorney Egbert responded that he did not believe there was a conflict because his client would agree to stipulate to the events that occurred on October 25, 2001, thereby obviating any potential conflict. Arnold Declaration, ¶ 13. On the record at defendant Ahmed's initial appearance, the United States further advised the Court of its concerns that Attorney Egbert was a potential Government witness and would need to be disqualified. *See id.*, Exhibit D; Arnold Declaration, ¶ 13.

In reliance upon Attorney Egbert's representations concerning a stipulation, counsel for the United States did not immediately seek to disqualify Attorney Egbert as trial counsel. Instead, counsel for the United States sought to engage Attorney Egbert in a discussion concerning the terms of the stipulation to which he had alluded during his client's initial appearance. Toward that end, counsel for the United States wrote Attorney Egbert on April 18, 2005, and raised this issue with Attorney Egbert. *See* Exhibit E; Arnold Declaration, ¶ 14. Thereafter, on July 21, 2005, counsel for the United States wrote Attorney Egbert and enclosed a proposed stipulation for Attorney Egbert's consideration. *See* Exhibit F, Arnold Declaration, ¶ 15.

Attorney Egbert never acknowledged nor responded to these letters. As a result, counsel for the United States sent another letter to Attorney Egbert on August 16, 2005. *See* Exhibit G; Arnold Declaration, ¶ 16. In this letter, counsel for the United States indicated continued willingness to discuss the terms of a stipulation that might allow for Attorney Egbert to continue as trial counsel. The letter further warned Attorney Egbert, however, that this was the United States' final attempt to resolve this matter without judicial intervention:

> We remain willing to explore the resolution that you originally proposed -- namely, a stipulation of facts in lieu of obtaining your testimony -- prior to filing a motion to disqualify you as counsel. However, should we not hear from you with respect to this topic by close of business on Monday, August 22, 2005, we will have no choice but to file a motion pursuant to *United States v. Cortellesso*, 663 F.2d 361, 363-64 (1st Cir. 1981), and *United States v. Gomez*, 584 F. Supp. 1185, 1188-90 (D.R.I. 1984) (Selya, J.), seeking your disqualification as trial counsel on the grounds that you will be a necessary witness in your client's upcoming trial. *See also* Rule 3.7, Mass. Rules of Professional Conduct.

Exhibit G. As with the Government's previous letters, Attorney Egbert neither acknowledged nor responded to this letter.

## II. ARGUMENT

The actions and statements by defendant Ahmed's retained counsel, Attorney Egbert, on October 25, 2001, will be an indispensable part of the Government's case-in-chief with respect to Count Twenty-Two of the Indictment. The Government communicated its concerns to Attorney Egbert with respect to his participation as trial counsel on the day of the initial appearance, and subsequently has sought to explore with Attorney Egbert a solution, short of disqualification, that would ameliorate those concerns and possibly allow for Attorney Egbert's continued participation as trial counsel. However, notwithstanding the fact that the solution offered by the Government – that defendant Ahmed execute a factual stipulation pertaining to the events at

6

issue – was in fact the solution originally proposed by Attorney Egbert, Attorney Egbert has repeatedly refused to acknowledge, much less discuss, the Government's proposed solution. Absent a full and complete stipulation of facts pertaining to the events at issue, Attorney Egbert simply cannot continue as trial counsel. Accordingly, the Government has no choice but to seek disqualification of Attorney Egbert as trial counsel.

    A.    Defense Counsel Who May Be a Witness at Trial Cannot Also Serve as Trial Counsel

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have Assistance of Counsel for his defence." U.S. Const. amend. VI.. This guarantee ensures a criminal defendant an effective advocate; it does not, however, necessarily mean that a defendant is entitled to a lawyer of his choice under all circumstances. *Wheat v. United States*, 486 U.S. 153, 159 (1988); *United States v. Lanoue*, 137 F.3d 656, 663 (1st Cir.1998). Although a defendant's selection of a specific lawyer to serve as trial counsel is due some deference, the right to any given lawyer as trial counsel is not absolute and must give way to other considerations necessary for the proper administration of the justice system. *See Wheat*, 486 U.S. at 159; *United States v. Hallock*, 941 F.2d 36, 44 (1st Cir. 1991).

The Government bears a "heavy burden" in seeking to disqualify counsel, *see United States v. Diozzi*, 807 F.2d 10, 12 (1st Cir. 1986), and, for this reason, the United States sought to propose a solution that would avoid trial counsel's disqualification. Because this effort has proven unsuccessful, the United States submits that defendant's choice of Attorney Egbert as trial counsel must now give way to those concerns animating the fair administration of justice and the Massachusetts Rules of Professional Conduct.

7

It is well-established that a district court may disqualify a defendant's attorney over the defendant's objection for a variety of reasons, including, as here, where the Government intends to call defense counsel as a witness at trial. *See, e.g., Hallock*, 941 F.2d at 44; *United States v. Cortellesso*, 663 F.2d 361, 362-63 (1st Cir. 1981); *United States v. Gomez*, 584 F.Supp. 1185, 1187-90 (D.R.I. 1984) (Selya, J.). Under such circumstances, trial counsel's continued participation presents various interrelated concerns, all of which necessitate counsel's withdrawal or removal from the case.

On the one hand, should counsel actually testify against his client, such conduct generally runs afoul of the ethical codes governing counsel's conduct. *See* Rule 3.7(a), Mass. R. Prof. Conduct;[2] *Cortellesso*, 663 F.2d at 363. As (then-District Court) Judge Selya has observed, "[t]he canons of ethics ... plainly indicate that the dual roles of counsel and witness are, in the main, mutually exclusive; and courts have consistently deplored such double service." *Gomez*, 584 F.Supp. at 1188 (citing *United States v. Cunningham*, 672 F.2d 1064, 1074-75 (2d Cir. 1982); *Cortellesso*, 663 F.2d at 363; *In re Rappaport*, 558 F.2d 87, 91 (2d Cir. 1977)).

On the other hand, should defense counsel continue to participate at trial and the Government not be permitted to call counsel as a witness, three other concerns emerge. First, by

---

[2] Rule 3.7 provides, *inter alia*, that "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

    (1)    the testimony relates to an uncontested issue;

    (2)    the testimony relates to the nature and value of legal services rendered in the case; or

    (3)    disqualification of the lawyer would work substantial hardship on the client.

not calling counsel, the Government may be deprived of important evidence needed to establish its case. *See, Cortellesso*, 663 F.2d at 363-64; *Gomez*, 584 F.Supp. at 1188-89 ("[i]t is apodictic that, where defense counsel's testimony is important to the government's case, the best alternative is for counsel to withdraw") (internal quotation omitted). Second, counsel's participation in the events in question may result in counsel – not wishing to be implicated in conduct engaged in by his client – circumscribing his arguments or questions, thereby reducing his role as an effective advocate on behalf of his client. *See United States v. Locascio*, 6 F.3d 924, 933 (2d Cir. 1993). Third, and conversely, counsel's continued participation at trial raises the specter of counsel – having previously been involved in the actual events being discussed at trial – appearing as an unsworn witness with respect to those very events. "If counsel were to cross-examine the witness as to her conversations with him, argue the credibility of her testimony to the jury, or suggest alternative interpretations of her account of the conversation, he would place himself in the position of an unsworn witness and implicitly put his own credibility at issue." *United States v. McKeon*, 738 F.2d 26, 35 (2d Cir. 1984); *see Locascio*, 6 F.3d at 933 (counsel's continued participation "may give his client an unfair advantage, because the attorney can subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross examination"); *see also United States v. Diozzi*, 807 F.2d 10, 15 n.10 (1st Cir. 1986) (recognizing this concern and citing, *inter alia, McKeon*).

   B.   <u>Attorney Egbert's Anticipated Testimony Consists of Important Evidence, Which if Foregone, Would Deprive the Government of its "Best Evidence"</u>

To balance the defendant's right to select counsel of choice against the concerns discussed above, the First Circuit has fashioned what it has referred to as the "best evidence" test:

9

"Where the government's proffer of a defense attorney's testimony will force the attorney's removal, the government may only call the attorney as a witness if, without his or her testimony, the government must settle for less than its best evidence." *Hallock*, 941 F.2d at 44 (internal quotation omitted). Among the factors to consider in determining whether the government will be able to obtain its best evidence is the willingness of the defendant to enter into a stipulation of all relevant facts that might otherwise have been obtainable through defense counsel's testimony. *See Diozzi*, 807 F.2d at 13-14; *compare Cortellesso*, 663 F.2d at 362-63.

In this case, there can be little question that Attorney Egbert's conduct and statements are critical components to the Government's case-in-chief. As alleged in Count Twenty-Two, it was Attorney Egbert who, on October 25, 2001, provided certain false documents to Government investigators on defendant Ahmed's behalf. These documents purported to indicate that the patients who are the subject of the pending charges were suffering from both pemphigoid and pemphigus. At the time that he presented these documents to the Government, both Attorney Egbert and defendant Ahmed were well-aware that the Government's investigation concerned defendant Ahmed's billing practices, particularly with respect to certain patients whom defendant Ahmed had represented had a dual diagnosis of pemphigoid and pemphigus. Furthermore, both Attorney Egbert and defendant Ahmed were aware that the Government suspected that defendant Ahmed had falsely represented that these patients were suffering from both pemphigoid and pemphigus so as to obtain Medicare reimbursements that would not have been otherwise obtainable had defendant Ahmed accurately described his patients' medical condition (which the Government believed consisted of individual diagnoses of pemphigoid, and not pemphigus). *See generally* Arnold Declaration, ¶¶ 3-6.

The documents provided by Attorney Egbert on behalf of defendant Ahmed consisted of various test results reflecting the presence of pemphigus in the patients. These test results were obtained using what was purported to be the blood sera of those individual patients. After producing the documents on the defendant's behalf, Attorney Egbert then discussed the documents with the Government representatives, explaining in some detail what the documents represented. Attorney Egbert advised the Government that these documents supported and confirmed defendant Ahmed's representations that the patients were suffering from both diseases, and stating affirmatively to the Government that these documents should convince the Government "beyond a doubt that the patients have pemphigus," and that the Government should stop its investigation. *See* Exhibit B; Arnold Declaration, ¶¶ 7-9.

As the evidence at trial will establish, the documents provided by Attorney Egbert on his client's behalf were false.[3] DNA test results will establish that the test results that were produced were not from the individual blood sera of the specific patient indicated, but instead consisted of the mixing of blood sera of multiple individuals. *See* Arnold Declaration, ¶ 10.

The documents produced by Attorney Egbert and the statements made on his client's behalf are at the crux of the allegations in Count Twenty-Two. In proving its case of obstruction against defendant Ahmed, the Government is entitled to offer Attorney Egbert's conduct and testimony -- it is the best available testimony of the defendant's attempt to deceive the Government through the production of what will be shown to be false documents.

---

[3] In so stating, the Government would note that it has no evidence of, and is not suggesting that, Attorney Egbert had knowledge of the documents' falsity at the time that he presented and discussed the documents with Government representatives.

Although other individuals were present at the meeting and could testify as to Attorney Egbert's actions and statements pursuant to Fed. R. Evid. 801(d)(2)(A)-(D),[4] such testimony would not be a sufficient or capable substitute for Attorney Egbert's testimony. *See, e.g., Gomez*, 584 F.Supp. at 1187 (rejecting defense counsel's argument that the prosecution could offer the testimony of a law enforcement officer in lieu of defense counsel's testimony ). "[T]he United States is "not required to accede to this truncation of its evidence ... if it means that the government must settle for less than its best evidence." *Id.* (quoting *Cortellesso*, 663 F.2d at 363).

Moreover, such a result would hardly be satisfactory as it would allow Attorney Egbert to serve as an "unsworn witness" with respect to any cross-examination he might wish to conduct of such a witness. Having been an active participant in the very matters being discussed, Attorney Egbert's cross-examination of witnesses with respect to those matters creates what has been judicially recognized as an unfair, and ultimately, untenable situation:

> Where an attorney has first-hand knowledge of events presented at trial, his role as an advocate may result in giving his client an unfair advantage over the government. Having experienced some of the events in question first-hand, [defense counsel] may be able to "subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross examination." *Locascio*, 6 F.3d at 933. For example, "[i]f counsel were to cross-examine a witness as to her conversation with him, argue the credibility of her testimony or suggest alternative interpretations of her account of the conversation, he would place himself in the position of an unsworn witness." *United States v. McKeon*, 738 F.2d 26, 35 (2d Cir.1984) (citing *Cunningham*, 672 F.2d at 1074). "When an attorney acts as an advocate with respect to events in which he was a participant, the fact-finding process is impaired," *Locascio*, 6 F.3d at 934, and since the defendant is not the party prejudiced by the impairment, a

---

[4] "Statements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney." *United States v. Margiotta*, 662 F.2d 131, 142 (2d Cir. 1981).

> waiver by the defendant cannot solve the problem. *Id.* (citing *Cunningham*, 672 F.2d at 1074-75). Even if [defense counsel] does not explicitly address the evidence at issue, his mere appearance at counsel table may distort the fact-finding process and require disqualification. *See [United States v.] Castellano*, 610 F.Supp. [1151,] at 1167 [(S.D.N.Y. 1985)] (cited with approval in *Locascio*, 6 F.3d at 933).

*United States v. Orgad*, 132 F.Supp.2d 107, 124 (E.D.N.Y. 2001).

### III. CONCLUSION

Attorney Egbert has an unacceptable conflict and should not be allowed to proceed as trial counsel for defendant Ahmed. Although the United States expressed a willingness to seek a resolution short of disqualification of counsel, defendant has refused to engage the United States in exploring such a resolution.

The defendant's delay with respect to this issue cannot and should not be countenanced. Defendant has already sought and obtained continuances based on the assertion that current counsel needed more time to review all available discovery. Further delay in addressing and removing Attorney Egbert as trial counsel will only further delay trial in this matter as new trial counsel will undoubtedly also seek additional time to review discovery.

In any criminal trial, such a delay presents concerns with respect to the administration of justice. *See generally* 18 U.S.C. §§ 3161 *et seq.* In this case, however, delay presents additional concerns. Many of the patients who were the subject of defendant's fraudulent billing practices are elderly and infirm, and the United States anticipates that it is likely that there will be a need to take the testimony of at least one such patient prior to trial pursuant to Rule 15, Fed. R. Crim. P.

13

For the reasons stated above, this Court should grant the United States' motion and disqualify Attorney Egbert as trial counsel in this matter. The United States has no objection to Attorney Egbert continuing as counsel for the defendant so long as that representation occurs outside the presence of the jury. *See Gomez*, 584 F.Supp. at 1190 (allowing counsel to continue representing defendant in matters outside the presence of the jury, but ordering that counsel "may not, however, participate in the conduct of jury empanelment or of the trial itself, nor may he be seated at counsel table").

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: *(signature)*
Jeremy M. Sternberg
James E. Arnold
Assistant United States Attorneys
One Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3603/(617) 748-3142

September 1, 2005

### Certificate of Service

I hereby certify that I served a copy of the foregoing on Richard M. Egbert, Law Offices of Richard M. Egbert, 99 Summer Street, Suite 1800, Boston, MA 02110, this day by mail.

*(signature)*
James E. Arnold
Assistant U.S. Attorney