UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA  )<br>)<br>v.  )<br>)<br>ABDUL RAZZAQUE AHMED  )<br>)<br>Defendant  ) | CRIMINAL NO. 05-10057-RCL |

### DECLARATION OF ASSISTANT U.S. ATTORNEY JAMES E. ARNOLD

I, James E. Arnold, file this Declaration in support of the United States' Motion to Disqualify Richard M. Egbert, Esq. as Trial Counsel.

1. I am an Assistant U.S. Attorney in the District of Massachusetts. I have been assigned as one of the Assistant U.S. Attorneys to prosecute the above-referenced matter. I am personally familiar with matters concerning the investigation and indictment of defendant Abdul Razzaque Ahmed.

2. I am aware of many of the facts set forth below through my examination of documents and through my reading of interview reports and grand jury testimony of some witnesses. The factual narrative is not a complete summary of all facts known to the Government; rather, it summarizes the facts pertinent to the issues before the Court. I do affirm that the facts set forth in the factual narrative are accurate to the best of my information and belief. The factual narrative has also been reviewed for accuracy by other members of the Government's investigative team.

3. At the outset of this investigation, the United States Attorney's Office for the District of Massachusetts, on June 15, 2000, caused a subpoena issued under the authority of

Section 248 of the Health Insurance Portability & Accountability Act of 1996, Public Law No. 104-91 (18 U.S.C. § 3486) to be served upon defendant Ahmed. (A copy of that subpoena is attached hereto as Exhibit A.) This subpoena sought from defendant Ahmed, among other things, "medical and billing records for all patients who are being treated or were treated with IVIG [intravenous immunoglobulin] and for whom any part or all of the service was billed to Medicare and/or any third party payor."

4. At the time that the subpoena was issued, the investigation concerned defendant Ahmed's Medicare billing practices with respect to his IVIG treatments with respect to patients suffering from pemphigus vulgaris ("pemphigus") and with respect to his patients suffering from pemphigoid. Pemphigus and pemphigoid are separate and distinct autoimmune blistering skin diseases that attack the skin in different ways and at different levels; they are also diagnostically different. Pemphigus attacks the body's immune system by sending antibodies to attack the inter-cellular cement, the mortar holding cells of the skin in place. Pemphigus increases the body's susceptibility to infection, which can be fatal. In contrast, pemphigoid is generally not a fatal disease. In addition, pemphigoid attacks the foundation of the skin known as the basement membrane zone.

5. IVIG treatments are very expensive. During the relevant time period (1997-2001), a one-day treatment by defendant Ahmed could cost in excess of $5,000. Defendant Ahmed regularly treated his patients with multi-day courses of IVIG. During the relevant time period, Medicare reimbursed for IVIG treatments for the disease pemphigus. Medicare did not reimburse IVIG treatments for patients suffering only from pemphigoid.

6. As the investigation progressed, it became apparent that defendant Ahmed was billing Medicare for millions of dollars in expensive IVIG treatments and on those bills was claiming that the patients at issue suffered from both pemphigus and pemphigoid. Each disease on its own was quite rare; the combination or "dual diagnosis" was extraordinarily rare.

7. With the backdrop of an investigation focusing on Medicare billings for IVIG treatments for patients with a purported "dual diagnosis" of pemphigus and pemphigoid, defendant Ahmed's counsel, Attorney Richard M. Egbert sought a meeting with the agents and attorneys for the United States. Attached hereto as Exhibit B is a true and accurate copy of a Memorandum by one of the case agents, dated October 26, 2001. This Memorandum, summarizes a meeting with Attorney Egbert on October 25, 2001, which the case agent attended, along with other representatives of the United States who were working on the investigation of defendant Ahmed. At that meeting, Attorney Egbert, acting on behalf of defendant Ahmed, provided two binders of documents to representatives of the United States. Included in those documents was a chart, a true and accurate copy of which is attached hereto as Exhibit C,[1] listing by name, forty-two (42) of defendant Ahmed's patients. This chart purported to show the results of three lab tests conducted on the blood sera for each of these 42 patients. The three lab tests were conducted by defendant Ahmed, Beutner Labs and Mayo Clinic. The chart purported to represent that the lab test results for each of the 42 patients had indicated that each of the patients was suffering from both pemphigoid and pemphigus.

---

[1] The names of the patients have been redacted and replaced with their initials in accordance with the Protective Order entered by the Court.

8.    Of the 42 patients on the chart provided by Attorney Egbert, 22 of those patients were Medicare insureds for whom defendant Ahmed had billed Medicare for IVIG treatments and included a pemphigus diagnosis in these bills. Defendants Ahmed's billings to Medicare for expensive intravenous immunoglobulin treatments provided to these 22 patients, and the inclusion of the pemphigus diagnosis in those bills, was at the core of the investigation at the time of the October 25, 2001 meeting.

9.    During the meeting on October 25, 2001, after providing the chart to representatives of the United States on behalf of his client and after explaining what the chart purported to represent, Attorney Egbert stated on behalf of defendant Ahmed that the materials he was providing (including the chart) should convince the Government "beyond a doubt that the patients have pemphigus." Exhibit B, page 2.

10.    Some time after receiving the 42 Patient Chart and accompanying information from Attorney Egbert, the United States issued a subpoena to the Beutner Labs for the blood sera that it had tested. The United States had this sera sent for analysis to The Bode Technology Group, Inc. ("Bode"), a laboratory based in Springfield, Virginia, specializing in DNA testing. The results of the DNA testing performed by Bode showed that of the 42 blood sera samples, seven (7) of them did not contain enough genetic material to generate a full DNA result. Bode was able to determine a DNA result for the remaining 35 sera samples, several of which were purported to be samples obtained from defendant Ahmed's Medicare patients. Each of these 35 samples showed the presence of the DNA of at least two people, as opposed to a single source result. This DNA analysis provides compelling evidence that the Beutner test results and the chart provided by Attorney Egbert on behalf of defendant Ahmed on October 25, 2001,

incorporating those test results, were not reflective of the disease states of each of the individual 42 patients as had been represented.

11.  The Indictment in this case refers to 24 Medicare patients who received IVIG treatments, 22 of whom appeared on the 42-patient chart provided by Attorney Egbert on October 25, 2001. The Indictment charges that defendant Ahmed defrauded Medicare in billing for IVIG treatments for all of these patients, and that he did so by using a false diagnosis of pemphigus. See generally Indictment, ¶¶ 24-27.

12.  Count 22 of the Indictment concerns the meeting that took place on October 25, 2001, between Attorney Egbert and representatives of the United States. This Count charges that defendant Ahmed sought to obstruct an ongoing investigation of a Federal health care offense "by causing false documents to be prepared and produced, *through his retained defense counsel*," to representatives of the United States who were investigating his Medicare billings. Indictment, ¶ 40 (emphasis added).

13.  On March 16, 2005, defendant Ahmed made his initial appearance; Attorney Egbert filed an appearance as retained counsel. In a conversation in the courtroom just before the initial appearance, counsel for the United States raised the issue of Attorney Egbert being a likely witness for the Government given the fact that Count Twenty-Two concerned the events in which he participated on October 25, 2001. Counsel for the United States expressed concern that Attorney Egbert had a non-waivable conflict that would prevent his participation at trial on behalf of defendant Ahmed. Mr. Egbert responded that he did not believe there was a conflict because his client would agree to stipulate to the events that occurred on October 25, 2001,

thereby obviating any potential conflict. Moreover, on the record at the initial appearance, the United States informed the Court as follows:

> First, as I've discussed with Mr. Egbert and as I want to preview for the Court, particularly as to Count 22, the obstruction count. The Government believes that Mr. Egbert is a witness in this case. He is identified, not by name, but as counsel who presented some evidence to the Government in that count. And we will moving to disqualify him.

Transcript of Initial Appearance dated March 16, 2005, at 9 (attached as Exhibit D).

14. Attached hereto as Exhibit E is a true and accurate copy of a letter dated April 18, 2005, from Assistant U.S. Attorney Jeremy Sternberg to Attorney Richard M. Egbert. In this letter, AUSA Sternberg raised the issue of the potential conflict that Attorney Egbert may have in continuing to represent defendant Ahmed as trial counsel. AUSA Sternberg invited Attorney Egbert to advise the Government as to his view with respect to the conflict, as well as to propose any solutions he might have concerning the matter. Attorney Egbert neither acknowledged nor responded to this letter.

15. Attached here as Exhibit F is a true and accurate copy of a letter (with attachment) dated July 21, 2005, from Assistant U.S. Attorney Jeremy Sternberg to Attorney Richard M. Egbert. In this letter, AUSA Sternberg again raised the issue of the conflict Attorney Egbert had as a result of his being a potential Government witness as well as trial counsel for defendant Ahmed. With this letter, AUSA Sternberg enclosed a proposed, draft evidentiary stipulation for Attorney Egbert to consider which might obviate the need for the Government to call Attorney Egbert as a witness. Attorney Egbert neither acknowledged nor responded to this letter.

16. Attached hereto as Exhibit G is a true and accurate copy of a letter dated August 16, 2005 from me to Attorney Richard M. Egbert. In that letter, I enclosed a copy of the July 21,

2005, letter and draft stipulation written by AUSA Sternberg and again asked for comment from Attorney Egbert. In that letter, I urged Attorney Egbert to contact us to discuss a stipulation and warned Attorney Egbert that if we did not hear from him by close of business on August 22, 2005, the Government would have no choice but to seek his disqualification as trial counsel. As with the previous correspondence from the Government raising this issue, Attorney Egbert neither acknowledged nor responded to this letter.

I declare, under the pains and penalties of perjury, that the foregoing is true and correct. 28 U.S.C. §1746.

Signed September 1, 2005

JAMES E. ARNOLD
Assistant U.S. Attorney