UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 05-10057-RCL |
| v. | ) | |
| | ) | |
| ABDUL RAZZAQUE AHMED, | ) | |
| | ) | |
| Defendant | ) | |

### DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION TO DISQUALIFY RICHARD M. EGBERT AS TRIAL COUNSEL

The government has moved this Court to disqualify counsel for the defendant, Dr. Abdul Razzaque Ahmed ("Dr. Ahmed"), on the ground that defense counsel is a potential government witness at trial. Notwithstanding the serious Sixth Amendment issues implicated by its motion, the government has offered the Court virtually no basis upon which to issue the requested order. For the following reasons, Dr. Ahmed respectfully requests that this Court reject the government's attempt to gain a tactical advantage at trial through this manufactured conflict. At the very least, the government should be required to present evidence sufficient to show both the admissibility of the testimony it seeks and the necessity of intruding upon Dr. Ahmed's Sixth Amendment rights in order to get it.

### FACTS

Over five years ago, on or around June 15, 2000, the government issued a subpoena to Dr. Ahmed. Indictment ¶ 19. Over four years ago, on October 25, 2001, Richard M. Egbert ("Mr. Egbert" or "defense counsel") and another attorney who was representing Dr. Ahmed at that time met with several government representatives, including an Assistant U.S. Attorney for the District of Massachusetts and two federal agents. See Declaration of Assistant U.S. Attorney

James E. Arnold ("Arnold Decl.") at ¶ 7, filed on September 1, 2005.  During the course of this meeting, Mr. Egbert provided two binders to the government containing laboratory reports (among other things), explained the reports' contents, and told the government that the reports demonstrated the lack of any fraud on the government.  Id.  Presumably, all of the other participants are available to testify about the October 25th meeting at Dr. Ahmed's trial.

Following the October 25th meeting, the government subpoenaed the samples that formed the basis of the lab reports contained in the two binders and, using its own lab, conducted a type of DNA analysis that purports to show that the samples were contaminated with the DNA of other individuals.  Id. at ¶ 10.  Count 22 of the indictment is purportedly based on this DNA analysis.  Id. at ¶ 10, 12.  The government has not pointed to any evidence showing that this contamination, assuming it exists, was intentional as opposed to inadvertent, nor has it identified any evidence showing that the contamination rendered the samples unreliable for diagnostic purposes.

At Dr. Ahmed's arraignment, the government suggested – for the first time – that it may wish to call Mr. Egbert to testify about the events of the October 25th meeting, notwithstanding that the meeting was attended by four other individuals.  Id. at ¶ 13.  In the interests of cooperation, Mr. Egbert agreed to discuss with the government the possibility of negotiating a factual stipulation that would alleviate any perceived need on the government's part for defense counsel's testimony.  Negotiations fell apart, however, when the government insisted that Mr. Egbert stipulate not only to the events of the October 25th meeting, but also to "facts" that clearly implicated attorney-client privileged communications, something Mr. Egbert was not willing to do.  In addition, although Mr. Egbert was (and remains) willing to stipulate to non-privileged facts regarding the October 25th meeting, he would not agree to waive all potential objections to

2

the stipulation's admissibility at this early pre-trial stage.  The government, apparently worried about its ability to lay the necessary foundation at trial, has used this refusal to stipulate to admissibility as the basis for its punitive request that Mr. Egbert be removed from the trial altogether.

**ARGUMENT**

The Sixth Amendment guarantees criminal defendants the right to counsel.  An essential component of that right is the defendant's opportunity to be represented by the counsel of his or her own choice.  See Powell v Alabama, 287 U.S. 45, 53 (1932); United States v. Diozzi, 807 F.2d 10, 12 (1st Cir. 1986).  Although not absolute, "[t]he right to counsel of choice cannot be denied without a showing that the exercise of that right would interfere with the fair, orderly and expeditious administration of justice."  United States v. Panzardi Alvarez, 816 F.2d 813, 817 (1st Cir. 1987).  Because of the Sixth Amendment interests at stake, in moving to disqualify trial counsel, "the government bears a heavy burden of establishing that disqualification is justified" and counsel should only be disqualified from representation as "a measure of last resort."  Diozzi, 807 F.2d at 12.  An erroneous disqualification of counsel in a criminal case requires an automatic reversal.  Panzardi Alvarez, 816 F.2d at 818; Diozzi, 807 F.2d at 16; .

While paying lip service to the importance of the Sixth Amendment, the government seeks to disqualify defense counsel from participating in this trial because it claims that "actions and statements by defendant Ahmed's retained counsel, Attorney Egbert, on October 25, 2001, will be an indispensable part of the Government's case-in-chief with respect to Count Twenty-Two of the Indictment."  See Memorandum in Support of United States' Motion to Disqualify Richard M. Egbert, Esq., as Trial Counsel, pp. 6 ("Gov. Memo.").  Citing the unremarkable proposition that attorneys ought not to be witnesses in the cases that they try, the government

argues that disqualification is appropriate here for two reasons. First, the government claims (without explanation) that despite the presence of four other potential witnesses, only Mr. Egbert would present the "best" evidence of the October 25th meeting. Second, it claims that even if other meeting participants could provide sufficient evidence, Mr. Egbert would obtain an unfair advantage at trial by making himself an "unsworn witness." For all of the following reasons, the government's motion must be denied. Alternatively, at the very least, an evidentiary hearing must be held during which the government must demonstrate to a certainty that (1) it requires the sought-after evidence to prove an element of the charge; and (2) only Mr. Egbert is the appropriate witness to introduce that evidence.

    A.    **The Government Is Not Entitled to Disqualification of Counsel Where Counsel Is Willing to Provide an Appropriate Factual Stipulation.**

The leading case in this Circuit on disqualifying counsel when the government seeks to call that counsel as a witness is United States v. Diozzi, 807 F.2d 10 (1st Cir. 1986). In Diozzi, the government moved to disqualify defense counsel from representing the defendants at trial on the ground that the government needed counsel to testify about sixteen allegedly false or misleading statements contained in oral and written submissions that counsel had provided to the government during the investigation in an attempt to demonstrate the "total lack of criminal intent" on the defendants' part. Id. at 11-12. Following trial counsel's disqualification, the defendants were tried and convicted. The First Circuit reversed the convictions on the ground that the disqualifications violated the defendants' Sixth Amendment rights. In so doing, the First Circuit found that defense counsel's offer to provide a factual stipulation rendered defense counsel's disqualification unjustifiable. See id. at 13-14. Here, as was the case in Diozzi, defense counsel remains willing to enter into an appropriate factual stipulation with the government.

The government, however, seeks more, taking issue with defense counsel's refusal to stipulate to attorney-client privileged communications and to the admissibility of the stipulation itself. Contrary to the government's apparent belief, it is not entitled to insist that a stipulation with defense counsel go beyond what it would otherwise be able to show at trial. See Diozzi, 807 F.2d at 13 (defense counsel did not need to stipulate to the fact that the statements were false and misleading to avoid disqualification where the government was unable to establish that fact through counsel's testimony). The government appropriately does not argue that it would be entitled to inquire about communications between Dr. Ahmed and Mr. Egbert regarding the preparation for and purpose of the October 25th meeting with the government. Such evidence is clearly protected by the attorney-client privilege. See, e.g., United States v. Rakes, 136 F.3d 1, 3 (1st Cir. 1998). Nor does the government argue that defense counsel's actions or statements during the October 25th meeting with the government constituted a waiver of the privilege. See id. at 5 (a client does not lose the privilege as to communications with his lawyer merely because some of the facts discussed in confidence are later disclosed to third parties); Diozzi, 807 F.2d at 14 ("Defense counsel cannot be subject to disqualification merely for having represented their clients in a preindictment investigation."). And there has been no suggestion that Mr. Egbert or Dr. Ahmed waived the privilege by discussing the attorney-client communications themselves, as opposed to disclosing facts that may have been the subject of such communications. Cf. United States v. Jacobs, 117 F.3d 82, 87-8 (1st Cir. 1997) (tape recordings of defendant telling an undercover agent that his attorney had assured him that there was nothing illegal about his conduct constituted waiver of privilege as to attorney's advice regarding legality of conduct).

Moreover, it is not at all clear that Mr. Egbert's statements at the October 25th hearing are even admissible against Dr. Ahmed. In United States v. Valencia, 826 F.2d 169 (2nd Cir. 1987),

5

the government sought to invoke Fed. R. Evid. 801(d)(2) to admit assertions of the defendant's innocence made by defense counsel during bail negotiations that the government claimed it would prove at trial were false. Id. at 172. In affirming the district court's refusal to admit the attorney's statements, the Second Circuit explored the serious considerations involved in such an unusual request:

> Though the statements were not made during the course of plea negotiations and therefore were not automatically excludable under Fed. R. Evid. 410, *see* Fed. R. Crim. P. 11(e)(6), a statement by defense counsel protesting a client's innocence may often be the prelude to plea negotiations. A district court is entitled to consider whether trial use of informal attorney statements will lessen the prospects for plea negotiation or inhibit frank discussion between defense counsel and prosecutor on various topics that must be freely discussed in the interest of expediting trial preparation and the conduct of the trial.

Id. at 173.

The question of whether or not defense counsel's conduct and statements at the October 25th meeting are properly admissible as evidence against Dr. Ahmed raises substantial questions of law that go to the heart of Count 22's sufficiency. For example, the Declaration of James Arnold, submitted as the government's sole factual support on this issue, asserts only that some time after October 25, 2001, the government had its own experts analyze the DNA contained in 49 blood samples and through that testing determined that the samples has been contaminated by more than one person's DNA. Arnold Decl., ¶ 10. Obviously, if Dr. Ahmed was not aware that the samples had been contaminated (and there is no evidence before the Court that he was), then causing his attorney to provide the government with lab results of tests performed on the samples would not constitute obstruction as a matter of law. See 18 U.S.C. § 1518 ( "willful" conduct is an element of offense of obstruction). The government points to nothing, however, even to show that the samples were purposefully manipulated (as opposed to inadvertently contaminated), much less that Dr. Ahmed was aware of or caused the contamination.

In light of the fact that the parties have not yet even completed discovery, there can be no serious question as to the appropriateness of defense counsel's refusal to stipulate to the statements' admissibility at this early stage. Indeed, the government has not pointed to a single case, and Dr. Ahmed is not aware of one, that entitles it to use the threat of disqualification to lift its own foundational (as opposed to factual) burdens. At the very least, before disqualifying defense counsel, the Court should hold an evidentiary hearing during which the government must demonstrate to a certainty (1) that it requires the sought-after evidence to prove an element of Count 22; (2) that the evidence it seeks is in fact admissible; and (3) that only Mr. Egbert is the appropriate witness to introduce that evidence.

### B. The Government Has Not Carried Its Burden of Showing that Mr. Egbert's Testimony Is Required to Ensure the Orderly Administration of Justice.

Setting aside for a moment the issue of admissibility, the government also cannot meet the Diozzi requirement of proving that disqualification is justified under the "best evidence" rule. Under Diozzi, disqualification is unjustifiable whenever adequate alternative methods of obtaining the evidence. See Diozzi, 807 F.2d at 13-14. Here, there are four other witnesses who participated in the October 25th meeting, yet the government has not even set forth an argument as to why the Court ought to find that those witnesses' testimony would be less than the "best evidence" to be gleaned from Mr. Egbert. Likely the government has not done so under the mistaken impression that the tactical advantage of calling a defense attorney to testify against his own client renders that testimony qualitatively "better" for the government. Yet in Diozzi, the First Circuit expressly rejected such a position as improper. Noting that, strictly speaking, the "best evidence" of the allegedly false submissions to the government were the submissions themselves, the First Circuit held that "[w]hile the government may have gained some tactical advantage by forcing [trial counsel] to appear as government witnesses rather than as advocates

7

for the defense, the government may not infringe upon the right to counsel of choice for such an improper purpose." Diozzi, 807 F.2d at 13-14.

The earlier case of United States v. Cortellesso, 663 F.2d 361 (1st Cir. 1981), is clearly distinguishable from the case at bar. Unlike here, trial counsel in Cortellesso had refused to enter into a factual stipulation, agreeing only to provide a stipulation in lieu of testimony. See id. at 362. The First Circuit noted that trial counsel "had but to . . . stipulate that the agreement [not to remove evidence] was made, and Jackovny's testimony would not be needed; the whole counsel-witness issue would disappear, and Jackovny would then be free to continue in the case . . . ." Id. at 364. Here, even without a stipulation, the government still has four other witnesses through whom it can present the evidence, including an Assistant U.S. Attorney, two federal agents, and another defense attorney who, although present at the October 25th meeting, has not entered an appearance in this case. See Arnold Decl., Exhibit B; cf. Cortellesso, 663 F.2d at 363 (noting that government agents were the only alternative witnesses to defense counsel and their testimony was less than the "best evidence" because the agents were vulnerable to attack as interested witnesses).[1] Thus, even if this Court were to agree with Cortellesso's assessment of who could provide the "best evidence" of the October 25th meeting as between the defendant's representatives and the government's, the government has not provided any explanation for why Mr. Egbert's testimony would be "better" than that of the other defense attorney present at the October 25th meeting.

The only other case cited by the government in support of its "best evidence" argument is even further removed from these facts. See United States v. Gomez, 584 F.Supp. 1185 (D. Mass.

---

[1] Although far from clear, it also appears that trial counsel in Cortellesso may have testified before the grand jury, thus making his testimony a part of the evidence on which the grand jury relied to return the relevant charge. See Cortellesso, 663 F.2d at 363 ("The grand jury record, which Jackovny never disclaimed, showed that he would testify against his client on an issue fundamental to the government's case."). Here, the grand jury did not rely on Mr. Egbert's testimony to return Count 22 for the simple fact that he was never called to give it.

8

1984).  Amongst other complicating factors, the lawyer in Gomez initially represented both defendants when he brought them to the police station to make voluntary statements, interpreted the waiver form into Spanish for one of his clients, obtained that client's assent, witnessed his signature, served as the interpreter for the ensuing confession, translated the confession into English and typed it, obtained the client's signature on the form, and signed the form as the person who had taken the statement.  Id. at 1186-87.  The lawyer took similar steps with his other client (although he did not act as an interpreter).  Id.  The lawyer then sought to represent the latter client at trial by contesting the voluntariness of the statements he had helped the police to obtain (as did the other defendant).  Id. at 1188.  Given the centrality of the statements to the government's case, the lawyer's relevant testimony on that issue (as well as on other matters, at least one of which he had gratuitously disclosed to the government), the lack of any particular need for the lawyer's services, and the routine nature of the representation, the Court precluded the lawyer from sitting at counsel table and participating directly in the trial.  Id. at 1189-90. And even under the extreme facts of Gomez, the Court remained willing to entertain motions for reconsideration of its disqualification order following the resolution of the suppression motions. Id. at 1190.  Gomez provides no support for the government's contention that disqualification is appropriate here.

      The remaining "problem" raised by the government regarding defense counsel's continued representation of Dr. Ahmed – that Mr. Egbert would be treated by the jury as an "unsworn witness" with regard to the October 25th meeting – is hardly insurmountable and, to the extent that it is even colorable, the drastic step of disqualification is not the only way to remedy it.  Such a concern could easily be dispelled by simply redacting the name of the lawyer who attended the October 25th meeting.  See, e.g., Diozzi, 807 F.3d at 15, n.8; cf. United States

v. Orgad, 132 F.Supp.2d 107, 124-25 (E.D. N.Y. 2001) (where government's evidence consists of hours of tape recorded conversations between defense counsel and witness, redacting counsel's name will not solve the problem of the jury recognizing counsel's voice). Dr. Ahmed would have no objection to such a simple remedial step, just as he remains open to the possibility of negotiating an appropriate factual stipulation, thereby limiting the types of credibility challenges he could potentially raise at trial.

In contrast to the weakness of the government's position, the impact of Mr. Egbert's disqualification on Dr. Ahmed's Sixth Amendment rights would be severe. This is a far cry from the typical case. The government's investigation has spanned over five years, involving tens of thousands of documents, hundreds of biological samples, and dozens of witnesses. The indictment alleges twenty-four separate charges under five different statutes for conduct allegedly carried out over a period of years. The substantive issues involve such complex scientific matters as the biological impact of particular diseases, appropriate methods for diagnosing and treating those diseases, and DNA analysis of over one hundred individual blood, skin, and sera samples.

Dr. Ahmed has been represented by Mr. Egbert throughout the entire investigation. Given the complicated nature of the case and the depth of knowledge possessed by current counsel, granting the government's motion would severely prejudice Dr. Ahmed's ability to effectively defend himself against the charges at trial. "In an extremely complicated case it may cause a fundamental injustice to remove the *one* attorney whose intimate knowledge of the defense and whose close relationship with the defendants make him practically the only available attorney capable of presenting effective assistance of counsel." United States v. Renda, 669 F.Supp. 1544, 1549 (D. Kan. 1987). Where, as here, the government has utterly failed to

demonstrate that it has a real need for defense counsel's testimony, and the impact on the defendant of disqualification would be severe, the government's request to disqualify Mr. Egbert should be summarily dismissed. At the very least, the government should be required to present evidence demonstrating the necessity and admissibility of Mr. Egbert's testimony prior to any order granting its request.

Respectfully submitted,
**Dr. Abdul Ahmed,**
By his attorney,


  /s/ Richard M. Egbert
Richard M. Egbert
99 Summer Street
Boston, MA 02110
(617) 737-8222


Dated: November 8, 2005


### Certificate of Service

I, Richard M. Egbert, hereby certify that I have, on this 8th day of November, 2005, caused the above document to be electronically served by hand upon Assistant U.S. Attorneys Michael K. Loucks, James Arnold, and Jeremy Sternberg, Office of the United States Attorney, District of Massachusetts, One Courthouse Way, Boston, MA 02210.

  /s/ Richard M. Egbert
Richard M. Egbert