UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO.
05-10057-RCL

UNITED STATES OF AMERICA

v.

ABDUL RAZZAQUE AHMED

**MEMORANDUM OF DECISION AND ORDER
ON GOVERNMENT'S MOTION TO DISQUALIFY DEFENSE COUNSEL**

November 22, 2005

DEIN, M.J.

## I.  INTRODUCTION

The defendant Abdul Razzaque Ahmed ("Dr. Ahmed") is charged in a multi-count indictment with mail fraud, health care fraud, money laundering, and obstruction of justice.  This matter is presently before the court on the Renewed Motion by the United States to Disqualify Richard M. Egbert, Esq. ("Mr. Egbert") as Trial Counsel (Docket No. 48).  Oral argument on the motion was heard on November 16, 2005, at which time this court denied the motion to disqualify.  This memorandum of decision is being entered to more fully explain the court's decision.

## II.  STATEMENT OF FACTS

The principal claim against Dr. Ahmed is that he allegedly engaged in a scheme to defraud the Medicare program by falsely representing that certain patients who were suffering from a blistering skin disease known as pemphigold were also suffering from a different rare blistering skin disease known as pemphigus vulgaris ("pemphigus").  At

the time, Medicare allowed reimbursements for certain intravenous immunoglobulin ("IVIG") treatments for pemphigus but not for pemphigold.  Dr. Ahmed is charged with fraudulently billing Medicare over $5 million for IVIG treatments for patients who suffered from pemphigold, but did not have pemphigus.  The pre-indictment investigation of Dr. Ahmed lasted about five years — with a subpoena being issued to Dr. Ahmed on June 15, 2000 and the indictment coming down on March 15, 2005.

Two counts of the indictment (Counts 21 and 22) charge Dr. Ahmed with obstruction of justice by allegedly providing false written documents to the government during the investigation to show that patients who had received IVIG treatments and suffered from pemphigold also suffered from pemphigus.  In addition to providing false documents to the government, the indictment charges that Dr. Ahmed mixed the blood of patients who suffered from pemphigold and pemphigus and then sent the mixed blood to a laboratory for testing.  The test results then showed patients who were actually only suffering from pemphigold to also be suffering from pemphigus.  These results were given to the government as well.

During the investigation, a meeting was held on October 25, 2001.  The meeting was attended by AUSA Sandra Bower, Postal Inspector Jean Zaniewski, Special Agent Nancy Scanlan, and two attorneys representing Dr. Ahmed, Richard Egbert and Patrick Sparks.  These attorneys represented Dr. Ahmed throughout the pre-indictment investigation of the case.  However, only Mr. Egbert, and not Mr. Sparks, has entered an appearance as trial counsel in this matter.  Mr. Egbert has appeared at all the pre-trial hearings in this case.

In Count 22 of the indictment, it is alleged that at the meeting of October 25, 2001, Dr. Ahmed caused false documents

> to be prepared and produced, <u>through his retained defense counsel</u>, to individuals duly authorized by a department and agency of the United States to conduct and engage in investigations for prosecutions for violations of health care offenses, including individuals employed by the United States Attorney's Office for the District of Massachusetts, which documents were false and fraudulent in that they were created using results obtained by: (1) causing blood sera samples for 42 of his pemphigold patients (including at least 22 Medicare patients) to be mixed with the blood of other of his patients who suffered from pemphigus; and (2) causing the mixed blood sera to be sent to the Buffalo Lab for testing in order to obtain test results which would falsely show that each of these 42 patients suffered from pemphigus.

Indictment ¶ 40 (emphasis added).  The "retained defense counsel" refers to Mr. Egbert.  According to the government, at this meeting Mr. Egbert "had a lengthy discussion with the representatives in which he explained the import and significance of the documents he was producing pertaining to the patients in question.  During the course of this meeting, Attorney Egbert stated that the materials he was producing to the Government should convince the Government 'beyond a doubt that the patients have pemphigus,' thus suggesting that the Government stop its investigation of defendant Ahmed."  <u>Gov't Mem.</u> (Docket No. 45) at 4.  According to the government, "[t]he documents produced by Attorney Egbert and the statements made on his client's behalf are at the crux of the allegations in Count Twenty-Two."  <u>Id.</u> at 11.  Nevertheless, it is undisputed that there were others present throughout this meeting who could testify as to what was said and what documents were produced.  Moreover, the government has made it clear "that it has no evidence of, and is not suggesting that, Attorney

Egbert had knowledge of the documents' falsity at the time that he presented and discussed the documents with Government representatives." Id. at 11 n.3.

### The Motion to Disqualify

Mr. Egbert appeared as trial counsel for Dr. Ahmed on March 16, 2005, at his initial appearance.  Apparently at that time, the government informed Mr. Egbert that he was likely to be a witness for the government at trial concerning the events of the meeting of October 25, 2001.  The government attempted to engage Mr. Egbert in discussions to determine whether a stipulation could be reached to avoid Mr. Egbert's testimony.  When Mr. Egbert did not respond, the government filed a motion to disqualify Mr. Egbert on September 1, 2005.  At the hearing on the motion on September 26, 2005, the parties reported that they were close to a resolution, so the motion was withdrawn.

The parties then apparently engaged in extensive negotiations.  A resolution has been reached as to the facts to which Mr. Egbert would be prepared to stipulate.[1]  However, Mr. Egbert is not prepared to assent to the admissibility of the facts, some of which go beyond what was said at the October 25, 2001 meeting, as a result of which the government filed its renewed motion to disqualify.  A hearing was held on November 16, 2005.

---

[1]  The proposed stipulation was submitted to the court attached to a copy of a letter dated October 3, 2005 from the AUSAs in this case to Mr. Egbert.  To the extent that this court refers to Mr. Egbert's positions with respect to the stipulation, these positions are consistent with the positions of his client, Dr. Ahmed.  Thus, references to Mr. Egbert and the defendant may be made interchangeably.

At the hearing, Mr. Egbert confirmed that he was prepared to stipulate to the authenticity of the documents produced at the meeting of October 25, 2001.  However, he is not prepared to waive the legal arguments the defendant may have as to the admissibility of the documents, the statements made at the meeting, or any other statements to which the Government has requested that he stipulate.  The defenses the defendant intends to raise include the attorney-client privilege, statements made in furtherance of a settlement, irrelevancy, immateriality and the like.  The government, however, has taken the position that it can challenge any claim of attorney-client privilege on the basis of the crime-fraud exception, for example, and that if it prevails on such a challenge it is entitled to even more facts than it is seeking by way of stipulation from Mr. Egbert.  The government contends that it only proposed the stipulation of fact in order to avoid a dispute about admissibility.[2]

This court found the government to be mixing two separate issues.  In light of Mr. Egbert's agreement to stipulate as to facts (as well as for other reasons discussed below), there is no basis for him to be disqualified.  The government's motivation in seeking such a stipulation is irrelevant.  It is then up to the trial court to determine whether the facts the government is seeking to introduce are admissible at trial, or whether they are legally protected or otherwise inadmissible.  At a status conference

---

[2]  The government's arguments at the hearing differed somewhat from its written motion.  For example, in its written materials, the government never indicated that it understood that by stipulating to certain facts the defendant would be waiving all possible privileges, although that was the position it took during oral argument.  In light of this position, this court believes that the issue of privilege would best be addressed in the context of a motion in limine.

held on November 21, 2005, the parties agreed to proceed by way of the government

filing a motion in limine seeking a ruling on the admissibility of the proposed stipulated

facts.  In connection with that motion, the defendant will raise his defenses to the

admissibility of all or part of the proposed stipulation.

### III.  ANALYSIS

As the First Circuit held in United States v. Diozzi, 807 F.2d 10 (1st Cir. 1986),

the "sixth amendment right to assistance of counsel encompasses a defendant's

qualified right to be represented in a criminal prosecution by counsel of his or her own

choice."  Id. at 12, and cases cited.  Thus, while a court has limited discretion to

preclude a defendant from being represented by counsel of choice when that choice

"would disproportionately disadvantage the government or interfere with the ethical and

orderly administration of justice," "disqualification of defense counsel should be a

measure of last resort."  Id.  The government "bears a heavy burden of establishing that

disqualification is justified[.]"  Id.

The parties are in agreement that if Mr. Egbert has to serve as a witness against

his client, he should be disqualified from serving as trial counsel.  See, e.g., United

States v. Gomez, 584 F. Supp. 1185, 1188 (D.R.I. 1984) ("The canons of ethics . . .

plainly indicate that the dual roles of counsel and witness are, in the main, mutually

exclusive; and courts have consistently deplored such double service.").  Based on the

present record, however, this court finds that there are very viable alternatives to

Mr. Egbert having to testify at trial.  While the government does not have to settle "for

less than its best evidence," disqualification is not appropriate where, as here, the

evidence can be obtained from another, comparable, source.  Diozzi, 807 F.2d at 13

(quoting United States v. Cortellesso, 663 F.2d 361, 363 (1st Cir. 1981)).  Thus, a

written stipulation of relevant facts constitutes evidence of comparable value.  Id.  See

also United States v. Matta-Timmins, 81 F. Supp. 2d 193,196 (D. Mass. 2000) (where

attorney handled client's escrow account which government contends was used for

money laundering by client, counsel is not disqualified where his factual testimony is

not in dispute and can be submitted by stipulation).  Testimony from other witnesses or

other defense counsel may also avoid disqualification.  See Diozzi, 807 F.2d at 13 n.3

(court expresses no view as to the adequacy of obtaining information from other

firsthand sources or another defense counsel).

　　　In light of Mr. Egbert's availability to stipulate to facts, and the availability of

other sources for the same evidence, the government has not met its heavy burden of

justifying disqualification.  This is particularly apparent in light of the complex nature of

the litigation and Mr. Egbert's lengthy involvement in this very technical case.  See

United States v. Renda, 669 F. Supp. 1544, 1549 (D. Kan. 1987) (attorney's intimate

knowledge of complex facts and close relationship with defendant should be

considered in assessing whether disqualification "may cause a fundamental injustice").

　　　The final question which the government's motion raises is whether the

defendant must be forced to waive any privileges which may inure to the challenged

testimony in order to avoid disqualification.  No cases discussing this point have been

presented, but this court concludes that such a waiver cannot be mandated.  The

purpose of allowing facts to be introduced by stipulation is to avoid having counsel take

the stand and thereby deny a defendant his chosen representative.  There is no reason why proceeding by way of stipulation should entitle the government to introduce evidence which is otherwise inadmissible.  While this point has not been expressly addressed, it has been implicitly recognized by the First Circuit as well as by the government in its filings with this court.  See Diozzi, 807 F.2d at 13 (disqualification was inappropriate where defense counsel available to stipulate to facts, albeit not all the facts requested by the government.  "Defense counsel refused to stipulate to the fact that the statements were false or misleading, but the government was equally unable to establish that fact through defense counsel's testimony."); Gov't Mem. (Docket No. 45) at 10 ("Among the factors to consider in determining whether the government will be able to obtain its best evidence is the willingness of the defendant to enter into a stipulation of all relevant facts that might otherwise have been obtainable through defense counsel's testimony." (emphasis added)).  Thus, the issue of admissibility should be addressed separately from the issue of disqualification.

## IV.  CONCLUSION

For all the reasons detailed herein the government's renewed motion to disqualify Richard Egbert as trial counsel (Docket No. 48) is DENIED.  The admissibility of the facts detailed in the proposed stipulation shall be addressed in the context of a motion in limine to be filed by the government.  The schedule for briefing the motion in limine shall be set at the next status conference.

/ s / Judith Gail Dein

JUDITH GAIL DEIN
UNITED STATES MAGISTRATE JUDGE