UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>ABDUL RAZZAQUE AHMED )<br>)<br>**Defendant** ) | CRIMINAL NO. 05-10057-RCL |

**UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF
MOTION IN LIMINE FOR RULING ADMITTING
INTO EVIDENCE A STIPULATION ENTERED INTO BY THE PARTIES**

To stave off disqualification of defendant's retained trial counsel (Attorney Richard Egbert), whom the United States identified as a potential Government witness, defendant Abdul Razzaque Ahmed agreed to stipulate to certain facts that the United States sought to establish through the testimony of counsel.[1/]  Although defendant Ahmed agreed to stipulate to the *accuracy* of those facts, he has refused to stipulate to the *admissibility* of those same facts. Because the facts contained within the stipulation are clearly relevant to the allegations contained in the indictment -- particularly those allegations contained in Count 22 concerning the production of a chart to the United States by counsel on behalf of defendant Ahmed, which chart the United States subsequently determined was based upon false and altered evidence -- the United States at this time moves for a ruling that the stipulation entered into by defendant Ahmed is admissible in its entirety.

---

[1/] An unsigned copy of the stipulation appears as Exhibit A to the Government's Motion in Limine. Counsel for the defendant has indicated his approval of the stipulation, and, upon receipt of the executed stipulation, the United States will file that document with the Court.

# I. BACKGROUND

### A. The Indictment's Allegations

The Indictment charges defendant Ahmed, a physician who established and operated a medical practice under the name "Center For Blistering Diseases," with a variety of criminal offenses, including, *inter alia,* mail fraud, health care fraud, money laundering, and obstruction of justice. These charges essentially relate to two different, yet interconnected, schemes: (1) defendant Ahmed's scheme to defraud the Medicare program, and (2) defendant Ahmed's scheme to obstruct the Government's investigation into his Medicare billings.

#### 1. The scheme to defraud the Medicare program

The Indictment outlines defendant Ahmed's scheme to defraud the Medicare program with respect to certain patients who were suffering from a blistering skin disease known as pemphigoid. The Indictment charges that defendant Ahmed concocted a scheme in which he falsely represented to Medicare that certain of his pemphigoid patients were also suffering from a different rare blistering skin disease known as pemphigus vulgaris ("pemphigus").[2]

The Indictment explains that Medicare allowed reimbursement for extremely expensive intravenous immunoglobulin ("IVIG") treatments for patients suffering from pemphigus, but did not allow for similar reimbursements for those patients suffering from pemphigoid. *See* Indictment, ¶ 14. In order to obtain insurance payments for his administration of IVIG

---

[2] Pemphigus and pemphigoid are two separate and distinct autoimmune blistering skin diseases. Indictment, ¶ 7. Pemphigus attacks the body's immune system by sending antibodies to attack inter-cellular cement, the mortar holding the cells of the skin place and can be fatal. *Id.*, ¶ 8. In contrast, pemphigoid is generally not a fatal disease, and attacks the foundation of the skin known as the basement membrane zone. *Id.*, ¶ 9. Both diseases can generally be diagnosed by biopsies of tissue or by laboratory analysis of blood sera. *Id.*, ¶ 10.

treatments to his pemphigoid patients, defendant Ahmed made false "dual-diagnoses" in which he misrepresented his patients' diagnoses. Over the course of the relevant time period (1997-2001), defendant Ahmed submitted fraudulent bills to Medicare totaling over $5 million for IVIG treatments for patients who suffered only from pemphigoid and did not have pemphigus. *See generally* Indictment, ¶¶ 20-31.

The Indictment also explains the manner in which defendant Ahmed implemented his fraudulent scheme. Defendant Ahmed created false documents, including bogus Immunopathology Reports to create the impression that his pemphigoid patients were also suffering from pemphigus. Defendant Ahmed used these documents both to cover up his fraudulent billing scheme and to further his continued receipt of Medicare funds for these patients. Indictment ¶ 28. Additionally, as part of his scheme and to further justify his false Medicare billings with respect to his pemphigoid patients, defendant Ahmed caused the blood sera of one or more of his patients suffering from pemphigus to be mixed with the blood sera of certain patients suffering only from pemphigoid. Defendant Ahmed then caused those vials of mixed blood to be sent to a testing laboratory, thereby causing that testing laboratory to issue test results revealing the presence of pemphigus with respect to patients who were, in fact, suffering only from pemphigoid. Indictment, ¶¶ 29-30.

### 2. The attempts to obstruct and mislead the investigation

Counts 21 and 22 of the Indictment address defendant Ahmed's attempts to obstruct and mislead the investigation into his Medicare billing activities. Count 21 charges that defendant Ahmed was served with a subpoena on June 15, 2000, as part of an ongoing criminal investigation by the United States into his Medicare billings. Thereafter, from June 2000

through at least October 2000, defendant Ahmed sought to obstruct justice by falsifying written documents pertaining to those pemphigoid patients who had received IVIG treatments so as to make it appear that they were also suffering from pemphigus. *See* Count Twenty-One, Indictment, ¶¶ 37-38. Defendant Ahmed then caused those false documents to be produced to federal criminal investigators who were investigating his Medicare billing practices. *Id.*, ¶ 38.

Count 22 of the Indictment charges that defendant Ahmed further sought to obstruct the ongoing investigation into his billing practices by causing other false documents to be prepared. These false documents incorporated fraudulent test results that had been previously obtained from the mixing of the blood sera samples of pemphigus patients with the blood sera of patients suffering only from pemphigoid. *Id.*, ¶ 40. According to the Indictment, on or about October 25, 2001, defendant Ahmed caused these false documents to be produced "through his retained counsel" to federal criminal investigators who were investigating health care offenses pertaining to defendant Ahmed's Medicare billing practices. *Id.*

**B.    The Stipulation**

The Stipulation at issue sets forth facts that directly relate to the issues presented by the Indictment's allegations. Paragraphs 1 through 4 of the Stipulation address the fact that defendant Ahmed was aware that there was an ongoing criminal investigation into his Medicare billing practices with respect to certain patients who were diagnosed with pemphigus and/or pemphigoid by virtue of his receipt of an administrative subpoena issued pursuant to 18 U.S.C. § 3486 and his subsequent production of documents pursuant to that subpoena:

> 1.    On June 15, 2000, defendant Ahmed was served with a Subpoena, Ex. __, issued under authority of Section 248 of the Health Insurance Portability and Accountability Act of 1996, Public Law No. 104-91 (18 U.S.C. §3486).

>2. The Subpoena sought from defendant Ahmed, among other things, "medical and billing records for all patients who are being treated or were treated with IVIG and for whom any part or all of the services was billed to medicare and/or any third party payor."
>
>3. The documents sought by the Subpoena related to the investigation of a Federal health care offense. Defendant Ahmed, through his retained attorney, produced documents responsive to the Subpoena to a criminal investigator, namely an Assistant U.S. Attorney for the United States Attorney's Office for the District of Massachusetts, who was duly authorized by the Department of Justice to conduct or engage in investigations for prosecutions of health care offenses.
>
>4. By not later than June 15, 2000, defendant Ahmed was aware of an ongoing criminal investigation that was investigating whether he was engaged in proper Medicare billing practices concerning patients who were diagnosed with pemphigus and/or pemphigoid.

Paragraphs 5 and 6 of the Stipulation address steps taken by the defendant Ahmed in connection with the ongoing investigation: namely, that he retained an attorney (Attorney Egbert), that he provided a chart to his attorney, and that he provided this chart to his attorney for the express purpose of having his attorney present the chart to the prosecutors and agents who were investigating his billing practices to convince them that he had not, in fact, defrauded the Medicare program:

>5. Sometime before October 25, 2001, defendant Ahmed provided the chart marked as Exhibit __ to his attorney. Defendant Ahmed stipulates that the copy of the chart attached hereto is authentic.
>
>6. Defendant Ahmed authorized his attorney to present that chart to and discuss that chart with the prosecutors and agents who were then investigating defendant Ahmed's Medicare billing practices.

Finally, paragraph 7 of the Stipulation discusses that, on October 25, 2001, with defendant Ahmed's knowledge and consent, defendant Ahmed's attorney (1) met with various

5

federal officials who were working on the Medicare billing investigation, (2) presented those federal officials with the chart previously provided by Ahmed, and (3) told those federal officials that the information in this chart should convince them that defendant Ahmed had not defrauded Medicare:

> 7. On October 25, 2001, with defendant Ahmed's knowledge and consent, defendant Ahmed's attorney met with one of the prosecutors (the same one referred to above in paragraph 3) and two federal agents. One of the agents was from Department of Health and Human Services, Office of the Inspector General and one was from the Postal Inspection Service. The prosecutor and the two agents were all working on the Medicare billing investigation concerning defendant Ahmed. During that meeting, which took place at the United States Attorney's Offices, defendant Ahmed's attorney presented them with the binders attached hereto as Exhibit __. Included in these binders was the chart. With the authorization of defendant Ahmed, defendant Ahmed's attorney told the prosecutor and the two agents that Exhibit __ should convince them "beyond a doubt" that the patients appearing on Exhibit __ had a "dual diagnosis" of pemphigus and pemphigoid. Defendant Ahmed's attorney further stated on behalf of defendant Ahmed that reimbursement from Medicare for intravenous immunoglobulin treatments was permitted as a result of these "dual diagnoses" and that defendant Ahmed had not defrauded Medicare.

## II.  ARGUMENT

"[E]videntiary stipulations are a valuable and integral part of everyday trial practice." *United States v. Mezzanato*, 513 U.S. 196, 203 (1995). Here, by stipulating to the facts set forth in Exhibit A, defendant Ahmed succeeded in maintaining Attorney Egbert as his trial counsel. However, regardless of the source of the evidence (whether directly from Attorney Egbert or via Stipulation), there can be no question but that the facts set forth in the stipulation are relevant to the allegations set forth in Counts 21 and 22 of the Indictment. Indeed, the facts set forth in the

Stipulation go to the heart of the events underlying aspects of both Counts 21 and 22. as well as to the defendant's knowledge and intent at the time of those events.

Pursuant to Rule 401, Fed.R.Evid., evidence is relevant if has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Counts 21 and 22 both allege that defendant Ahmed willfully attempted to obstruct and mislead the investigation of a health care fraud offense in violation of 18 U.S.C. § 1518. Title 18, United States Code, Section 1518 provides, in pertinent part, that:

> Whoever willfully prevents, obstructs, misleads, delays or attempts to prevent, obstruct, mislead, or delay the communication of information or records relating to a violation of a Federal health care offense to a criminal investigator shall be fined under this title or imprisoned not more than 5 years, or both.

Paragraphs 1 through 4 of the Stipulation set forth facts pertaining to the defendant's knowledge of the ongoing investigation. These are necessary facts going toward establishing the defendant's awareness of the ongoing investigation and provide context and background in understanding the defendant's subsequent acts. As such, they are relevant and admissible under Fed.R.Evid. 401. *See, e.g., United States v. Flemmi*, 402 F.3d 79, 87 (1st Cir. 2005) (citing *United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997) ("To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency. Relevant evidence is not confined to that which directly establishes an element of the crime.")). Additionally, the statement in paragraph 3 of the Stipulation that

> Defendant Ahmed, through his retained attorney, produced
> documents responsive to the Subpoena to a criminal investigator,

>namely an Assistant U.S. Attorney for the United States Attorney's Office for the District of Massachusetts, who was duly authorized by the Department of Justice to conduct or engage in investigations for prosecutions of health care offenses

is part of the very conduct alleged to constitute the defendant's criminal behavior in Count 21 (alleging, *inter alia*, that defendant Ahmed caused false documents to be created and that defendant Ahmed "further caus[ed] those false documents to be produced to individuals duly authorized by a department and agency of the United States to conduct and engage in investigations for prosecutions for violations of health care offenses.")  Finally, the facts set forth in paragraphs 1 through 4 of the Stipulation help establish the *mens rea* element pertaining to the willfulness of defendant Ahmed's subsequent actions in attempting to obstruct and mislead the ongoing investigation.  *See United States v. Feldman,* 83 F.3d 9, 14 n.3 (1st Cir. 1996).

The remainder of the paragraphs in the Stipulation (¶¶ 5-7) pertain to actions taken directly by defendant Ahmed (¶¶ 5-6), and/or actions taken and statements made by counsel during the course of counsel's representation of defendant Ahmed while acting on behalf of, and with authorization from, Ahmed (¶ 7).  These actions and statements are at the heart of the charges contained in Count 22 and, in fact, constitute the *actus reus* of the charged offense.  As such, they are directly relevant and admissible.  *See* Fed.R.Evid. 801(d)(2)(A), 801(d)(2)(C), 801(d)(2)(D); *see, e.g., United States v. O'Connor*, 433 F.2d 752, 755-56 (1st Cir. 1970) (statements made by counsel to IRS properly admitted where counsel's statements were authorized by defendant by virtue of power of attorney); *United States v. Martin*, 773 F.2d 579, 583-84 (4th Cir. 1985) (same); *see generally United States v. Pappas*, 806 F.Supp. 1, 3-4 (D.N.H. 1992) (statements made by counsel within scope of authorization provided by defendant are admissible); *United States v. Vito*, 1988 WL 78031, *1-*2 (E.D. Pa. 1988) (false exculpatory

statements made by counsel representing defendant concerning matter within scope of representation properly admitted).  Moreover, the chart produced by counsel, as well as counsel's statements concerning the patients on the chart, are admissible in that the chart (and counsel's associated statements) are not being offered for the truth of the matters asserted. Rather, as will be proven at trial, the Government's evidence will establish the falsity of both the chart and counsel's representations that the patients listed on the chart "had a 'dual diagnosis' of pemphigus and pemphigoid."  *See, e.g., United States v. Munson*, 819 F.2d 337, 339-40 (1st Cir. 1987) (false statements made by others not hearsay).

### III.  CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court rule that the entirety of the Stipulation appearing as Exhibit A to the Motion in Limine be admitted into evidence for purposes of the trial of this matter and any related pre-trial proceedings.

> Respectfully Submitted,
>
> MICHAEL J. SULLIVAN
> United States Attorney
>
> By:   /s/   James E. Arnold
> James E. Arnold
> Jeremy M. Sternberg
> Assistant United States Attorneys
> One Courthouse Way, Suite 9200
> Boston, MA 02210
> (617) 748-3100

March 13, 2006

CERTIFICATE OF SERVICE

      I hereby certify that the foregoing document(s) filed through the ECF system will be sent electronically to counsel for defendant, who is a registered participant as identified on the Notice of Electronic Filing (NEF).

      /s/ James E. Arnold
      JAMES E. ARNOLD
      Assistant United States Attorney

Date:  March 13, 2006