# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                    )
UNITED STATES OF AMERICA   )
                                    )          Case No. 05-10057-RCL
v.                         )
                                    )
ABDUL RAZZAQUE AHMED,      )
                                    )
Defendant                  )
_____)

## DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT INTO EVIDENCE A STIPULATION ENTERED INTO BY THE PARTIES

The government has moved *in limine* for an order admitting into evidence a so-called factual stipulation through which it hopes to prove Count 22 of the Indictment currently pending against the defendant, Dr. Abdul Razzaque Ahmed ("Dr. Ahmed").  For the following reasons, this Court should deny the government's motion.

## FACTS

The facts relevant to this motion are largely undisputed.  On or around June 15, 2000, the grand jury issued a subpoena to Dr. Ahmed.  See Indictment ¶ 19.[1]  On October 25, 2001, Richard M. Egbert ("Mr. Egbert" or "defense counsel") and another attorney who was representing Dr. Ahmed at the time met with several government representatives, including an Assistant U.S. Attorney for the District of Massachusetts and two federal agents.  See Declaration of Assistant U.S. Attorney James E. Arnold ("Arnold Decl.") at ¶ 7, filed on September 1, 2005.  Dr. Ahmed was not present at the meeting and did not hear any of the discussions that took place at the meeting.

---

[1] All citations to "Indictment ¶ __" refer to the corresponding paragraph in the Indictment that was returned against Dr. Ahmed on March 15, 2005.

During the meeting, Mr. Egbert provided two binders to the government containing laboratory reports (among other things), explained the reports' contents, and told the government that the reports demonstrated the lack of any fraud on the government.  Id.  Following the October 25th meeting, the government subpoenaed the samples that formed the basis of the lab reports contained in the two binders and, using its own lab, conducted a type of DNA analysis that purports to show that the samples were contaminated with the DNA of other individuals.  Id. at ¶ 10.  Count 22 of the Indictment is purportedly based on this DNA analysis.  Id. at ¶¶ 10, 12.

The government seeks to introduce at trial both the statements made and the documents provided by defense counsel during the October 25th meeting against Dr. Ahmed, despite the undisputed fact that Dr. Ahmed did not attend the meeting.  It initially sought to do so by announcing that defense counsel would likely be called as a witness (despite the presumably available testimony of all other meeting participants), and suggesting that defense counsel voluntarily disqualify himself from representing his client.  Id. at ¶ 13.  That same day, the government announced to this Court its intent to have defense counsel disqualified.  Id. at ¶ 13 (citing Transcript of Initial Appearance, dated March 16, 2005, at 9).  Over the next few months, the government sent draft "stipulations" that would ostensibly obviate the need for it to carry through on its threat to seek defense counsel's disqualification.  Id. at ¶¶ 14-16.  Defense counsel agreed to stipulate to non-privileged facts regarding the October 25th meeting, but would not agree that "facts" invading the attorney-client privilege were admissible or to waive any other admissibility challenges.

After an unsuccessful attempt to have defense counsel disqualified for taking this position, the government filed the instant motion, which seeks an early ruling on the admissibility of a so-called Factual Stipulation ("Proposed Stipulation")  See Proposed

Stipulation, attached to Government's Motion at Tab A.  The Proposed Stipulation addresses not only what was said and done at the October 25th meeting, but also purports to cover what Dr. Ahmed knew and intended at various times in the sixteen months between the subpoena's issuance and the October 25th meeting.  It also encompasses, both directly and indirectly, communications between Dr. Ahmed and defense counsel throughout that sixteen-month period. See id. at ¶¶ 4-7.  As the asserted basis for the Proposed Stipulation's admissibility, the government has argued only that it is relevant under Federal Rule of Evidence 401.  See Government's Memorandum of Law, filed on March 13, 2006, at 6-9.

## ARGUMENT

The Court should deny the government's motion to admit evidence of the October 25th meeting for three reasons.  First, the government has utterly failed to provide the necessary factual foundation for this Court to determine whether or not evidence of the October 25th meeting is in fact relevant to the charges against Dr. Ahmed.  Second, even if the government had laid the necessary evidentiary foundation for relevance, it has not demonstrated that evidence of defense counsel's conduct ought to be admitted against this defendant.  Third, even if evidence of the October 25th meeting was properly admissible in theory, the government's Proposed Stipulation contains inadmissible privileged communications.

**A.    The Government Has Not Demonstrated that Evidence of the October 25th Meeting Is Relevant.**

The government contends that evidence of defense counsel's statements and actions at the October 25th meeting is relevant to show Dr. Ahmed's alleged intent to obstruct justice. Specifically, the government states that at the meeting, defense counsel presented test results of certain sera samples to the government and stated that those results demonstrated that the diagnoses of certain patients were not fraudulent.  There is no dispute that Dr. Ahmed was not

present at the meeting, and did not personally make any representations to the government about the samples, the test results, or what the results demonstrated. Nonetheless, the government reasons that because later DNA tests performed by government agents purport to show that the lab results were obtained with contaminated samples, Dr. Ahmed must have had a corrupt intent in permitting his attorney to discuss the results with the government on October 25th. Therefore, according to the government, the discussion at the October 25th meeting must be relevant to the obstruction charge.

"Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." Fed. R. Evid. 401, advisory committee note. Here, the government's relevance argument necessarily requires some proof that: (1) the samples were intentionally manipulated; and (2) Dr. Ahmed knew about that manipulation prior to the October 25th meeting. "When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." Fed. R. Evid. 104(b).

In assessing whether the proponent of conditionally-relevant evidence has laid a proper foundation under Rule 104(b), the court must determine by a preponderance of the evidence whether a fact-finder could reasonably find that the conditional fact exists. See Huddleston v. United States, 485 U.S. 681, 690 (1988). In any case where the conditional facts necessary to lay a proper foundation are not provided, the evidence should be excluded. See, e.g., United States v. Wilson, 798 F.2d 509, 515-16 (1st Cir. 1986)(affirming exclusion of evidence relating to defendant's conduct in 1982 where indictment alleged that fraudulent tax returns were filed in 1978-1980 and defense failed to introduce foundational evidence to show defendant planned to

engage in later conduct at time he filed fraudulent returns); Tate v. Robbins & Myers, Inc., 790 F.2d 10, 11-12 (1st Cir. 1986)(affirming exclusion of an instruction manual for lack of foundation where the defendant manufacturer admittedly did not give the manual to plaintiff's employer but plaintiff failed to show that defendant was aware plaintiff's employer had purchased product).

Here, the government claims that the reports provided on October 25th were obstructive because they were based on contaminated samples.  It has not, however, pointed to a single piece of evidence showing that the samples were intentionally manipulated as opposed to unwittingly contaminated.  Nor has the government pointed to any evidence to show that Dr. Ahmed had any idea that the samples were contaminated prior to the October 25th meeting.  On information and belief, the government has not done so because there is no such evidence.  The grand jury materials produced by the government reflect that the samples that the government alleges were purposefully manipulated were prepared not by Dr. Ahmed but rather by laboratory technicians – none of whom are alleged to have done anything wrong.  Specifically, according to the testimony, one technician prepared the samples to be tested from larger vials, while a second technician generally supervised the preparation process.  Both technicians then packed and shipped the prepared samples to third-party laboratories for testing, while a third technician recorded the shipments on a computer.  Defense counsel is unaware of any evidence before the grand jury to show that Dr. Ahmed personally participated in either preparing the samples or shipping them to the third-party labs, or that Dr. Ahmed, his employees, or anyone else had any idea that the samples may have been contaminated, purposefully or otherwise, at any time.

Because both the intentional manipulation of the samples and Dr. Ahmed's knowledge of that manipulation are preliminary facts necessary to establish the relevance of the October 25th

meeting to the obstruction charge, this failure of proof is fatal to the government's motion. Without the proper foundation, the evidence of the October 25th meeting is not relevant to prove either a wrongful act or a corrupt state of mind[2] and unless the government sets forth sufficient evidence to show otherwise, the evidence of the meeting ought to be excluded.

**B.**    **The Government Has Not Demonstrated that Evidence of the October 25th Meeting Is Otherwise Properly Admissible.**

Even if the government were able to demonstrate a link between the samples' contamination and Dr. Ahmed – which it cannot – this Court still has the discretion not to admit evidence of Mr. Egbert's statements at the October 25th meeting.  Although statements made by an attorney concerning a matter within his or her employment "*may* be admissible against the party retaining the attorney . . . care must be exercised in the criminal context in determining under what circumstances attorney statements may be used against a client. . . ."  See United States v. Valencia, 826 F.2d 169, 172 (2nd Cir. 1987)(emphasis in original)(citations omitted). This is because "the routine use of attorney statements against a criminal defendant risks impairment of the privilege against self-incrimination, the right to counsel of one's choice, and the right to the effective assistance of counsel."  Id.  As a consequence, "the government . . . should only offer this sort of evidence in rare cases and when absolutely necessary, in order to avoid impairing the attorney/client relationship, chilling full disclosure by a defendant to his lawyer, and deterring defense counsel from 'vigorous and legitimate advocacy.'"  United States v. Sanders, 979 F.2d 87, 92 (7th Cir. 1992)(citation omitted).

---

[2] Initially, the government argued that evidence of the October 25th meeting was relevant only to Count 22.  See United States' Motion to Disqualify Richard M. Egbert, Esq., as Trial Counsel ("Disqualification Motion"); Memorandum in Support (Disqualification Memo"), and the Declaration of Assistant U.S. Attorney James Arnold ("Arnold Decl."), all filed on September 1, 2005.  In its latest motion, the government asserts that the meeting is relevant to Count 21 as well.  See Govt. Memo. at 6-7.  Because both counts allege violations of 18 U.S.C. § 1518, which criminalizes only "willfully" obstructive conduct, the government would need to show the same foundational facts – that the samples were intentionally manipulated and that Dr. Ahmed knew it – prior to being able to establish the relevance of the October 25th meeting to either count.

Here, there is no dispute that Mr. Egbert's statements at the October 25th meeting were made in a good faith attempt to convince the government not to pursue charges against his client.[3]  Such pre-indictment meetings happen everyday; indeed, like pre-indictment disposition discussions, bail discussions, discussions designed to expedite phases of a criminal case, and numerous other informal discussions between defense counsel and the government, they are a necessary part of federal criminal practice.  Despite their ubiquity, the government has only rarely been permitted to use statements made by defense counsel at such meetings as substantive evidence of a defendant's guilt.  This is no doubt because using attorney statements against a defendant raises serious risks to both private and public interests, including potentially: (1) infringing upon a defendant's constitutional rights, such as the right against self-incrimination, the right to counsel of one's choice, and the right to the effective assistance of counsel; (2) intruding upon the attorney-client privilege; (3) inhibiting frank discussion between defense counsel and the government on numerous topics designed to expedite trial and pre-trial matters; and (4) discouraging pre-indictment negotiations themselves.  See e.g., Valencia, 826 F.2d at 171-72.

In Valencia, for example, defense counsel sought to persuade the government to release the defendant on bail by explaining that the defendant was innocent.  See id. at 171.  In a series of telephone conversations with the case agent and the Assistant U.S. Attorney, defense counsel elaborated on this claim of innocence by making assertions about the defendant's relationship (or lack thereof) with his alleged co-conspirator, assertions that the government later learned were demonstrably false.  Id.  Just like in this case, the government in Valencia filed an *in limine*

---

[3] The government has made clear that it does not believe Mr. Egbert himself had any knowledge that the samples were contaminated at the time of the October 25th meeting.  See Gov't's Disqualification Memo, at 11, n. 3 ("the Government would note that it has no evidence of, and is not suggesting, that Attorney Egbert had knowledge of the documents' falsity at the time that he presented and discussed the documents with Government representatives").

motion well before trial seeking to admit defense counsel's statements both as substantive

evidence to show the defendant's guilt and as impeaching evidence if the defendant testified.  Id.

The trial court denied the government's motion because using the statements "would be

'contrary to the attorney/client privilege.'"  Id.  As the court stated, "To rule as the government

asks . . . would set a dangerous precedent for the admission of all informal, out-of-court

statements by attorneys against their clients."  Id.  That denial was affirmed by the Second

Circuit, in part, because:

> [T]he admission of [defense counsel's] statements would pose some threat to chilling the prospects for plea negotiations.  Though the statements themselves were not made during the course of plea negotiations and therefore were not automatically excludable under Fed. R. Evid. 410, a statement made by defense counsel protesting a client's innocence may often be the prelude to plea negotiations.  A district court is entitled to consider whether trial use of informal attorney statements will lessen the prospects for plea negotiation or inhibit frank discussion between defense counsel and prosecutor on various topics that must be freely discussed in the interest of expediting trial preparation an the conduct of the trial.

Id. at 173.

Here, the government has gone even further than in Valencia.  It has freely admitted that

Count 22 itself is based solely on the statements and conduct of defense counsel at the October

25th meeting – a meeting that Dr. Ahmed did not attend.  See Arnold Decl. at ¶ 12 ("Count 22 of

the Indictment concerns the meeting that took place on October 25, 2001, between Attorney

Egbert and representatives of the United States.").  Moreover, while paying lip service to the

importance of constitutional protections, the government has repeatedly attempted to intrude on

Dr. Ahmed's Fifth and Sixth Amendment rights, including following through on its threats to

seek disqualification of his long-term counsel, in an attempt to bully Dr. Ahmed into waiving the

attorney-client privilege.  See, e.g., Transcript of Disqualification Hearing, dated November 15,

2005, at 4 (attached at Tab A) ("The stipulation has certain facts in it that only counsel would be

able to testify to."); 6 ("That information can come from no one, other than defense counsel"); 7

("We believe that the crime fraud exception would apply . . . But the government, recognizing

the defendant's Sixth Amendment concerns in this instance, are willing to live with this

stipulation on the condition that it's admitted."); and 15 ("I think we would be able to obtain the

discussions that counsel and his client had.  Number one, under crime fraud . . . We were willing

to forego that argument, in return for an admissible stipulation.").  In other words, the

government has repeatedly and intentionally used counsel's statements at the October 25th

meeting to attempt to break the attorney-client privilege – not through litigation, but rather

through coercion.  This is precisely the type of governmental intrusion into the attorney-client

privilege that led the <u>Valencia</u> court to exclude defense counsel's statements from the trial.

     Nor is this a situation where the government has presented evidence that either the

defendant or his counsel was acting in bad faith at the time of the meeting, such that a line could

be drawn between this case and other pre-indictment negotiations.  To the contrary, the

government has already conceded that defense counsel was acting in good faith at the time of the

meeting.  As for the defendant, the government has yet to point to any evidence showing that he

knew there was anything wrong with the information being imparted at the October 25th meeting,

despite having briefed the details of the meeting in two memoranda of law, an affidavit by the

lead Assistant U.S. Attorney, and at oral argument before this Court.  Unless and until the

government points to some evidence of wrongful intent on the part of the defendant, it ought not

to be permitted to establish a new paradigm where criminal defense attorneys speak to the

government in good faith at their client's automatic peril.  Given the importance of encouraging

pre-indictment discussions with the government generally, and the government's inability to

point to a single piece of admissible evidence in this case to link Dr. Ahmed personally to the

allegedly obstructive conduct, this Court should decline the government's request to admit evidence of Mr. Egbert's statements as substantive evidence of Dr. Ahmed's guilt.

**C.    Even if the Evidence of the October 25<u>th</u> Meeting Were Properly Admissible, the Proposed Stipulation Is Not.**

Finally, even if the government were able to present sufficient evidence to demonstrate the relevance of the October 25th meeting, and even if this Court were inclined to exercise its discretion to admit the evidence, the government cannot introduce that evidence through the Proposed Stipulation.  Under <u>United States v. Diozzi</u>, 807 F.2d 10, 13-14 (1st Cir. 1986), where the government announces an intent to call defense counsel as a witness, an appropriate factual stipulation can provide an acceptable substitute for such testimony.  In drafting such a stipulation, however, <u>Diozzi</u> does not permit the government to go beyond what it would otherwise be able to show through defense counsel's testimony at trial.  <u>See</u> <u>id.</u> at 13 (defense counsel did not need to stipulate to the fact that statements made to the government were false and misleading where the government was unable to establish that fact through counsel's testimony).  Rather, the Federal Rules of Evidence apply to stipulations just as they would to the trial testimony itself.

As this Court is aware, the government moved to disqualify Mr. Egbert from representing Dr. Ahmed at trial because it claimed it needed Mr. Egbert to testify about the October 25th meeting.  Acting in accordance with <u>Diozzi</u>, Mr. Egbert agreed to stipulate to the facts of the October 25th meeting in response to the government's claim, and he remains willing to do so should this Court decide that evidence of the meeting is properly admissible.  But the Proposed Stipulation drafted by the government and attached to its Motion is inadmissible because it clearly implicates, both directly and indirectly, privileged communications between Dr. Ahmed and his attorney that occurred over the sixteen months in between the subpoena's issuance (in

June 2000) and the pre-indictment meeting (in October 2001).  Because the government has made no argument justifying its proposed use of this privileged information against Dr. Ahmed at trial, the stipulation that the government seeks to admit must be excluded.

      1.    <u>The Proposed Stipulation contains inadmissible "facts" that intrude upon the attorney-client privilege.</u>

As an initial matter, the Proposed Stipulation is in lieu of Mr. Egbert's testimony, yet it purports to stipulate to Dr. Ahmed's subjective frame of mind.  For example, ¶ 4 states, "By no later than June 15, 2000, defendant Ahmed was aware of an ongoing criminal investigation that was investigating whether he was engaged in proper Medicare billing practices concerning patients who were diagnosed with pemphigus and/or pemphigoid."  Similar problems are apparent in ¶ 7, which states that Mr. Egbert attended the October 25th meeting "with defendant Ahmed's knowledge and consent."

"A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  <u>See</u> Fed. R. Evid. 602.  Any factual basis upon which Mr. Egbert could assess Dr. Ahmed's knowledge would have arisen as a result of their confidential discussions as attorney and client.  As such, the government cannot inquire into, and Mr. Egbert cannot provide, his assessment of Dr. Ahmed's state of mind without violating the attorney-client privilege.  <u>See</u>, <u>e.g.</u>, <u>United States v. Rakes</u>, 136 F.3d 1, 4 n.4 (1st Cir. 1998) ("Where an attorney knows facts only because they were confidentially communicated by the client, the government cannot circumvent the privilege by asking the attorney about 'the facts.'")(citing <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 395 (1981)).

Through the Proposed Stipulation, the government also seeks privileged communications directly.  In ¶ 5, the Proposed Stipulation states that "defendant Ahmed provided the chart marked as Exhibit __ to his attorney."  Similarly, ¶ 6 asserts that "Defendant Ahmed authorized

his attorney to present that chart to and discuss that chart with the prosecutors and agents who were then investigating defendant Ahmed's Medicare billing practices." And ¶ 7 states that defense counsel made certain statements at the October 25th meeting "[w]ith the authorization of defendant Ahmed." Each of these assertions are nothing more than a bold attempt to re-characterize as "fact" information that is clearly based on prior attorney-client communications.

Information provided by a criminal defendant to his attorney is privileged unless some exception applies. See Rakes, 136 F.3d at 3. Here, Dr. Ahmed and Mr. Egbert engaged in numerous discussions throughout the sixteen months between the issuance of the first subpoena on June 15, 2000, and the October 25, 2001 meeting. During those discussions, Dr. Ahmed revealed numerous confidences for the purpose of seeking legal advice. That Mr. Egbert ultimately met with the government at the pre-indictment stage in an attempt to advocate for his client does not somehow operate to waive the privilege for the communications that occurred over that sixteen-month period. See, e.g., Rakes, 136 F.3d at 5 (noting the difference between disclosing the attorney-client communication itself, which can waive the privilege, and disclosing facts recounted within such a communication, which will not waive the privilege absent some additional showing). Here, the government has made no argument – let alone a sufficient evidentiary showing – upon which this Court could conclude that the privilege's protections for the entire sixteen-month period at issue were waived. Its failure to do so despite its clear acknowledgement at oral argument that its Proposed Stipulation "has certain facts in it that only counsel would be able to testify to," see Tr., Disqualification Hearing, at 4, should send a clear signal that there is no legitimate waiver argument to be made.

2.     The government has not demonstrated that the crime-fraud exception operates to withdraw the protections of the attorney-client privilege in this case.

At base, the government wants to use the Proposed Stipulation to vitiate the attorney-client privilege without having to actually go through the requisite steps to invoke the crime-fraud exception. Fortunately, the law does not permit the privilege's protections to be stripped away so casually.

In order to successfully invoke the crime-fraud exception, the government must make a prima facie showing that Dr. Ahmed sought Mr. Egbert's assistance in furtherance of a crime or fraud. See United States v. Reeder, 170 F.3d 93, 106 (1st Cir. 1999). Specifically, the government must "present evidence: '(1) that the client was engage[ed] in (or was planning) criminal or fraudulent activity when the attorney-client communications took place; *and* (2) that the communications were intended by the client to facilitate or conceal the criminal or fraudulent activity.'" In re Grand Jury Proceedings, 417 F.3d 18, 22 (1st Cir. 2005)(citing In re Grand Jury Proceedings (Violette), 183 F.3d 71, 75 (1st Cir. 1999))(brackets and emphasis in original). This requires the government to present as an initial matter sufficient evidence to show "a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." United States v. Zolin, 491 U.S. 554, 572 (1989)(citation omitted). If the government makes that showing, the Court then has the discretion to perform an *in camera* review of the privileged materials themselves, which may or may not be appropriate depending upon the facts and circumstances of the particular case, in order to decide whether or not to pierce the privilege. Id.

"[N]either speculation nor evidence that shows only a distant likelihood of corruption is enough." In re Grand Jury Proceedings, 417 F.3d at 23. Nor is it enough "to find reasonable cause to believe that the client is guilty of crime or fraud. Forfeiture of the privilege requires the

client's *use or aim to use* the lawyer to foster the crime or the fraud." Id. (emphasis in original).

As explained by the First Circuit:

> The government's underlying notion may be that the privilege is lost for any communication that plays a functional role in a crime – regardless of whether the parties to the communication are entirely innocent and otherwise protected by the privilege. . . . In all events, it is not the law. Under the crime-fraud exception, we think that it takes wrongful complicity by the privilege holder, not innocent or involuntary action, to forfeit the privilege.

Rakes, 136 F.3d at 5. Here, the government cannot make the requisite showing under the crime-fraud exception for much the same reason that it has failed to demonstrate relevance: without evidence showing (1) that the samples were intentionally manipulated as opposed to inadvertently contaminated; and (2) that Dr. Ahmed knew about that manipulation, it is impossible for the government to show that Dr. Ahmed intended to use Mr. Egbert at the October 25th meeting to obstruct justice. See also United States v. Jacobs, 117 F.3d 82, 88 (2nd Cir. 1997)("To subject the attorney-client communications to disclosure, they must actually *have been made with an intent to further an unlawful act*.")(citing United States v. White, 887 F.2d 267, 271 (D.C. Cir. 1989))(emphasis in original).

The government does not argue to the contrary; in fact, it does not argue the crime-fraud exception at all. Given the government's repeated references to the exception at the hearing on its disqualification motion, see, e.g., Tab A at 7, 15, 16, 24, its failure to even invoke the exception in its motion to admit the Proposed Stipulation – which intentionally implicates privileged communications – can fairly be taken as a tacit acknowledgement that the exception is inapplicable to this case. At the very least, until the government presents some evidence to show (1) that Dr. Ahmed knew at some time before October 25, 2001 that the samples had been manipulated, and (2) that he intended to use Mr. Egbert to provide the government with lab reports based on those samples with the intent to obstruct justice, the "facts" set forth in the

Proposed Stipulation cannot be deemed admissible, because they clearly implicate attorney-client communications, and because the government has not presented this Court with any argument as to why the privilege ought not be respected here.

## **CONCLUSION**

For all of the foregoing reasons, Dr. Ahmed respectfully requests that the government's motion to admit evidence of the October 25th meeting be denied until such time as the government demonstrates some link between its speculative theories and the actual evidence.

Respectfully submitted,
**Dr. Abdul Ahmed,**
By his attorney,


__/s/ Richard M. Egbert _____
Richard M. Egbert
99 Summer Street
Boston, MA 02110
(617) 737-8222


Dated: April 10, 2006


## **Certificate of Service**

I, Richard M. Egbert, hereby certify that I have, on this 10th day of April, 2006, caused the above document to be electronically served by hand upon Assistant U.S. Attorneys Michael K. Loucks, James Arnold, and Jeremy Sternberg, Office of the United States Attorney, District of Massachusetts, One Courthouse Way, Boston, MA 02210.

__/s/ Richard M. Egbert _____
Richard M. Egbert