## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

)
UNITED STATES OF AMERICA    )
)                             Case No. 05-10057-RCL
v.                          )
)
ABDUL RAZZAQUE AHMED,        )
)
Defendant          )
_____)

### DEFENDANT'S SUR-REPLY TO GOVERNMENT'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION *IN LIMINE* TO ADMIT STIPULATION INTO EVIDENCE

**I.     The Government Has Failed to Lay the Necessary Foundation to Admit Evidence of the October 25, 2001 Meeting Between the Government and Defense Counsel**

To be relevant to the charge of obstruction, evidence that defense counsel discussed blood sera sample test results with the government at a meeting on October 25, 2001 ("October 25th meeting") must be coupled with evidence that the defendant "caused [those samples] to be mixed" prior to the October 25th meeting  See Indictment ¶ 29; see also id. ¶¶ 36, 39 (incorporating ¶ 29 into obstruction charges).  Yet in its Reply to Defendant's Opposition, the government argues that it is entitled to introduce evidence of the October 25th meeting without the need to proffer anything from which a fact-finder could reasonably conclude (1) that the samples at issue were intentionally manipulated and (2) that Dr. Ahmed knew about that manipulation prior to the October 25th meeting.  See Govt's Reply, pp. 8.[1]  This is because, according to the government, it need not present evidence of a defendant's *mens rea* before introducing "evidence of the defendant's actual involvement" in the crime at issue.  Id.

_____

[1] References to "Govt's Reply, pp. __" refer to the corresponding pages in the government's Reply Brief to Defendant's Opposition to Motion *in Limine* to Admit a Stipulation into Evidence, filed on May 8, 2006.

Yet it is precisely this "actual involvement" on the part of the defendant that the government has not shown.  Based on the discovery provided by the government, Dr. Ahmed did not personally prepare the samples, send them to the lab, perform the lab tests on them, interpret the test results, or prepare any charts or other records reflecting those results, all of which was done at least fifteen months before the October 25th meeting.  Nor has the government identified one shred of evidence that the samples used were intentionally manipulated by *anyone* – much less Dr. Ahmed – or that *anyone* suspected the samples had been contaminated at the time defense counsel provided the test results to the government.  Perhaps most significantly, the very "conduct" that the government claims is "intimately related" to the charges is not Dr. Ahmed's conduct at all; he was not even present at the October 25th meeting – a fact on which the government conveniently does not linger.

In discussing Tate v. Robbins & Myers, Inc., 790 F.2d 10 (1st Cir. 1996),[2] the government correctly explains that the court upheld the refusal to admit an equipment manual that the defendant had admittedly not given to the plaintiff's employer because there was no evidence that the defendant knew that the plaintiff's employer owned the equipment.  See Govt's Reply, pp 9.  As the government points out, "had there been evidence that the manufacturer knew about the employer's purchase of the equipment then 'the question of the relevancy of the 1980 Manual would have been for the jury.'"  Id. (citing Tate, 790 F.2d at 12, n.1).  That is precisely Dr. Ahmed's point.  If the government offered some evidence of relevant knowledge (in this case, that Dr. Ahmed knew about the supposed sample manipulation), then the statements made about those samples to the government would arguably be relevant to the obstruction charge.  Without such knowledge, however, defense counsel's statements to the government at the October 25th meeting, like the

---

[2] The government does not even attempt to distinguish the other First Circuit case cited by Dr. Ahmed in his initial Opposition.  See United States v. Wilson, 798 F.2d 509, 515-16 (1st  Cir. 1986).

failure to give the equipment manual in <u>Tate</u>, do not have any tendency to make it more or less probable that the defendant engaged in wrongful conduct.

Rather than proffer such evidence, the government attempts to establish relevance by pointing to, of all things, the very portions of the Proposed Stipulation that implicate the attorney-client privilege.  <u>See</u> Govt's Reply, pp. 9 (citing Proposed Stipulation ¶ 4, which purports to set forth Dr. Ahmed's understanding of the basis of the investigation); <u>cf.</u> Transcript of Motion Hearing (November 15, 2005)(attached at Tab A), pp. 4-5 ("The stipulation has certain facts in it that only counsel would be able to testify to, [for example] "that by not later than January 15th, 2000, defendant Ahmed was aware of an ongoing criminal investigation.").  Of course, it is Dr. Ahmed's knowledge of the alleged sample manipulation, and not his knowledge of the investigation, that is the conditional fact necessary to establish relevance.  In any event, the foundational standard established by Rule 104(b) requires *admissible* evidence, and the government has offered none. <u>See, e.g.</u>, <u>Huddleston v. United States</u>, 485 U.S. 681, 690 (1988).

## II.  <u>Even if Relevant, the Evidence of Defense Counsel's Conduct and Statements Should Not Be Admitted Against the Defendant.</u>

The government has also failed to identify a single case where a court has done what the government is asking this Court to do: exercise its discretion to admit statements made by a defense attorney during pre-indictment negotiations with prosecuting attorneys in a later criminal trial against the client.  The best the government can muster is a series of tax fraud cases, each of which involved a client-executed written power of attorney filed with the IRS that explicitly authorized the attorney to stand in the taxpayer's shoes.  <u>See</u> <u>U.S. v. O'Connor</u>, 433 F.2d 752, 755-56 (1st Cir. 1970); <u>U.S. v. Martin</u>, 773 F.2d 579, 583 (4th Cir. 1985); <u>U.S. v. Pappas</u>, 806 F. Supp. 1, 4 (D. N. H. 1992); <u>U.S. v. Vito</u>, 1988 WL 78031 at *2 (E.D. Pa. July 22, 1988); <u>see also</u> IRS Form 2848 (attached at Tab B); <u>cf.</u> <u>U.S. v. Amelia</u>, 637 F.Supp. 1205, 1206-07 (D. Mass. 1986)(refusing to

follow <u>O'Connell</u> where the power of attorney executed by the defendant was more limited because the court was "unwilling to imply [broader authority] from the language of this power of attorney, particularly in a criminal case").

Unlike the meetings at issue in the government's tax fraud cases, the October 25th meeting was not a meeting between a proxy for Dr. Ahmed and an investigating agent.  <u>See</u> Tab B (IRS power of attorney authorizes representative to stand in shoes of taxpayer and sign any agreements, consents or other documents in taxpayer's stead).  Defense counsel in this case met with the lead Assistant U.S. Attorney a year and a half after the investigation began in an attempt to reach an agreement and prevent an indictment of his client – the type of meeting that is an everyday part of federal criminal practice and that has never before been used, to defense counsel's knowledge, as substantive evidence of a defendant's guilt.  In fact, as the government points out, Mr. Egbert's statements at the meeting are barred from admission by Federal Rule of Evidence 410.  <u>See</u> Govt's Reply, pp. 15.  Although not explicitly plea discussions, such pre-indictment meetings between counsel are understood by both sides to be a "preliminary step" toward plea agreements and, as such, cannot be used at trial.  <u>U.S. v. Stein</u>, 2005 WL 1377851 at * 10 (E.D. Pa. June 8, 2005)("the amended rules are intended to cover more than just discussions concerning the plea itself and extend to discussions concerning the preliminary steps to a negotiated plea"); <u>cf.</u> <u>U.S. v. Penta</u>, 898 F.2d 815, 817-18 (1st Cir. 1990)(inculpatory statements made by an unrepresented defendant to investigators and prosecutors at very beginning of investigation are not "plea discussions" within the meaning of the Rules).

The government appears to acknowledge Rule 410's applicability to the October 25th meeting but mistakenly suggests that defense counsel needed to "invoke the protections" at the meeting to earn the shelter of the Rule.  <u>See</u> Govt's Reply, pp. 15.  Contrary to the government's

understanding, there are no "magic words" necessary for the statements made at the October 25th meeting to be inadmissible pursuant to Rule 410.  <u>See</u>, <u>e.g.</u>, <u>Stein</u>, 2005 WL 1377851 at *13 ("Nothing in [Fed. R. Ev. 410] requires such 'magic words' and interpreting the rules to require them would render the rules arbitrary and unworkable").  Statements made in plea discussions or in anticipation of plea discussions are protected unless and until the defendant waives such protection. <u>See</u> Fed. R. Ev. 410(4)(precluding the admission of evidence against the defendant, including "any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which results in a plea of guilty later withdrawn"); <u>U.S. v. Mezzanatto</u>, 514 U.S. 196, 205 (1995)(protections afforded by Rule 410 may be waived or varied at defendant's request).  Defendant Ahmed signed no such waiver and thus his lawyer's statements cannot be used against him.

Even if the statements made at the October 25th meeting were not automatically excluded under Federal Rule of Evidence 410, the same policy considerations underlying that Rule would properly to inform this Court's discretion.  <u>See</u>, <u>e.g.</u>, <u>U.S. v. Sanders</u>, 979 F.2d 87, 92 (7th Cir. 1992); <u>U.S. v. Valencia</u>, 826 F. 2d 169 (2d Cir. 1987)(discussed in Defendant's Opposition at 6-9). Given the government's persistent attempts to gain a tactical advantage in this case by disrupting defense counsel's representation of Dr. Ahmed and attempting to force a waiver of the attorney client privilege, as well as its unwillingness to lay a proper foundation, the government's unprecedented request to admit evidence of defense counsel's meeting with the government ought to be denied.

**III.    <u>Dr. Ahmed Has Not Waived the Privilege with Respect to his Confidential Attorney Client Communications.</u>**

Finally, with respect to those portions of Proposed Stipulation ¶¶ 4-7 over which Dr. Ahmed has asserted his attorney-client privilege, Dr. Ahmed did not waive the privilege:  (1) when defense

counsel attended the October 25th meeting; (2) when defense counsel agreed to the stipulation; or (3) when defense counsel made in-court statements relating to the "facts" included in the stipulation.[3]

The government cites <u>U.S. v. Massachusetts Institute of Technology</u>, 129 F.3d 681 (1st Cir. 1997), for the unremarkable proposition that when disclosure is made to a government agency, the privilege is waived. In that case, however, MIT claimed the privilege as to the very documents it had disclosed to another agency. <u>Id.</u> at 683. Dr. Ahmed does not claim that the chart reflecting the test results, or anything else said or given to the government at the October 25th meeting, is privileged. The attorney-client discussions prior to that meeting, however – including any words, documents, or items exchanged between Dr. Ahmed and his attorney over the course of their then-sixteen-month relationship – most certainly are.[4] <u>Cf.</u> <u>U.S. v. Rakes</u>, 136 F.3d 1, 5 (1st Cir. 1998)(noting the difference between disclosing the attorney-client communication itself, which can waive the privilege, and disclosing facts recounted within such a communication, which will not waive the privilege absent some additional showing).

For this reason, the government's argument that "it was Dr. Ahmed's intention that the chart be shared and discussed with third parties" is a red herring. It confuses the chart, which was given to the government and is thus clearly not privileged, with Dr. Ahmed's confidential attorney-client communications, which were not disclosed and were never intended to be disclosed. Here, an individual under investigation made numerous disclosures over an extended period of time to his criminal defense lawyer with the expectation that the lawyer would decide how best to use that

---

[3] Interestingly, after repeatedly threatening at the disqualification hearing to assert the crime-fraud exception should Dr. Ahmed invoke the privilege, the government has now "elected not to press a crime-fraud argument." <u>See</u> Govt's Reply, pp. 8, n.2. This is particularly surprising given the government's theory of culpability on the obstruction charge.

[4] To the extent the government has based its argument upon an imagined scenario in which Dr. Ahmed handed Mr. Egbert the chart while saying, "Please give this to the government for me," the undersigned can assure the Court that was not even remotely the case.

information throughout the course of representation.  The cases cited by the government are simply

not applicable to this situation.  Cf. In re Grand Jury Proceedings, 727 F. 2d 1352 (4th Cir.

1984)(attorney ordered to testify where discussions concerned a document that was always intended

to be published, one privilege holder affirmatively waived the privilege, and the other two did not

assert it); U.S. v. Colton, 306 F.2d 633, 639 (2d Cir. 1962)(distinguishing between information

provided to an attorney for the explicit purpose of inclusion on a tax return from "confidential

communications," and noting that it is "self-evident" that any documents or testimony reflecting

confidential communications between the client and attorney were "necessarily privileged"); U.S. v.

Tellier, 255 F.2d 441, 447 (2d Cir. 1958)(no intent to keep communication confidential where, at

the time of the communication, the attorney advised the client that he would also disclose the

contents of the communication to two other people).

This is not a case where the defendant personally met with the government and disclosed the

substance of actual conversations with his lawyer.  Cf. U.S. v. Morrell-Corrada, 343 F.Supp.2d 80,

87 (D. P.R. 2004)(client waived the privilege when he attended a meeting with the government,

asserted that the attorney "never was [his] lawyer" and told the government in detail the contents of

his communications with the attorney).  In fact, it is undisputed that Dr. Ahmed *never* met with the

government on October 25, 2001, or at any other time.  And because the privilege belongs to Dr.

Ahmed, it is his to waive, which he clearly has not done.  Data General Corp. v. Grumman Sys.

Support Corp., 139 F.R.D. 556, 559 (D. Mass. 1991)(citing Helman v Murray's Steaks, Inc., 728

F.Supp. 1099, 1104 (D. Del. 1990)("The holder of the privilege is the client. It would fly in the face

of the essential purpose of the attorney/client privilege to allow a truly inadvertent disclosure of a

privileged communication by counsel to waive the client's privilege."); see also See Kevlik v.

Goldstein, 724 F. 2d 844, 849 (1st Cir. 1984)(intent of the client controls).

Even if the privilege were Mr. Egbert's to waive, which it is not, the government does not claim that he did so by discussing any attorney-client conversations at the October 25th meeting. Instead, the government appears to believe that merely by meeting with the government, defense counsel waived Dr. Ahmed's attorney-client privilege. See Govt's Reply, pp. 19 (arguing that Mr. Egbert waived the privilege by making "a presentation to representatives of the United States on October 25, 2001, [while] acting within the scope of his representation on Ahmed's behalf and using the chart to try to convince the United States that Ahmed had not defrauded Medicare"). This expansive theory of the law of waiver is, quite frankly, absurd. Lawyers do not waive the attorney-client privilege by advocating for their clients, even when that advocacy involves discussing facts communicated by the client to the lawyer. See Rakes, 136 F.3d at 5. The government's apparent belief that individuals under investigation must choose between maintaining the privilege over communications with their attorneys and having those same attorneys use the information so communicated to zealously advocate on their behalf reflects a fundamental misunderstanding of both the attorney-client relationship and the law.

The government's two-sentence argument that defense counsel waived the privilege five years after the October 25th meeting in the context of defending against the government's disqualification motions is equally without merit. Defense counsel could not, consistent with Diozzi, refuse to stipulate to the facts that the government insisted it needed from him. However, he expressly reserved the right to challenge that stipulation on the ground that it was not admissible, in part because it violated the attorney-client privilege. It was precisely because defense counsel would not agree to waive this challenge that the government decided to press its disqualification motion. See Tab A, pp. 6-7. And, as the transcript reflects, at that hearing, defense counsel repeatedly reserved the privilege on the record. See, e.g., Tab A, pp. 8 ("I don't think they can get

to it, because of the attorney client privilege . . . which is not waived"), 9 ("They want the privilege

waived.  And it's simply not going to happen."), 31 ("I'm stipulating as to what facts occurred.  I

agree with that, without waiving the privilege as to those facts or any of the facts in the

stipulation.")  Given defense counsel's repeated assertion of Dr. Ahmed's privilege throughout the

course of these proceedings, the government's claim that he somehow simultaneously waived it is

specious.  See, e.g., In Re Keeper of Records, 348 F.3d 16, 27-28 (1st  Cir. 2003)(where defense

counsel expressly reserves privilege, government cannot use subsequent disclosures to argue

waiver).

## CONCLUSION

For the foregoing reasons and the reasons contained in Defendant's initial Opposition,  Dr.

Ahmed respectfully requests that the Court deny the Government's motion at this time.


Respectfully submitted,
**Dr. Abdul Ahmed,**
By his attorney,


___/s/ Richard M. Egbert _____
Richard M. Egbert
99 Summer Street
Boston, MA 02110
(617) 737-8222

Dated: May 22, 2006.

## Certificate of Service

I, Richard M. Egbert, hereby certify that I have, on this 22nd  day of May, 2006, caused the above document to
be electronically served by hand upon Assistant U.S. Attorneys Michael K. Loucks, James Arnold, and Jeremy
Sternberg, Office of the United States Attorney, District of Massachusetts, One Courthouse Way, Boston, MA 02210.

___/s/ Richard M. Egbert _____
Richard M. Egbert

# EXHIBIT A

1

1 - 33

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,      )
               Plaintiff, )
                         )
-V-                            )      CRIMINAL DOCKET NO.
                         )      05-10057-RCL
ABDUL RAZZAQUE AHMED,          )
              Defendant. )

MOTION HEARING
BEFORE THE HONORABLE JUDITH G. DEIN
UNITED STATES MAGISTRATE JUDGE

November 15, 2005

Boston, Massachusetts

For the United States:

    JEREMY STERNBERG, ESQ.
    JAMES E. ARNOLD, ESQ.
    Assistant U.S. Attorneys
    Office of the United States Attorney
    1 Courthouse Way
    Boston, MA  02210
    (617) 748-3100

For the Defendant:

    RICHARD M. EGBERT, ESQ.
    99 Summer Street
    Suite 1800
    Boston, MA  02110
    (617) 737-8222

Proceedings recorded by electronic sound recording,
transcript produced by Apex Reporting.

4

1  witness on the stand to cure that evidentiary issue.  If

2  you're with a naked stipulation and there's an objection as

3  to some aspect of that, the government is without a witness

4  to cure the objection.

5          THE COURT:  I'm having a hard time following that.

6  I have to tell you.  It seems to me that you've got --

7  you've set up this situation where first of all, if I

8  understand it, there are other potential witnesses of people

9  who were there.

10          MR. STERNBERG:  That's not correct.

11          THE COURT:  Not correct?

12          MR. STERNBERG:  That isn't --

13          THE COURT:  There is not another lawyer who was

14  involved?

15          MR. ARNOLD:  Well, the problem, Your Honor, is

16  that the stipulation, as currently written -- and

17  Mr. Sternberg, do you have a copy that we can provide the

18  court?  May I approach?

19          THE COURT:  Yes.

20          MR. ARNOLD:  The stipulation has certain facts in

21  it that only counsel would be able to testify to.  And those

22  include, among others, that if you look at paragraph 4, that

23  by not later than January 15th, 2000, defendant Ahmed was

24  aware of an ongoing criminal investigation that was

25  investigating whether he was engaged in proper Medicare

5

1  billing practices, concerning patients who were diagnosed
2  with Pemphigus and/or Pemphigoid.

3          THE COURT:  Why would Mr. Egbert be the only one
4  that knew that.  I mean did you tell him he was being
5  investigated?

6          MR. ARNOLD:  He was well aware of it.  There was
7  --

8          THE COURT:  How was he aware of it?

9          MR. ARNOLD:  There were subpoenas that had been
10 served.  But that shows that counsel was aware.  But in
11 terms of the defendant's personal knowledge, the government
12 is entitled to its best evidence, not secondary evidence
13 that we submitted -- that a grand jury subpoena was served
14 on the defendant.  But we're entitled to our best evidence.
15 And the best evidence, in this instance, comes from counsel,
16 particularly, if we continued forward with the stipulation
17 No. 5, that defendant Ahmed provided the chart to his
18 attorney.

19         THE COURT:  I don't have that.  Oh, that's No. 6?
20         MR. ARNOLD:  If you look, not at the handwritten
21 mark, but if you go behind the handwritten marks, there's a
22 clean copy, which incorporates the changes as proposed by
23 defense counsel.

24         THE COURT:  I'm sorry.  I have a motion here.
25 Okay.

6

1          MR. ARNOLD:  No. 5.

2          THE COURT:  Okay.

3          MR. ARNOLD:  That sometime before October 25th,

4   2001, which is the date of the meeting with the government,

5   the defendant Ahmed provided the chart to his attorney.  And

6   paragraph 6, the defendant Ahmed authorized his attorney to

7   present that chart to and discuss that chart with the

8   prosecutors and agents who were then investigating defendant

9   Ahmed's Medicare billing practices.

10          That information can come from no one, other than

11   from defense counsel.

12          THE COURT:  Okay.  And he said that he's willing

13   to stipulate to it?

14          MR. ARNOLD:  But he's not willing to stipulate to

15   the admissibility.

16          THE COURT:  But doesn't the judge rule?  If you

17   put him on the stand and there's a question that says, did

18   Dr. Ahmed give you this chart, all right?  And there's an

19   objection as to admissibility, then the judge rules.

20          MR. ARNOLD:  And then it's resolved, and the

21   government can cure -- the government can cure any problem

22   with admissibility by creating a better foundation,

23   following up with the questions.  In contrast, in this

24   situation, Mr. Egbert would remain as trial counsel.  The

25   jury would have already seen Mr. Egbert.  Mr. Egbert would

7

1    have done opening statements.  And at the point in time when
2    the government's seeking --

3             THE COURT:   What kind of foundation problems are
4    you worried about?

5             MR. ARNOLD:   We're not aware of what the problem
6    with admissibility is.  We believe it's admissible.  What
7    we're trying to find out from counsel and counsel hasn't
8    articulated for us is why he believes that this might not be
9    admissible.

10            If it were admissible, then all the issues
11   surrounding our motion to disqualify are gone.  The only
12   reason that we're here today is we reached a factual
13   stipulation that the government deem sufficient.  Not all
14   that we could get from Mr. Egbert, were Mr. Egbert to
15   testify.

16            We believe that the crime fraud exception would
17   apply in this situation and that we could actually get more
18   testimony from Mr. Egbert were he to testify.  But the
19   government, recognizing the defendant's Sixth Amendment
20   concerns in this instance, are willing to live with this
21   stipulation on the condition that it's admitted.

22            THE COURT:  Okay.  Mr. Egbert?

23            MR. EGBERT:  Your Honor, I think our brief handles
24   the law in this, so let me just get right down to the issue
25   that you've addressed.  What the government had done and is

8

1  attempting to do now is exactly what they're not permitted
2  to do.  Number one, yes, I agreed that I would stipulate,
3  for example, Dr. Ahmed knew such and such or gave me such
4  and such as a true fact, but not it's admissibility.

5          I don't think they can get to it, because of the
6  attorney/client privilege, for example, which is not waived.
7  I don't think they can get to it for other reasons of agency
8  and the like, which I've cited some cases to you in the
9  brief.

10         And so what the government is really attempting to
11 do here is to turn the whole issue on its head and basically
12 say, for you to stay in as counsel, for Dr. Ahmed to keep
13 the lawyer he's had for five years involved in this case, we
14 want him to waive the attorney/client privilege, no.  We
15 want him to stipulate that something is admissible in court,
16 without knowing the status of it, when we come to that time;
17 waiving arguments that's irrelevant; waiving arguments that
18 it's immaterial; waiving the argument that counsel's
19 statements to the government during the course of a
20 discussion about whether or not they should indict or
21 shouldn't indict are or are not relevant and material
22 evidence in a criminal case and the like.

23         Moreover, we believe that the government has
24 virtually no evidence that shows anything like manipulation
25 of these samples or that Dr. Ahmed was responsible for a

9

1   nefarious manipulation of samples, versus DNA contamination

2   of samples, which would make the very foundation of this

3   whole chart, this whole piece of evidence, inadmissible

4   without that prior showing in that regard.

5           So all of those things seem to me be ones which

6   are out there live, whether I testify or not.  I offered to

7   the government the following, as to allay any fears that

8   they're being set up in some way, which seems to be the

9   problem here.

10          Well, it's basically, we don't know what he's

11  going to object to.  Well, that's what trials are for.  I

12  told him look, if there comes a time when there's a problem

13  of a foundation issue, for example, if they needed me to add

14  a statement that x or y, then we can either stipulate to it,

15  at the time of the -- with another stipulation, or handle it

16  out of the presence of the jury as a foundational matter or

17  do a motion in limine ahead of trial, as to the

18  admissibility of the evidence.  So that it not be even close

19  to an issue.

20          They've rejected all of those.  And the reason

21  they've rejected them is simple.  They don't want to risk

22  losing the -- they want it stipulated to be admissible and

23  they want the privilege waived.  And it's simply not going

24  to happen.  And so it seems to me that the government has

25  made a choice and they said well, we won't take the

31

1        MR. ARNOLD:  You either stipulate to the fact and
2   acknowledge the fact occurred, or you say we can't stipulate
3   to that, because we believe it's privileged.  We're caught
4   between the proverbial rock and a hard place on this one.
5        THE COURT:  Mr. Egbert?
6        MR. EGBERT:  I don't -- I don't understand it.  I
7   mean I'm not trying to be facetious, but I simply don't
8   understand the argument.  I'm stipulating as to what facts
9   occurred.  I agree with that, without waiving the privilege
10  as to those facts or any of the facts in the stipulation.
11       I'm also not waiving any objections to the
12  admissibility of those facts.  And you should know that I
13  did agree to with the government, and that that's why this
14  all comes up as kind of bizarre.  I told them at the outset,
15  I said I'll agree to the authenticity to the documents up
16  front, so you don't have an authenticity problem, you know,
17  at the end of the day and say, oh boy, we forgot to do that.
18       But as to objections, I don't waive them.  And as
19  to the privilege, I don't waive that.
20       THE COURT:  Okay.  I'm denying the motion.  I will
21  be issuing a decision, but not today.  So if you want to get
22  back to me tomorrow, you have the right to submit something
23  else.  And this will hopefully be written by the end of the
24  week.  Okay?
25       MR. ARNOLD:  Thank you.

# EXHIBIT B

Form **2848**

(Rev. March 2004)
Department of the Treasury
Internal Revenue Service

# Power of Attorney
## and Declaration of Representative

▶ Type or print. ▶ See the separate instructions.

OMB No. 1545-0150

**For IRS Use Only**

Received by:

Name _____

Telephone _____

Function _____

Date __/__/__

| **Part I** | **Power of Attorney** |
|---|---|
| | Caution: *Form 2848 will not be honored for any purpose other than representation before the IRS.* |

**1    Taxpayer information.** Taxpayer(s) must sign and date this form on page 2, line 9.

| Taxpayer name(s) and address | Social security number(s) | Employer identification number |
|---|---|---|
| | | |
| | Daytime telephone number<br>(      ) | Plan number (if applicable) |

hereby appoint(s) the following representative(s) as attorney(s)-in-fact:

**2    Representative(s)** must sign and date this form on page 2, Part II.

| Name and address | CAF No. ............................................<br>Telephone No. ...................................<br>Fax No. ...............................................<br>Check if new: Address ☐   Telephone No. ☐   Fax No. ☐ |
|---|---|
| Name and address | CAF No. ............................................<br>Telephone No. ...................................<br>Fax No. ...............................................<br>Check if new: Address ☐   Telephone No. ☐   Fax No. ☐ |
| Name and address | CAF No. ............................................<br>Telephone No. ...................................<br>Fax No. ...............................................<br>Check if new: Address ☐   Telephone No. ☐   Fax No. ☐ |

to represent the taxpayer(s) before the Internal Revenue Service for the following tax matters:

**3    Tax matters**

| Type of Tax (Income, Employment, Excise, etc.)<br>or Civil Penalty (see the instructions for line 3) | Tax Form Number<br>(1040, 941, 720, etc.) | Year(s) or Period(s)<br>(see the instructions for line 3) |
|---|---|---|
| | | |
| | | |
| | | |

**4    Specific use not recorded on Centralized Authorization File (CAF).** If the power of attorney is for a specific use not recorded on CAF, check this box. See the instructions for **Line 4. Specific uses not recorded on CAF.** . . . . . . . . . . ▶ ☐

**5    Acts authorized.** The representatives are authorized to receive and inspect confidential tax information and to perform any and all acts that I (we) can perform with respect to the tax matters described on **line 3**, for example, the authority to sign any agreements, consents, or other documents. The authority does not include the power to receive refund checks (see line 6 below), the power to substitute another representative, the power to sign certain returns, or the power to execute a request for disclosure of tax returns or return information to a third party. See the line 5 instructions for more information.

**Exceptions.** An unenrolled return preparer cannot sign any document for a taxpayer and may only represent taxpayers in limited situations. See **Unenrolled Return Preparer** on page 2 of the instructions. An enrolled actuary may only represent taxpayers to the extent provided in section 10.3(d) of Circular 230. See the line 5 instructions for restrictions on tax matters partners.

List any specific additions or deletions to the acts otherwise authorized in this power of attorney: ...............................

.....................................................................................................................................................

.....................................................................................................................................................

.....................................................................................................................................................

.....................................................................................................................................................

**6    Receipt of refund checks.** If you want to authorize a representative named on line 2 to receive, **BUT NOT TO ENDORSE OR CASH**, refund checks, initial here _____ and list the name of that representative below.

Name of representative to receive refund check(s) ▶

For Privacy Act and Paperwork Reduction Notice, see page 4 of the instructions.         Cat. No. 11980J         Form **2848** (Rev. 3-2004)

Form 2848 (Rev. 3-2004)                                                                                          Page **2**

7    **Notices and communications.** Original notices and other written communications will be sent to you and a copy to the
     first representative listed on line 2.
  a  If you also want the second representative listed to receive a copy of notices and communications, check this box  . ▶ ☐
  b  If you do not want any notices or communications sent to your representative(s), check this box  . . . . . . . . ▶ ☐

8    **Retention/revocation of prior power(s) of attorney.** The filing of this power of attorney automatically revokes all earlier
     power(s) of attorney on file with the Internal Revenue Service for the same tax matters and years or periods covered by
     this document. If you **do not** want to revoke a prior power of attorney, check here.  . . . . . . . . . . . ▶ ☐
     **YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.**

9    **Signature of taxpayer(s).** If a tax matter concerns a joint return, **both** husband and wife must sign if joint representation is
     requested, otherwise, see the instructions. If signed by a corporate officer, partner, guardian, tax matters partner, executor,
     receiver, administrator, or trustee on behalf of the taxpayer, I certify that I have the authority to execute this form on behalf
     of the taxpayer.

     ▶ **IF NOT SIGNED AND DATED, THIS POWER OF ATTORNEY WILL BE RETURNED.**

| Signature | Date | Title (if applicable) |
|---|---|---|

| Print Name | ☐☐☐☐☐ PIN Number | Print name of taxpayer from line 1 if other than individual |
|---|---|---|

| Signature | Date | Title (if applicable) |
|---|---|---|

| Print Name | ☐☐☐☐☐ PIN Number | |
|---|---|---|

**Part II**   **Declaration of Representative**

**Caution:** *Students with a special order to represent taxpayers in Qualified Low Income Taxpayer Clinics or the Student Tax Clinic
Program, see the instructions for Part II.*

Under penalties of perjury, I declare that:
  • I am not currently under suspension or disbarment from practice before the Internal Revenue Service;
  • I am aware of regulations contained in Treasury Department Circular No. 230 (31 CFR, Part 10), as amended, concerning
    the practice of attorneys, certified public accountants, enrolled agents, enrolled actuaries, and others;
  • I am authorized to represent the taxpayer(s) identified in Part I for the tax matter(s) specified there; and
  • I am one of the following:
   a  Attorney—a member in good standing of the bar of the highest court of the jurisdiction shown below.
   b  Certified Public Accountant—duly qualified to practice as a certified public accountant in the jurisdiction shown below.
   c  Enrolled Agent—enrolled as an agent under the requirements of Treasury Department Circular No. 230.
   d  Officer—a bona fide officer of the taxpayer's organization.
   e  Full-Time Employee—a full-time employee of the taxpayer.
   f  Family Member—a member of the taxpayer's immediate family (i.e., spouse, parent, child, brother, or sister).
   g  Enrolled Actuary—enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the
      authority to practice before the Service is limited by section 10.3(d) of Treasury Department Circular No. 230).
   h  Unenrolled Return Preparer—the authority to practice before the Internal Revenue Service is limited by Treasury Department
      Circular No. 230, section 10.7(c)(1)(viii). You must have prepared the return in question and the return must be under
      examination by the IRS. See **Unenrolled Return Preparer** on page 2 of the instructions.

▶ **IF THIS DECLARATION OF REPRESENTATIVE IS NOT SIGNED AND DATED, THE POWER OF ATTORNEY WILL
  BE RETURNED.** See the Part II instructions.

| Designation—Insert above letter **(a–h)** | Jurisdiction (state) or identification | Signature | Date |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

Form **2848** (Rev. 3-2004)