UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** ) | **CRIMINAL NO. 05-10057-RCL** |
| ) | |
| v.   ) | |
| ) | |
| **ABDUL RAZZAQUE AHMED** ) | |
| ) | |
| **Defendant** ) | |

**UNITED STATES' REPLY
TO DEFENDANT AHMED'S LETTER BRIEF DATED JULY 19, 2006
ENCLOSING A PORTION OF A BRIEF IN A CASE PENDING IN FEDERAL COURT
IN RHODE ISLAND CAPTIONED UNITED STATES V. URCIOULI**

By letter to the Court dated July 19, 2006, defendant Ahmed, through his counsel, encloses a portion of a brief filed by the United States on July 15, 2006 in the case of United States v. Urciouli, 06-CR-002-T-RWL, and apparently on the issue of admissibility of statements of counsel on behalf of a defendant, concludes that "the government, at least in Rhode Island, agrees with my position in United States v. Ahmed."

Having informed itself as to the nature, circumstances, parties and counsel in that Rhode Island proceeding, the United States hereby responds that the fragment of a brief submitted to the Court by defendant Ahmed does not advance his effort to stymie the admission of the Stipulation at issue here.

On January 5, 2006, Robert Urciuoli and others were indicted by a federal grand jury in Rhode Island on a variety of charges, including defrauding the people of the State of Rhode Island of the honest services of a Rhode Island state legislator named John Celona. According to the Indictment, Urciuoli, who was President and CEO of the Roger Williams Medical Center ("RWMC"), and others conspired to pay money to Celona "to improperly influence and affect the official actions of Celona, specifically, to cause him to use his influence, power, and

authority as a State Senator to benefit the political and financial interests of RWMC and its affiliates." Indictment ¶15. Mr. Urciouli is represented in that matter by Richard Egbert (among other counsel).

As part of the Urciouli criminal proceeding, Mr. Egbert and his colleagues filed, on June 5, 2006, a "Memorandum of Law in Support of Robert A. Urciuoli's Motion to Compel Disclosure of (1) Exculpatory Evidence and (2) the Government's Position Regarding Co-Defendant Frances Driscoll's FBI Interview Statements." In that Memorandum, Attorney Egbert and his colleagues, urged, on behalf of their client, that the government should produce in discovery statements made by counsel for Celona, the state legislator whose honest services are at the heart of the Indictment. In their Memorandum, Attorney Egbert and his colleagues assert that "[s]tatements made by counsel within the scope of representing a witness are statements of an agent within the scope of the agency relationship, attributable to the principal/client, and, therefore, should be treated as statements of the client for purposes of Urciuoli's discovery rights." Memorandum at p. 7 (attached hereto as Ex. A). He further urged that under "the traditional law of agency, the statements of an agent made in the course of the agency serve to bind the principal." Id. In the course of responding to the motion filed by Attorney Egbert and his colleagues, the United States Attorney's Office for the District of Rhode Island included the statements excerpted in the July 19 letter brief to this Court.

The fact that in a different proceedings (pending in different federal districts), wholly unrelated to each other, on different issues, wholly unrelated to each other, the United States has made varying arguments about the applicability of the Second Circuit's decision in United States v. Valencia, and Attorney Egbert has made varying arguments about the use of statements by

counsel, is of no practical or legal consequence to this Court's pending ruling on the United States' Motion in Limine on the Admissibility of the Stipulation.

                                    MICHAEL J. SULLIVAN
                                    United States Attorney

By:   /s/ Jeremy M. Sternberg
       James E. Arnold
       Jeremy M. Sternberg
       Assistant United States Attorneys
       One Courthouse Way, Suite 9200
       Boston, MA 02210
       (617) 748-3142

July 26, 2006

### Certificate of Service

     I hereby certify that I served a copy of the foregoing pleading on Richard M. Egbert, Law Offices of Richard M. Egbert, 99 Summer Street, Suite 1800, Boston, MA 02110, this day by mail.

                                  /s/ Jeremy M. Sternberg
                                  Jeremy M. Sternberg
                                  Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| VS. : | CR 06-02-01-T |
| : | |
| ROBERT A. URCIUOLI, : | |
| FRANCES P. DRISCOLL, : | |
| PETER J. SANGERMANO, JR., and : | |
| ROGER WILLIAMS MEDICAL CENTER : | |

**MEMORANDUM OF LAW IN SUPPORT OF ROBERT A. URCIUOLI'S
MOTION TO COMPEL DISCLOSURE OF (1) EXCULPATORY EVIDENCE,
AND (2) THE GOVERNMENT'S POSITION REGARDING CO-DEFENDANT
FRANCES DRISCOLL'S FBI INTERVIEW STATEMENTS**

Defendant Robert A. Urciuoli ("Urciuoli") respectfully submits this Memorandum of Law in support of his Motion to Compel Disclosure of Exculpatory Evidence and the Government's Position regarding Frances Driscoll's FBI Interview Statements.

## DISCOVERY PROCEEDINGS

### A. Exculpatory Evidence

The Government produced discovery materials to Urciuoli on February 10, 2006 and April 12, 2006. Based on counsel's review of the documents, grand jury transcripts and witness statements disclosed, we believe that certain exculpatory evidence has not been produced by the Government. Accordingly, on April 12, 2006, counsel for Urciuoli propounded to the Government a very detailed and specific request for information pursuant to Rule 16 and Brady v. Maryland (the "Request"), a copy of which is attached hereto as Exhibit A. Urciuoli specifically requested that, in the event the Government did not produce information in response to any of his requests, it state whether it has such information in its possession, custody or control and, if so, the reason(s) for the Government's refusal to disclose it. See Exhibit A. The

#584357v1

Request for statements of witnesses was not limited to formal interview reports and grand jury transcripts; it expressly sought "any form of writing reflecting such information, as well as information not reduced to writing (i.e. information verbally conveyed to the Government), for the reason that exculpatory information must be disclosed to the Government regardless of whether it has been reduced to writing at the time it is requested." See Exhibit A. Thus, the Request contemplated all writings possessed by the Government, including notes of agents and Government attorneys, as well as information not reduced to writing.

The Government's response stated merely that the documents it had produced were produced "in accordance with the Court's pre-trial Order and Rule 16." See Exhibit B. The Government's response further stated, "At this time, we are unaware of additional information which falls within the scope of Rule 16 and the Court's pre-trial Order." Id.

On June 1, 2006, in accordance with Local Rule 12(c)(2), counsel for Urciuoli conferred with the Government to attempt to resolve outstanding discovery disputes. The Government declined to disclose agent or Government attorney notes voluntarily. See Exhibit C. The Government also rejected Urciuoli's position that statements by counsel for a witness are covered by the Government's obligations under Rule 16 and Brady v. Maryland. Id. Lastly, the Government declined to voluntarily disclose redacted portions of the 302s reflecting Celona's statements. The Government advised that its reason for this position is that the redactions pertain to the Government's investigations relating to CVS, Blue Cross/Blue Sheild (BC/BS) and others, and are therefore not discoverable by Urciuoli.

B. **The Government's Position Regarding Frances Driscoll's Statements to the FBI**

On April 12, 2006, counsel for Urciuoli inquired of Assistant United States Attorney Luis Matos whether the Government intended to offer during its case in chief all or any part of the

#584357v1                                        2

statements of Frances Driscoll reflected in an FBI 302. In response, AUSA Matos merely referred counsel for Urciuoli to the Proffer Letter under which Driscoll gave her testimony. See Exhibit D. The terms of the Proffer Letter simply reflect the Government's agreement that such statements will not be used against the witness if the Government believes the witness' testimony was truthful. See Exhibit E. AUSA Matos did not indicate whether the Government believes that Driscoll has testified truthfully, nor did AUSA Matos' response answer the question of whether the Government intends to use Driscoll's 302 at trial. See Exhibit D.

## I. EXCULPATORY EVIDENCE

### A. The Legal Standard

The Constitution requires the Government to produce all "evidence favorable to an accused upon request...where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). Evidence is "favorable" if it tends to exculpate the accused or is useful to impeach the credibility of a Government witness. United States v. Wong, 78 F.3d 73 (2d Cir. 1996). The Government's obligation under Brady v. Maryland extends to all information in its possession, custody or control. Thus, the "prosecutor must disclose information maintained by Government agents even if the prosecutor herself does not possess the information." United States v. Hall, 434 F.3d 42, 55 (1st Cir. 2006).

Exculpatory evidence falls into two general categories – evidence that affects the credibility of the Government's witnesses and evidence that negates guilt. United States v. Wong, 78 F.3d 73 (2d Cir. 1996). The law is well-settled that the Government must disclose evidence that would impeach its key witnesses. United States v. Cooper, 662 F. Supp. 913, 919 (D. R.I. 1987) (citing United States v. Bagley, 473 U.S. 667 (1985)) (the prosecution's duty

#584357v1                                3

under Brady v. Maryland and its progeny to preserve and disclose evidence favorable to the accused includes evidence that a defendant may use to impeach the Government's witnesses by demonstrating bias or interest).

Evidence is exculpatory if it tends to negate guilt or undermine an essential element of the charged offense. United States v. Wong, 78 F.3d 73 (2d Cir. 1996). In order to prove honest services mail fraud, the Government must prove that Urciuoli knowingly and willfully participated in a scheme to defraud. United States v. Woodward, 149 F.3d 46, 54 (1st Cir. 1998). "Willfully" means to act knowingly and purposely, with intent to do something the law forbids . . . . with bad purposes either to disobey or to disregard the law." See United States v. Sawyer, 94-10168 (February 27, 1995) (Charge To The Jury). Thus, the Government must establish that Urciuoli believed he was committing a crime or violating the law at the time that he made use of the mails. Id. Good faith is a defense to mail fraud, and the burden is on the Government to prove lack of good faith beyond a reasonable doubt. Id.

Furthermore, in honest service fraud cases, the First Circuit has determined that the Government must prove two kinds of fraudulent intent: "intent to deceive the public" and "intent to deprive the public of the legislator's honest services." United States v. Sawyer, 85 F.3d 713, 729 n. 12 (1st Cir. 1996). Thus, any information tending to show that Urciuoli was open and transparent in the way that he dealt with Celona with respect to the conduct alleged in the Indictment – i.e., Celona's participation in legislation affecting hospitals, nursing homes and assisted living facilities; Celona's involvement in negotiations with BC/BS and United Healthcare; Celona's efforts to increase rescue runs to RWMC; or information that shows that Urciuoli or Celona did not believe that they were acting in violation of the law or a legal duty – is exculpatory because it negates guilt and undermines the elements of honest services fraud.

B.   **Agents' and Government Attorneys' Notes**

Urciuoli seeks the compelled production of copies of notes made by law enforcement agents and Government attorneys in connection with any interviews of witnesses, discussions with their counsel, or regarding any other source of information.[1]

Urciuoli has a good faith basis to believe that exculpatory statements were omitted from the Celona 302s. It is well settled that if the notes of Government agents and attorneys reveal that exculpatory evidence was omitted or marginalized in any way in the preparation of the formal 302s, the defendant is entitled to the notes. See United States v. Pelullo, 105 F.3d 117, 123 (3d Cir. 1997) (conviction reversed on collateral attack because material exculpatory information appearing in FBI agent's rough notes but not in FBI 302 report was not disclosed); see also United States v. Anderson, 36 F.Supp.2d 1264, 1268 (Kan. 1998). Variances between the FBI 302s and the agents' rough notes may reveal that the Government failed to include exculpatory information in its 302s, or altered the import of favorable evidence in the process of converting the rough notes to 302s. See Anderson, 36 F.Supp.2d at 1268-69 (Kan. 1998). Such evidence falls squarely within the purview of Brady v. Maryland and Urciuoli is entitled to the immediate disclosure of such notes.

In addition to variances between the formal interview reports and agent notes, one of John Celona's 302s spans nine days of interviews that occurred over the course of three months. It is impossible to discern from the 302 the evolution of Celona's statements, including if and how his statements changed over the course of the nine days of interviews. Celona is the Government's key witness in this case. The evolution of his statements to the Government may provide critical impeachment evidence for the defense, making them material under Brady v.

---

[1] To the extent that the Government claims that any of the requested information is subject to the Rule 16(a)(2) work-product immunity, Brady v. Maryland overrides the protection of Rule 16. See United States v. DeMarco, 407 F.Supp. 107 (D.C. Cal. 1975).

#584357v1                                    5

Maryland. See United States v. Innamorati, 996 F.2d 456, 480 (1st Cir. 1993) (notations contained within notes of a DEA agent while debriefing a witness constituted exculpatory evidence within the meaning of Brady v. Maryland); see also Bragg v. Norris, 98-CV 00540 (E. D. Ark. 2000) (drug task force agent's notes were exculpatory under Brady v. Maryland because they allowed the petitioner to impeach the trial testimony of the agent).

To the extent that any of the requested information is verbal or has not been reduced to writing, the Government is still required to produce it as Brady v. Maryland makes no exception for exculpatory evidence that has not been reduced to writing. Rather, the test under Brady v. Maryland is whether the information is "favorable" evidence that is material to either guilt or punishment. See Brady v. Maryland, 373 U.S. at 87. As indicated above, "favorable evidence" includes all evidence that tends to exculpate the accused, including evidence that is useful to impeach the credibility of a Government witness. United States v. Holihan, 236 F.Supp.2d 255 (W.D.N.Y. 2002).

C. **Redacted Celona 302s**

Urciuoli seeks the compelled production of *unredacted* copies of the Celona 302s. The Celona 302s contain multiple pages of statements that have been electronically redacted. The Government contends that the redacted excerpts pertain to its investigation regarding BC/BS, CVS and others, and, therefore, are not discoverable by Urciuoli.

Urciuoli is entitled to discovery of this information because it involves Celona's involvement in other alleged criminal activity that is similar to the allegations in this case. Celona is obviously seeking a more lenient sentence in regard to his involvement with BC/BS and others in exchange for his testimony against the defendants in this case. Thus, it is critical that Urciuoli be fully informed of any admissions of wrongdoing by Celona, particularly because

#584357v1                                         6

those allegations apparently involve other instances of honest services fraud. Any such admissions by Celona are undeniably exculpatory as to Urciuoli and material to his defense, as it would severely undermine the credibility of the Government's key trial witness and would tend to negate Urciuoli's guilt. See United States v. Wong, 78 F.3d 73 (2d Cir. 1996).

D.   **Statements Made By Counsel For Witnesses**

The Government has also refused to produce information pertaining to statements made by counsel for witnesses, taking the position that such information is not covered by the Government's obligation under Brady v. Maryland. Statements by counsel made within the scope of representing a witness are statements of an agent within the scope of the agency relationship, attributable to the principal/client, and, therefore, should be treated as statements of the client for purposes of Urciuoli's discovery rights. See, e.g., FRE 801(D)(2)(D).

Under the traditional law of agency, the statements of an agent made in the course of the agency serve to bind the principal. See United States v. Harris, 914 F.2d 927, 931 (7th Cir. 1990). Thus, such statements are presumably reliable in the absence of cross-examination because they are considered as if they were statements of the principal himself. Id; citing United States v. DeOrtiz, 907 F.2d 629, 636-38 (7th Cir. 1990) (Bauer, C.J., concurring in the result); see also United States v. Patel, 879 F.2d 292, 293 (7th Cir. 1989) (comparing agent-principal and co-conspirator statements as non-hearsay).

Fed. R. Evid. 801(d)(2)(D) provides that "[a] statement is not hearsay if...[t]he statement is offered against a party and is a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of that relationship[.]" FED. R. EVID. 801(D)(2)(D). An attorney may be the agent of his client for purposes of Rule

801(d)(2)(D). United States v. Harris, 914 F.2d at 931; see United States v. McClellan, 868 F.2d 210, 215 n. 9 (7th Cir. 1989); see also United States v. Margiotta, 662 F.2d 131 (2d Cir. 1981).

In Harris, the Seventh Circuit considered whether an attorney's out-of-court statements may be offered against a defendant as the statements of an agent on behalf of his principal under FRE 801(d)(2)(D), in an appeal of an armed bank robbery conviction. 914 F.2d at 929. The defendant's first attorney visited an eyewitness to the alleged crime and showed him pictures of the defendant's brother. Id. at 930. The defense's theory was that the defendant's brother had committed the robbery and that the defendant was simply a victim of mistaken identity. Id. The eyewitness, however, upon reviewing the pictures, disavowed that the defendant's brother was the culprit and was confident that the man he had seen was the defendant. Id. At trial, the defendant was represented by new counsel, who was unaware that this visit had transpired. The new lawyer unwittingly elicited the damning identification on cross-examination of the eyewitness. Id. Over defense counsel's vigorous objection, the District Court permitted a witness for the prosecution to testify as to statements made to him by the defendant's former counsel, holding that the former counsel was an agent of the defendant acting within the scope of his agency when he visited the eyewitness, and that therefore his statements were not hearsay under Fed. R. Evid. 801(d)(2)(D). Id. at 931. The Seventh Circuit affirmed the conviction.

While noting that the unique nature of the attorney-client relationship demands that a trial court exercise caution in admitting statements that are the product of this relationship, the court was satisfied that such policy concerns were not harmed by the admission of the former counsel's statements. Id. In particular, the court noted: (1) that the defendant was effectively represented at trial and his former counsel's withdrawal pre-dated any discussion of the use of his statements; and (2) the statements did not impair the defendant's privilege against self-

#584357v1                                    8

incrimination. The Seventh Circuit emphasized that, the statements of counsel, although inculpatory, did not force the defendant to take the stand to rebut them, and did not relate confidential information. Id.

None of the concerns evaluated by the Seventh Circuit are even implicated by the attorney statements sought in this case because the statements sought would have been made by witnesses, such as Celona, who are not parties in this case. The First Circuit has held that "it is not in much doubt that, ordinarily, an attorney is the client's agent within the traditional legal import of that term." Montplaisir v. Leighton, 875 F.2d 1, 6 (1st Cir. 1989); see also Jorstad v. Connecticut Gen. Life Ins., 844 F. Supp. 46, 56 (D. Mass. 1994) (holding that a client is generally bound by representations and omissions of his attorney because the attorney acts as his client's agent). Accordingly, there is no basis to withhold from discovery statements of counsel for witnesses that otherwise are discoverable under Rule 16 and Brady.

## II. THE DRISCOLL 302

Urciuoli seeks to compel the Government to disclose *now* whether it intends to use codefendant Driscoll's 302 at trial. It is critical that Urciuoli know this immediately so that his counsel can determine whether they need to move to sever his trial from that of his co-defendants. The use of Driscoll's 302 at trial would raise serious constitutional issues for Urciuoli under Bruton v. United States, 391 U.S. 123 (1968), in that Driscoll's Fifth Amendment privilege against self-incrimination would bar Urciuoli from cross-examining Driscoll as to statements contained within the 302 – some of which are highly incriminating of Urciuoli.

The Government is in a position at this time to know whether it believes that Driscoll made truthful statements, as the grand jury investigation has concluded and the case was indicted five months ago. Thus, there should be no impediment for the Government to decide whether it

#584357v1                                9

will seek to offer Driscoll's statements reflected in her 302 into evidence during its case in chief. Many of Driscoll's statements in her 302 tend to incriminate Urciuoli. Thus, this presents a classic Bruton problem for Uriuoli, because Urciuoli will not be able to compel the cross-examination of Driscoll in light of her Fifth Amendment privilege. See Bruton v. United States, 391 U.S. 123 (1968).

Under Bruton, the remedy is to sever Urciuoli's trial from that of Driscoll. If Urciuoli does not learn until trial that the Government intends to offer Driscoll's 302 in its case in chief, Urciuoli will be forced to move for a severance after the jury has been sworn and jeopardy has attached. Because the Government is in a position now to know whether it believes Driscoll's statements were truthful (and, hence, whether it will offer into evidence her 302 statements), it should be compelled to disclose to Urciuoli its intentions in this regard.

## CONCLUSION

For all of the foregoing reasons, Urciuoli respectfully requests that the Court issue an order compelling the Government to immediately disclose and produce any exculpatory information described herein that is within its possession, custody or control, and to disclose whether it intends to offer Frances Driscoll's FBI interview statements into evidence.

Respectfully submitted,

ROBERT A. URCIUOLI

By his Attorneys,

*Kristie M. Passalacqua (AMP)*

Kristie M. Passalacqua, Bar No. 6945
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
kpassalacqua@haslaw.com

Michael J. Connolly (MA BBO # 638811)
*Pro Hac Vice Counsel*
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
(617) 345-9000
(617) 345-9020 (fax)
mconnolly@haslaw.com

Richard M. Egbert (MA BBO #151800)
*Pro Hac Vice Counsel*
Richard Egbert Law Offices
99 Summer Street
Suite 1800
Boston, Massachusetts 02110
(617) 737-8222
(617) 737-8223 (fax)
regbert@egbertlaw.com

DATED: June 5, 2006.

**CERTIFICATION PURSUANT TO
LOCAL RULE OF CRIMINAL PROCEEDINGS 12(C)(2)**

As indicated above, on June 1, 2006, in accordance with Local Rule of Criminal Proceedings 12(c)(2), counsel for Urciuoli conferred with the Government in an attempt to resolve the discovery disputes that are the subject of this motion. In accordance with Local Rule of Criminal Proceedings 12(c)(3)(A), counsel for Urciuoli certifies that, despite conferring in good faith, counsel for Urciuoli and the Government have been unable to resolve all outstanding discovery disputes.

**CERTIFICATION**

I hereby certify that I mailed a true and accurate copy of the within Memorandum of Law in Support of Defendant Robert A. Urciuoli's Motion To Compel Disclosure of Exculpatory Evidence and Government's Position Regarding Frances Driscoll's FBI Interview Statements to counsel of record, as stated below, on June 5, 2006:

*Cynthia Jones*

Robert Clark Corrente
United States Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Luis M. Matos
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

William P. Devereaux
Holland & Knight LLP
One Financial Plaza, Suite 1800
Providence, RI 02903

Thomas G. Briody, Esq.
Law Office of Thomas G. Briody
72 Pine Street, First Floor
Providence, RI 02903

Kevin J. Bristow, Esq.,
1309 Turks Head Building
Providence, RI 02903

Gerard B. Sullivan
Criminal Chief
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Dulce Donovan
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Thomas C. Frongillo, Esq.
Weil Gotshal & Manges
100 Federal Street, Floor 34
Boston, MA 02110

John A. Pappalardo, Esq.
James P. Redding, Esq.
Greenburg Traurig LLP
One International Place
Boston, MA 02110