UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. 05-10057-RCL |
| ) | |
| v. ) | |
| ) | |
| ABDUL RAZZAQUE AHMED ) | |
| ) | |
| **Defendant** ) | |

**UNITED STATES' RESPONSE AND OPPOSITION TO
DEFENDANT'S OBJECTIONS TO
MEMORANDUM OF DECISION AND ORDER
ON GOVERNMENT'S MOTION IN LIMINE REGARDING
ADMISSIBILITY OF STIPULATION**

The United States hereby submits its Response and Opposition to Defendant Ahmed's Objections to Memorandum of Decision and Order on Government's Motion in Limine Regarding Admissibility of Stipulation. Magistrate Judge Dein's thorough and well-reasoned decision allowing the Government's Motion in Limine regarding the Admissibility of a Stipulation ought not be modified or set aside because it is not erroneous, let alone "clearly erroneous or contrary to law." United States District Court, Magistrate Rules, Rule 2(b). To the contrary, Magistrate Judge Dein's Decision and Order reflect a proper application of the law to the objections that defendant Ahmed lodged to the Government's motion in limine.

**Introduction and Summary of Argument**

On March 15, 2005, an Indictment was returned against defendant Ahmed charging a variety of crimes, including mail fraud, health care fraud, money laundering and obstruction of justice. The crimes charged essentially relate to two different, yet interconnected schemes: (1) defendant Ahmed's scheme to defraud the Medicare program, and (2) defendant Ahmed's scheme to obstruct the Government's investigation into his Medicare billings.

The Indictment sets forth defendant Ahmed's scheme to defraud the Medicare program by falsely representing to Medicare that certain of his patients suffered from a rare blistering skin disease known as pemphigus vulgaris, when in fact they did not. The Indictment explains that during the relevant period (1997-2001), Medicare allowed reimbursement for extremely expensive intravenous immunoglobulin treatments ("IVIG") for patients suffering from pemphigus, but did not allow IVIG reimbursement for patients who suffered from a different skin disease called pemphigoid. See Indictment ¶14. Over the relevant period, defendant Ahmed submitted over $5 million worth of fraudulent bills to Medicare for IVIG treatments for patients who did not suffer from pemphigus. See Indictment ¶¶20-31.

Further, the Indictment charges that defendant Ahmed caused the blood sera from one or more of his patients suffering from pemphigus to be mixed with the blood sera of certain patients suffering from another disease, pemphigoid. Defendant Ahmed then caused those vials of mixed blood to be sent to a testing laboratory, thereby causing that testing laboratory to issue test results revealing the presence of pemphigus with respect to patients who did not suffer from pemphigus. Indictment ¶¶29-30.

Count 22 of the Indictment addresses defendant Ahmed's attempts to obstruct the investigation into his Medicare billings. Count 22 charges that defendant Ahmed sought to obstruct the ongoing investigation into his billing practices by causing false documents to be prepared. These false documents incorporated fraudulent test results that had been previously obtained from the mixing of the blood sera samples of pemphigus patients with the blood sera of patients suffering from a different disease, pemphigoid. Indictment ¶40. The Indictment charged that defendant Ahmed caused these false documents to be produced "through his

retained counsel" to federal criminal investigators who were investigating health care offenses pertaining to defendant Ahmed's Medicare billing practices. Id. The retained counsel referred to in Count 22 is Mr. Egbert, defendant Ahmed's trial counsel.

In an effort to forestall the need for a disqualification motion, counsel for the United States and Mr. Egbert negotiated a Stipulation regarding the facts and circumstances of that October 25, 2001 meeting. Mr. Egbert marked up a draft Stipulation that the United States had drafted; counsel for the United States made changes suggested by Mr. Egbert; a final document was circulated and signed by Mr. Egbert and defendant Ahmed.[1] A copy is attached hereto as Exhibit 1.

In accordance with the procedure discussed by the parties with Magistrate Judge Dein, the United States then moved in limine to admit the Stipulation into evidence. Defendant Ahmed opposed. The issues were fully briefed[2] and oral argument before Magistrate Judge Dein ensued.

On August 3, 2006, Magistrate Judge Dein issued a Memorandum of Decision and Order on Government's Motion in Limine Regarding Admissibility of Stipulation and allowed the motion.[3] In the Memorandum and Order, Magistrate Judge Dein addressed and rejected the three

---

[1] Curiously, defendant Ahmed now suggests there is something misleading about the Stipulation. See Defendant Ahmed's Objections to Magistrate Judge Dein's Memorandum and Order at p. 7-8 & n.6. The Stipulation is a product of negotiation with defendant Ahmed's experienced counsel. It has been agreed to and signed by both of them. The Court should not countenance any effort to argue that it is misleading.

[2] All the motion papers are attached to defendant Ahmed's Objections to Magistrate-Judge Dein's Memorandum and Order as Exhibits B through E. Exhibit A is Magistrate Judge Dein's Memorandum and Order.

[3] Magistrate Judge Dein suggested at p. 17 of the Memorandum and Order that the parties clarify one aspect of the Stipulation, a suggestion which the United States has heeded in that it

arguments raised by defendant Ahmed, namely that: (1) the United States had not shown that the Stipulation was relevant under Fed. R. Evid. 104(b); (2) that pursuant to <u>United States v. Valencia</u>, 826 F.2d 169 (2d Cir. 1987), the meeting at the core of the Stipulation should be treated as pre-plea discussions thereby precluding admission of evidence of the meeting; and (3) that certain statements in the Stipulation are protected by the attorney-client privilege and are therefore inadmissible. Each of these arguments was appropriately addressed in the Memorandum and Order and there can be no credible claim that anything in the Memorandum and Order is erroneous, let alone "clearly erroneous or contrary to law."

## **Argument**

I.   <u>The Standard of Review Is "Clearly Erroneous or Contrary to Law."</u>

Defendant Ahmed merely claims that the Court "erred," and urges a <u>de novo</u> standard of review, and in support of that assertion cites a case involving review of a motion to suppress. The motion in limine is not a dispositive motion which would be entitled to a <u>de novo</u> standard of review under 28 U.S.C. §636(b). "The statute . . . distinguishes between regular pretrial matters, which a magistrate judge may decide, and those dispositive matters which have a preclusive effect on the parties, about which the magistrate judge may only make a recommendation to the court. Congress crafted this distinction to assure that Article III judges retain the ultimate adjudicatory power over dispositive motions." <u>National Labor Relations Board v. Frazier</u>, 966 F.2d 812, 816 (3d Cir. 1992). The "dispositive" motions which are entitled to a <u>de novo</u> standard of review are listed in 28 U.S.C. §636(b)(1)(A), and include motions to quash an indictment and motions to suppress evidence in a criminal case, but do not include

---

has forwarded a revised Stipulation to Mr. Egbert that comports with the Court's suggestion.

motions in limine. See also Jesselson v. Outlet Associates of Williamsburg Limited Partnership, 784 F.Supp. 1223, 1228 (E.D. Va. 1991)("the Court adopts the Recommendation of the Magistrate . . . and the Court will review the Motion in Limine using the appropriate standard, namely whether the Magistrate's order granting the Motion in Limine, or any part thereof, was clearly erroneous or contrary to law").

Therefore the appropriate review standard to apply is the "clearly erroneous or contrary to law" standard. "A finding is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Heights Cmty Cong. v. Hilltop Realty, Inc., 774 F.2d 135, 140 (6th Cir. 1985). As set forth below, Magistrate Judge Dein's ruling is correct and should not be disturbed under any standard, let alone the "clearly erroneous or contrary to law" standard.

II.    The Stipulation is Relevant to the Obstruction Counts.

Defendant Ahmed erroneously argues that the facts in the Stipulation about the chart, which is based on fraudulently mixed blood sera, is only conditionally relevant under Fed. R. Evid. 104(b). He asserts that because the United States has yet to prove defendant Ahmed's involvement in contaminating that blood sera, the evidence should not be admitted. Magistrate Judge Dein correctly rejected this argument, concluding that "the chart and related conversations are relevant to the charges of obstruction of justice." Memorandum and Order at p. 6. She found no basis for defendant Ahmed's contention that the United States must now prove that the samples were manipulated by or for defendant Ahmed, stating that "the government may introduce its evidence in the order it deems most appropriate." Id.

Any analysis under Fed. R. Evid. 104(b) begs the preliminary question of whether this rule has any bearing on the issue before the Court. It is undisputed that the presentation of the chart, by counsel acting on behalf of defendant Ahmed, is the *actus reus* at the core of Count 22's obstruction charge. The United States does not dispute that, at trial, it will need to prove both obstructive conduct and criminal intent in order to sustain a conviction under 18 U.S.C. §1518. However, the manner, timing, order and type of evidence that the United States employs will be played out at trial, not earlier.

There is no rule of criminal law requiring the United States to offer evidence of criminal intent before offering evidence of criminal conduct. The evidence of criminal conduct is not "conditionally relevant" until evidence of intent is offered. None of the "conditional relevance" cases cited by defendant Ahmed stands for such a proposition. None of them involves a situation in which the act that constitutes an element of the crime is separated from, and deemed conditionally relevant to, the mental state required to complete the proof of the crime. Rather, the cases cited by defendant Ahmed stand for the unremarkable, and inapt, proposition that when introducing evidence of other, uncharged crimes or bad acts, the government must satisfy a "conditional relevance" standard under Fed. R. Evid. 104(b). Huddleston v. United States, 485 U.S. 681 (1988) (involving evidence of prior, uncharged sales of stolen goods in a stolen goods case) ; United States v. Balthazard, 360 F.3d 309, 313 (1st Cir. 2004)(involving evidence that "other marijuana growing operations were undertaken in furtherance of the charged conspiracy"); United States v. Trenkler, 61 F.3d 45 (1st Cir. 1995)(involving evidence of a prior bombing involving defendant, who was on trial for a separate bombing). Simply put, there is no "order of proof" requirement mandating that evidence of intent be introduced before evidence of

conduct is admissible.

Defendant Ahmed's "conditional relevance" argument in this context is specious and Magistrate Judge Dein's reasoned rejection of the argument should be upheld.

III.   Magistrate Judge Dein Correctly Rejected Defendant Ahmed's Arguments that the Stipulation Was Inadmissible Based on the Second Circuit Valencia Decision.

Relying solely on United States v. Valencia, 826 F.2d 169 (2d Cir. 1987), defendant Ahmed argues that this Court should exercise its discretion and exclude that evidence which forms the basis of Count 22 -- namely, the statements made by counsel on his behalf (and the production of false documents) during the October 25, 2001 meeting.

Valencia involved informal statements made by defense counsel to a prosecutor in which defense counsel sought to obtain his client's release on bail by asserting that his client was, in fact, innocent of the drug trafficking charges that had been filed and that he had just met his female co-defendant. The Government subsequently determined that this story was false and that the defendant and the female co-conspirator had a longstanding relationship. The Government then moved to admit the statements made by defense counsel pursuant to Fed. R. Evid. 801(d)(2)(C) and (D), both as substantive evidence to show the defendant's guilt on the drug trafficking charges and as impeaching evidence were the defendant to testify.

A split panel of the Second Circuit upheld the district court's refusal to admit at trial the earlier statements by defense counsel. See Valencia, 826 F.2d at 172-74. In so doing, the panel majority emphasized that the statements in question were only ancillary to the crime and did not directly pertain to an element of the offense charged. Id., at 173. The panel then balanced the Government's need for the statements against various perceived interests of the defendant (e.g., the defendant's interests in retaining counsel, assuring uninhibited discussions between defense

7

counsel and the prosecutor, and avoiding the risk of impairing the privilege against self-incrimination), and concluded that the district court did not abuse its discretion in refusing to admit the evidence. Id., at 173-74.

Moreover, Valencia does not represent the law of this Circuit.[4] For example, United States v. Diozzi, 807 F.2d 10 (1st Cir. 1986) supports admission of the Stipulation in this matter. In Diozzi, counsel met with and submitted documents to the IRS and to the Justice Department in which counsel described his client's business practices and argued that his client had a "total lack of criminal intent." Id., at 11. The Government successfully sought and obtained counsel's disqualification after determining that there were numerous false or misleading statements contained in counsel's submissions. Significantly, although the First Circuit found that disqualification of counsel was inappropriate, it did not premise its rationale upon the inadmissibility of counsel's statements. Instead, it concluded that the stipulation of facts offered by the defendants provided for all of the facts sought to be admitted by the Government during trial. Id., at 13-15. See also United States v. O'Connor, 433 F.2d 752, 755-56 (1st Cir. 1970)(upholding the admissions of counsel to the IRS that contradicted statements previously made by the defendant).

Neither O'Connor nor Diozzi support creation in the First Circuit of the special rule of admissibility sought by Ahmed in reliance upon Valencia. This is not surprising for even in the Second Circuit, Valencia and United States v. McKeon, the case upon which the Valencia majority relied, have been narrowed considerably. In United States v. Arrington, the Second

---

[4] For the reasons stated in the dissent, Valencia was wrongly decided. 826 F.2d at 174-177.

Circuit limited <u>McKeon's</u> applicability to only those instances in which the Government sought to introduce defense counsel's prior jury argument and not to all statements made by defense counsel:

> Contrary to defendant's assertion that these procedures apply to the use of all statements by defense counsel, we clearly stated in <u>McKeon</u> that we were 'circumscrib[ing] the evidentiary use of ***prior jury argument.***'

867 F.2d at 127 (quoting <u>McKeon</u>, 738 F.2d at 33) (emphasis in <u>Arrington</u>). The <u>Arrington</u> court further emphasized that neither <u>McKeon</u> nor <u>Valencia</u> stood for the proposition that a trial court was to enact or conduct special procedures or evidentiary hearings before admitting statements or submissions made by counsel pursuant to Rule 801(d)(2):

> We find no support for [defendant's] contention that there are special procedures to be followed, or balancings to be performed as a prerequisite to the evidentiary use of a defendant counsel's out-of-court statements."

<u>United States v. Arrington</u>, 867 F.2d 122, 128 (2d Cir. 1989). Thereafter, in <u>United States v. Amato</u>, 356 F.3d 216, 220 (2d Cir. 2004),[5] the Second Circuit upheld the admission at trial of a letter written by defense counsel challenging a bail revocation decision, reasoning that counsel's letter was more akin to an out-of-court statement that was governed by a straightforward application of Fed. R. Evid. 801(d)(2)(D).

Magistrate Judge Dein properly rejected the rather extreme arguments posited by defendant Ahmed pursuant to the <u>Valencia</u> case. Magistrate Judge Dein noted that <u>Valencia</u> differed from established First Circuit law and that the <u>Valencia</u> holding may have even been

---

[5]The <u>Amato</u> decision also contravenes the statement made at p. 11, footnote 9 of defendant Ahmed's Objections that "every case in which counsel's statements have been admitted against the client have involved an attorney acting pursuant to a written power of attorney that explicitly authorized the alwyer to stand in the client's shoes. . ." <u>Amato</u> involved no such power of attorney.

narrowed in the Second Circuit.

Even assuming <u>Valencia</u> were valid law in this Circuit, Magistrate Judge Dein carefully and correctly distinguished <u>Valencia</u> given the facts of this case:

- Unlike in <u>Valencia</u>, the chart and the conversation about it embodied in the Stipulation were not "informal," but rather were a formal presentation of facts made by defendant Ahmed's counsel in an effort to convince that defendant Ahmed should not be prosecuted (Memorandum and Order at p. 9);

- Unlike in <u>Valencia</u>, admission of the Stipulation would have no chilling impact on plead negotiations, as "there is no legitimate claim that an attorney who engages in a formal meeting with the government in the First Circuit for the purpose of convincing the government not to pursue charges would expect that such discussions would be privileged in the absence of an express representation or agreement to that effect" (Memorandum and Order at p. 10);

- Unlike in <u>Valencia</u>, the Stipulation relates "directly to the elements of the claims made against the defendant [Ahmed]" (Memorandum and Order at p. 10);

- Unlike in <u>Valencia</u>, there is no dispute about the underlying evidence sought to be admitted; the parties have agreed on a Stipulation, "thereby eliminating the need for any examination as to what precisely was said at the meeting." <u>Id</u>.

Defendant Ahmed's primary objection to Magistrate Judge Dein's decision on the <u>Valencia</u> issue appears to be premised upon a misguided argument that the October 25, 2001 meeting should be accorded the protections afforded to plea negotiations. However, as Magistrate Judge Dein correctly noted, in the First Circuit, "plea discussions means plea discussions." <u>United States v. Penta</u>, 898 F.2d 815, 818 (1st Cir. 1990). Neither at the October 25, 2001 meeting that is the subject of the Stipulation, nor at any other time was there ever a plea discussion between defendant Ahmed and the United States. There is no controversy as to this fact. At no time during the meeting did defendant Ahmed's counsel broach, much less acknowledge, the possibility of a plea. Instead, his entire presentation was an effort to convince the Government, through the presentation of false evidence, that his client had not committed

any crime.[6]

The law does not allow a defendant to knowingly communicate to the Government false information either directly or through an authorized agent in an attempt to obstruct an ongoing investigation. Yet, were defendant Ahmed's argument and reliance upon Valencia to be upheld, that would, in fact, be the undesirable outcome.

In sum, Valencia simply does not support defendant Ahmed's attempt to create a special rule of admissibility of relevant evidence, and Magistrate Judge Dein properly rejected defendant Ahmed's Valencia arguments.

IV.   Nothing in the Stipulation is Protected By Any Privilege.

Defendant Ahmed argues that certain aspects of the Stipulation are protected by the attorney-client privilege. The party invoking a privilege bears the burden of showing that it applies to the communications at issue and that it has not been waived. See In Re Keeper of the Records, 348 F.3d 16, 22 (1st Cir. 2005). Here, defendant Ahmed failed to do satisfy these requirements.

Magistrate Judge Dein thoroughly and thoughtfully rejected this privilege argument as to each of the four statements in the Stipulation on which it was asserted. She correctly found that defendant Ahmed has not met his burden of showing that any privilege exists with respect to the Stipulation.

As Magistrate Judge Dein found, defendant Ahmed has not proffered any basis for his assertion that any aspect of the Stipulation was intended to be kept confidential between him and

---

[6]The Government has previously stated, and reiterates here, that it is not suggesting that defendant Ahmed's counsel knowingly presented false evidence to the Government.

his attorney – not the fact that defendant Ahmed was aware of the criminal investigation; not the fact that he provided the Stipulation to his attorney; not the fact that he authorized his attorney to present the chart and discuss it with the government; not the fact that with defendant Ahmed's knowledge and consent his attorney told the government that the chart "should convince them 'beyond a doubt'" that the patients on the chart had a diagnosis that meant that "defendant Ahmed had not defrauded Medicare."

First, the fact that defendant Ahmed was aware of the Government's investigation implicates no privilege. As he acknowledges at page 12 of his Memorandum, proof of his awareness can come from many sources separate and apart from any privileged communication. That defendant Ahmed elected to stipulate to this fact does not somehow cloak the fact with privilege. Magistrate Judge Dein was correct to reject defendant Ahmed's claim to the contrary.

Similarly, on the issue of providing the chart to his counsel, as Magistrate Judge Dein found, there is no demonstrable and applicable privilege. There is no evidence proffered by defendant Ahmed that there was any intent to keep the source of the chart confidential. See Memorandum and Order at p. 15. See also In Re Grand Jury Proceedings, 727 F.2d 1352, 1356 (4th Cir. 1984) (the "privilege does not apply . . . where it is the intention or understanding of the client that the communication is to be made known to others."); United States v. Tellier, 255 F.2d 441, 447 (2d Cir. 1958)("It is the essence of the attorney-client privilege that it is limited to those communications which are intended to be confidential."). Indeed, counsel's production of the chart to the Government and the agreed-upon Stipulation belie any such intention. Simply put, there is nothing privileged about the source of the chart.

The facts in the Stipulation, particularly those regarding Mr. Egbert's statements at the October 25, 2001 meeting fit snugly into the admissibility requirements of Fed. R. Evid. 801(d)(2)(C) (statement by a person authorized) or 801(d)(2)(D) (statement by an agent within the scope of the agency). Defendant Ahmed does not dispute this. "There is no dispute that Mr. Egbert was authorized to represent Dr. Ahmed in the investigation of this case and to advocate on Dr. Ahmed's behalf." Defendant Ahmed's Objection at p. 15. This concession really ends the inquiry because once there is authorization, application of Fed. R. Evid. 801(d)(2)(C) and (D) is quite straightforward as found by Magistrate Judge Dein. <u>See</u> Memorandum and Order at pp. 13-14, 17.

## Conclusion

For all the foregoing reasons, including the failure to articulate any manner in which the Memorandum and Order is wrong, let alone "clearly erroneous or contrary to law," the United States respectfully requests that the Court adopt Magistrate Judge Dein's Memorandum and Order and reject defendant Ahmed's objections to it.

                              Respectfully submitted,

                              MICHAEL J. SULLIVAN
                              United States Attorney

                    By:  /s/ Jeremy M. Sternberg
                          James E. Arnold
                          Jeremy M. Sternberg
                          Assistant United States Attorneys
                          One Courthouse Way, Suite 9200
                          Boston, MA 02210
                          (617) 748-3100

August 31, 2006

## Certificate of Service

I hereby certify that I served a copy of the foregoing pleading on Richard M. Egbert, Law Offices of Richard M. Egbert, 99 Summer Street, Suite 1800, Boston, MA 02110, this day by mail.

                              /s/ Jeremy M. Sternberg
                              Jeremy M. Sternberg
                              Assistant U.S. Attorney

# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 05-10057-RCL |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| ABDUL RAZZAQUE AHMED | ) |  |
|  | ) |  |
| Defendant | ) |  |

## FACTUAL STIPULATION

1. On June 15, 2000, defendant Ahmed was served with a Subpoena, Ex. __, issued under authority of Section 248 of the Health Insurance Portability and Accountability Act of 1996, Public Law No. 104-91 (18 U.S.C. §3486).

2. The Subpoena sought from defendant Ahmed, among other things, "medical and billing records for all patients who are being treated or were treated with IVIG and for whom any part or all of the services was billed to medicare and/or any third party payor."

3. The documents sought by the Subpoena related to the investigation of a Federal health care offense. Defendant Ahmed, through his retained attorney, produced documents responsive to the Subpoena to a criminal investigator, namely an Assistant U.S. Attorney for the United States Attorney's Office for the District of Massachusetts, who was duly authorized by the Department of Justice to conduct or engage in investigations for prosecutions of health care offenses.

4. By not later than June 15, 2000, defendant Ahmed was aware of an ongoing criminal investigation that was investigating whether he was engaged in proper Medicare billing

1

practices concerning patients who were diagnosed with pemphigus and/or pemphigoid.

5. Sometime before October 25, 2001, defendant Ahmed provided the chart marked as Exhibit __ to his attorney. Defendant Ahmed stipulates that the copy of the chart attached hereto is authentic.

6. Defendant Ahmed authorized his attorney to present that chart to and discuss that chart with the prosecutors and agents who were then investigating defendant Ahmed's Medicare billing practices.

7. On October 25, 2001, with defendant Ahmed's knowledge and consent, defendant Ahmed's attorney met with one of the prosecutors (the same one referred to above in paragraph 3) and two federal agents. One of the agents was from Department of Health and Human Services, Office of the Inspector General and one was from the Postal Inspection Service. The prosecutor and the two agents were all working on the Medicare billing investigation concerning defendant Ahmed. During that meeting, which took place at the United States Attorney's Offices, defendant Ahmed's attorney presented them with the binders attached hereto as Exhibit __. Included in these binders was the chart. With the authorization of defendant Ahmed, defendant Ahmed's attorney told the prosecutor and the two agents that Exhibit __ should convince them "beyond a doubt" that the patients appearing on Exhibit __ had a "dual diagnosis" of pemphigus and pemphigoid. Defendant Ahmed's attorney further stated on behalf of defendant Ahmed that reimbursement from Medicare for intravenous immunoglobulin

2

treatments was permitted as a result of these "dual diagnoses" and that defendant Ahmed had not defrauded Medicare.

So Stipulated:

_____
ABDUL RAZZAQUE AHMED

_____
RICHARD M. EGBERT
Counsel for Abdul Razzaque Ahmed

3