UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | CRIMINAL NO.  05-10057-RCL |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| **ABDUL RAZZAQUE AHMED** | ) |  |
|  | ) |  |
| **Defendant.** | ) |  |

### GOVERNMENT'S RESPONSE TO THE COURT'S REQUEST FOR VIEWS ON SEVERING THE OBSTRUCTION COUNTS

On November 16, 2006, the Court invited the parties to submit their views regarding whether defendant Ahmed's objections to Judge Dein's August 3, 2006 Order regarding the admissibility of a Stipulation could be resolved by severing the obstruction counts from the Indictment.  The United States contends that the issue can not be resolved by severing the obstruction counts from the Indictment.  As discussed below, the conduct that is at the core of the obstruction counts was also a material aspect of the defendant's scheme to defraud.  As such, the United States will seek to introduce the evidence set forth in the Stipulation not just as evidence to establish the obstruction counts (Counts 21-22), but also to establish the defendant's fraudulent billing scheme (Counts 1-20), as well as to establish the defendant's culpability with respect to the money laundering counts (Counts 23-24).

### A. The Obstruction Counts are Inextricably Intertwined with the Fraud Counts and Will Rely Upon Much of the Same Evidence

The Indictment in this case concerns defendant Ahmed's scheme to defraud Medicare by falsifying diagnoses of a rare blistering skin disease, pemphigus vulgaris ("pemphigus"), for patients who actually suffered from a different and distinct skin disease, pemphigoid.  The

Indictment charges that Defendant falsified these diagnoses, because during the relevant period, Medicare allowed reimbursement for expensive intravenous immunoglobulin ("IVIG") treatments for pemphigus, but not for pemphigoid.

The Indictment alleges four sets of interrelated counts. Counts 1-6 charge the defendant with mail fraud in violation of 18 U.S.C. §1341. Counts 7-20 charge the defendant with health care fraud in violation of 18 U.S.C. §1347. Both the mail fraud and health care fraud counts directly relate to defendant Ahmed's receipt of more than $5 million from Medicare that was paid as a result of false claims submitted on his behalf to Medicare for IVIG treatments for patients whom defendant Ahmed falsely claimed were suffering from pemphigus, but who in fact were suffering from pemphigoid. The remaining two sets of counts charge the defendant with obstruction of justice (Counts 21-22) and money laundering (Counts 23-24). The obstruction of justice counts concern defendant's actions in causing false documents created during the billing fraud scheme to be produced to the government during the government's criminal investigation; the money laundering counts concern the defendant's use of fraudulently obtained funds to further his schemes to defraud and obstruct by paying for blood tests of blood sera that contained mixtures of sera from various patients.

All of the counts set forth in the indictment are inextricably intertwined and rely upon, in whole or in part, the same evidence. For example, the mail fraud and health care fraud counts pertain to the defendant's "scheme and artifice to defraud Medicare the Medicare Program and to obtain money (and once obtained, protect and further his ability to keep that money) by means of materially false and fraudulent pretenses, representation. . ." Indictment ¶20. The purpose of this scheme was to enrich the defendant "and protect and further his ability to keep his

2

fraudulently obtained monies [] and to defraud the Medicare program of money by causing false and fraudulent claims for IVIG treatment to be submitted and paid." Indictment ¶21.  The indictment alleges that the defendant -- to carry out his scheme to defraud -- engaged in various "manners and means," including:

> a.  creating false documents, including backdated letters and bogus Immunopathology Reports, that falsely indicated that a number of defendant's patients had tested positive for the disease pemphigus (Indictment ¶28);
>
> b.  causing blood sera from one or more patients known by him to have the disease pemphigus to be mixed with the blood sera of at least 35 other patients known by him to have only the disease pemphigoid (Indictment ¶29); and
>
> c.  causing these vials of mixed blood to be sent to a testing laboratory, knowing that the tests would falsely reveal the presence of the disease pemphigus for a number of his patients (Indictment ¶30).

This same conduct is at the heart of the of the two obstruction counts (Counts 21 and 22) and the money laundering counts (Counts 23 and 24).  For example, Count 21 charges the defendant with violating 18 U.S.C. §1518 by obstructing criminal investigations of health care offenses.  This count concerns the defendant's action in causing to be created and produced to the government various "false documents, including Immunopathology Reports and letters to referring physicians of many of his Medicare patients, purporting to show that the patients suffered from a 'dual diagnosis' of pemphigus and pemphigoid, when in fact they only suffered from pemphigoid. . ." Indictment ¶38.  At issue in this count are the very same documents described in paragraph 28 of the "manner and means" portion of the mail fraud and health care fraud charges.

Similarly, the second obstruction charge, Count 22, also charges the defendant with obstruction of a criminal investigation of health care offenses in violation of 18 U.S.C. §1518. This charge pertains to the defendant's actions in causing other false documents generated as part of the mail fraud and health care fraud scheme to be produced to the United States Attorney's Office for the District of Massachusetts. As explained in the Indictment, these false and fraudulent documents were created using results obtained by mixing blood sera of pemphigoid patients with that of pemphigus patients and then sending the mixed sera to a testing lab in order to obtain false test results. Indictment ¶40. The defendant's actions giving rise to the false documents (*i.e.*, the mixing of blood sera and sending the blood sera to a testing lab to obtain false test results) is the very activity alleged in paragraphs 29 and 30 of the Indictment as a "manner and means" of the mail fraud and health care fraud schemes.

Finally, the money laundering counts (Counts 23 and 24) are premised upon the defendant's use of the proceeds obtained from his health care fraud scheme to pay for the laboratory tests of blood sera submitted on the defendant's behalf. As alleged in the indictment, these payments were for, *inter alia*, testing of the vials of mixed blood, thereby promoting the defendant's fraudulent scheme.

    **B.** **The Evidence Set Forth in the Stipulation Will Be Introduced by the United States both in Support of the Obstruction Counts and to Establish Defendant's Actions in Furtherance of his Fraud Scheme**

The Stipulation at issue pertains to, *inter alia*, the production by defense counsel on defendant's behalf of the very documents discussed above. For example, paragraphs 1-3 of the Stipulation concern the defendant's receipt of a subpoena calling for production of "medical and billing records for all patients who are being treated or were treated with IVIG and for whom any

4

part or all of the services was billed to medicare and/or any third party payor," and his subsequent production of those records via defense counsel.

Included in these records produced by defense counsel on defendant's behalf are the records discussed in paragraph 28 of the mail fraud and health care fraud schemes. This production by defense counsel on defendant's behalf also provides basis for the obstruction charge found in Count 21.

Similarly, paragraphs 5-7 of the Stipulation pertain to a chart that defendant Ahmed provided to defense counsel and authorized defense counsel to provide and discuss with the government personnel that was investigating his billing conduct. As discussed in paragraph 7 of the Stipulation, defense counsel subsequently met with government personnel on October 25, 2001. During that meeting, defense counsel provided this chart to the government personnel and told the government representatives that the information contained in the chart should convince them "beyond a doubt" that the defendant's patients had a "dual diagnosis" of pemphigus and pemphigoid and that the defendant had not defrauded Medicare.

As will be shown at trial, the chart provided by defense counsel on defendant's behalf to show that defendant's patients had a "dual diagnosis" incorporated and reflected the results of blood tests conducted on blood sera containing mixtures obtained from some patients suffering from pemphigoid and other patients suffering from pemphigus. Defendant's involvement in causing these fraudulent blood test results to be obtained is part and parcel of the mail fraud and health care fraud counts (<u>see</u> Indictment Paragraph 29-30), one of the obstruction charges (Count 22), and the two money laundering counts (Counts 23-24).

## C. Severance Will Serve No Purpose and Will Create Massive Inefficiencies

Severance of one or both obstruction counts in this case would have no impact on the evidence presented in support of the fraud counts. The evidence underlying the obstruction counts are a material aspect of the remaining counts -- the mail fraud counts, the health care fraud counts, and the money laundering counts. The fraud counts are supported by allegations that the defendant, as part of the manner and means of the fraud scheme, engaged in the very conduct that also forms the basis for the obstruction counts. In addition, the Indictment charges the obstructive conduct took place to protect and further defendant's ability to keep fraudulently obtained proceeds. See United States v. Stackpole, 811 F.2d 689, 694 (1st Cir. 1987) ("Were the counts severed, substantially the same evidence would have been admitted in both resulting trials.").

In a case also involving inextricably intertwined evidence, albeit in a different context, the First Circuit in United States v. Boulanger, 444 F.3d 76, 88 (1st Cir. 2006) held that "even if the counts had been severed and tried separately, similar evidence would have been used." In Boulanger, the First Circuit noted that even in a trial on Counts I and II [robbery of Oxycontin and use of a firearm in a crime of violence], "the government could have presented evidence that they found a silver gun in a white glove and Oxycontin pills of the same dosage as those stolen from the pharmacy in Boulanger's apartment." Id. Counts III-V charged Boulanger with felon in possession of a firearm and possession and distribution of Oxycontin, thus illustrating the inextricably intertwined nature of the evidence of the gun and the Oxycontin pills found in Boulanger's apartment. Id. at 87-88. As a result, the Court will still have to rule on the admissibility of the Stipulation even if one or both of the obstruction counts were severed.

6

Moreover, a severance would necessarily involve presentation of the same evidence and the same witnesses a second time. There would be no efficiency obtained and, instead, there would be a doubling of resources required by the parties and the Court.

For all of these reasons, the United States respectfully submits that the Court should not entertain any severance of the obstruction count(s), and instead should proceed to rule on the defendant's objection to Magistrate-Judge Dein's ruling on the admissibility of the Stipulation.

    Respectfully submitted,

    MICHAEL J. SULLIVAN
    United States Attorney

By:    /s/ Jeremy M. Sternberg
    James E. Arnold
    Jeremy M. Sternberg
    Assistant U.S. Attorneys
    One Courthouse Way
    Boston, MA 02210
    (617) 748-3100

Certificate of Service

I hereby certify that the foregoing document(s) filed through the ECF system will be sent electronically to counsel for defendant, who is a registered participant as identified on the Notice of Electronic Filing (NEF).

    /s/ Jeremy M. Sternberg
    JEREMY M. STERNBERG
    Assistant United States Attorney

Date: November 30, 2006