UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **CRIMINAL NO. 05-10057-RCL** |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| **ABDUL RAZZAQUE AHMED** | ) |  |
|  | ) |  |
| **Defendant.** | ) |  |

### GOVERNMENT'S MOTION TO RECONSIDER AND/OR CLARIFY
### THE COURT'S ORDER FOR SEPARATE TRIAL ON COUNTS 21 AND 22

#### Introduction

In its electronic Order dated December 18, 2006, the Court ruled as follows:

The court has determined that, while there may be some overlap in the evidence between the severed counts and the remaining counts of the indictment, the severed counts can be tried separately without compromise of the government's case in either trial.  The severance, on the other hand, <u>preserves to the defendant his opportunity to have counsel of his choice</u> with respect to the principal charges against him in the indictment and <u>eliminates the specter of evidence being used against him that derives from a stipulation entered into by his counsel</u>.  (Emphasis added).

The United States contends that this order is based on two incorrect factual premises.  First, the Stipulation itself was negotiated and offered for admission to preserve defendant's opportunity to have trial counsel of his choice.  Second, the Stipulation was entered into by both defendant's counsel <u>and</u> the defendant.  Because defendant voluntarily and knowingly entered into the Stipulation, there is no unfair prejudice that will result to him as a result of admission of the Stipulation.

In contrast, as discussed below, there would be prejudice to the United States resulting from this Order.  Moreover, the severance of the obstruction counts does not solve any evidentiary issues, because the United States will still seek admission of the Stipulation and the

facts underlying it at trial on the fraud and money laundering counts. For these reasons, the United States respectfully requests that the Court reconsider and vacate its severance Order and adopt Magistrate-Judge Dein's Order holding the Stipulation to be admissible.

**Factual Background Concerning the Stipulation**

On October 25, 2001, defendant Ahmed's trial counsel delivered to representatives of the United States a chart incorporating certain test results. During that meeting, he explained the test results, discussed the import of the test results, and suggested the conclusions that the United States should reach based on the test results. All of that evidence is in the Stipulation, which is attached hereto as Exhibit A:

- "Defendant Ahmed authorized his attorney to present that chart to and discuss that chart with the prosecutors and agents who were then investigating defendant Ahmed's Medicare billing practices." Stipulation ¶6.

- "With the authorization of defendant Ahmed, defendant Ahmed's attorney told the prosecutor and two agents that [the chart] should convince them 'beyond a doubt' that the patients appearing on [the chart] had a 'dual diagnosis' of pemphigus and pemphigoid." Stipulation ¶7.

- "Defendant Ahmed's attorney further stated on behalf of defendant Ahmed that reimbursement from Medicare for intravenous immunoglobulin treatments was permitted as a result of these 'dual diagnoses' and that defendant Ahmed had not defrauded Medicare." Id.

As discussed in the Government's November 30, 2006 submission, the manner in which the data memorialized in this chart was obtained is a crucial part of the defendant's scheme to defraud Medicare (and to launder money); it is also the basis for one of the obstruction counts.

Absent the Stipulation, the United States can have one of its representatives at this meeting testify about the delivery of the chart and the statements made by defendant Ahmed's trial counsel. However, that would raise the specter of defendant Ahmed's trial counsel cross-

examining a government witness about her memory of what trial counsel said at the meeting. From all perspectives, it would seem that admitting the Stipulation and avoiding that event would be preferable.

The Stipulation was the subject of arms-length negotiations and was agreed to and executed by both defendant Ahmed and his counsel. There is no issue as to its accuracy, only as to its admissibility. After significant briefing and oral argument, Magistrate-Judge Dein rendered an 18-page opinion, recommending that the Stipulation be admitted at trial.

### Argument

The United States submits that the admissibility of the Stipulation, its interplay with the various fraud, obstruction and money laundering counts charged in the Indictment and the propriety of the severance of any counts are complex issues that should be addressed by the Court after briefing and oral argument. Given the specific facts of this case, the Court's Order severing the obstruction counts does not alter the government's intent to introduce the Stipulation at trial on all counts of the Indictment to be tried. Nor does it provide for a shorter trial. Instead, all the same evidence of the false documents – the blood sera mixing, the blood sera testing, the DNA evidence of mixed blood sera, the evidence of defendant Ahmed's payments for the laboratory tests on the mixed blood sera – will be necessary to prove the fraud scheme and money laundering charged in the Indictment.

  1. With or Without Severance of the Obstruction Counts, Defendant Ahmed Will Have Trial Counsel of His Choice.

This Court's December 18, 2006 Order states that "severance, on the other hand, preserves to the defendant his opportunity to have counsel of his choice with respect to the principal charges against him in the indictment. . ." However, with or without severance, the

whole point of the Stipulation was to preserve defendant Ahmed's choice of counsel.[1]  With or without severance, defendant Ahmed's choice of counsel is intact.  Given this misapprehension in the principal underpinning of the Court's severance Order, the United States urges that the Court reconsider the severance of the obstruction counts.

    2.    The Stipulation Was Voluntarily and Knowingly Signed by Counsel and <u>Defendant Ahmed</u>.

This Court's December 18, 2006 states that severance "eliminates the specter of evidence being used against him that derives from a stipulation entered into by his counsel. . ."  However, the Stipulation was not merely "entered into by his counsel."  Rather, it was entered into voluntarily and knowingly by defendant Ahmed and his counsel.  For this additional reason, the United States urges that the Court reconsider the severance of the obstruction counts.

    3.    The United States Needs the Facts in and Underlying the Stipulation For Trial Of <u>Any And All Of the Counts In The Indictment</u>.

This Court's December 18, 2006 Order states that "the severed counts can be tried separately without compromise of the government's case in either trial."  This is only true if the United States is able to introduce all the evidence that supports the fraud scheme charged in the Indictment.  Such evidence includes the falsifying and backdating of documents and subsequent production of these false documents to the government (Indictment ¶28).  This evidence also includes the surreptitious mixing of the blood sera of patients with pemphigoid with the blood sera of patients with pemphigus (Indictment ¶29), sending these mixtures to a laboratory to obtain disease testing results that falsely suggested that various pemphigoid patients suffered

---

[1] Although early in the proceedings the United States sought to disqualify trial counsel, the whole objective of the parties in negotiating the Stipulation was to obviate the need for disqualification.

from both pemphigoid and pemphigus, and causing the false test results to be produced to the government (Indictment ¶30).

Even if one or both of the obstruction counts were severed, this Court would still have to rule on the admissibility of the Stipulation. The fraud counts are supported by allegations that the defendant, as part of the manner and means of the fraud scheme, engaged in the very conduct that also forms the basis for the obstruction counts. In addition, the Indictment charges the obstructive conduct took place to protect and further defendant's ability to keep fraudulently obtained proceeds. See United States v. Stackpole, 811 F.2d 689, 694 (1st Cir. 1987) ("Were the counts severed, substantially the same evidence would have been admitted in both resulting trials."). Moreover, a severance would necessarily involve presentation of the same evidence and the same witnesses a second time. Many of the witnesses are former patients of the defendant's who are elderly and infirm. There would be no efficiency obtained and, instead, there would be a doubling of resources required by the parties and the Court.

Similarly, the money laundering counts (Counts 23 and 24) implicate the Stipulation and the evidence of blood sera mixing. Those counts charge defendant Ahmed with promoting health care fraud by paying a laboratory to test blood sera that had been mixed in order to produce false test results. These counts necessarily involve evidence of blood sera mixing, the DNA evidence supporting the blood sera mixing, the presentation of the chart identified in the Stipulation containing the false test results and other evidence implicating the Stipulation.

Given the charges in the Indictment, the evidence supporting those charges and the import of the Stipulation on all the charges (fraud, obstruction and money laundering), the obstruction counts should not be severed. The legal sufficiency of the Indictment (or any aspect

of it) has not been challenged, and the deadline for dispositive motions (December 11, 2006) has passed. It is axiomatic that the United States should be able to prove the case it charged (and that will be extant when the case goes to trial).

## Conclusion

For all of these reasons, the United States respectfully requests that the Court reconsider its Order severing the obstruction counts and instead allow those counts to be tried together with fraud and money laundering counts. In the alternative, the United States requests that the Court clarify its Order to make clear that the United States is permitted to present evidence relevant to the fraud scheme charged and the money laundering counts, such as the evidence of blood sera mixing, false laboratory test results, multiple DNA sources in the blood sera samples, the October 25, 2001 meeting between defendant Ahmed's counsel and representatives of the United States as well as all statements made at that meeting.

**The United States hereby requests oral argument on this motion**.

                                      Respectfully submitted,

                                      MICHAEL J. SULLIVAN
                                      United States Attorney

By:   /s/Jeremy M. Sternberg
         James E. Arnold
         Jeremy M. Sternberg
         Assistant U.S. Attorneys
         One Courthouse Way
         Boston, MA 02210
         (617) 748-3100

Date: December 29, 2006

<u>Certificate of Service</u>

     I hereby certify that the foregoing document(s) filed through the ECF system will be sent electronically to counsel for defendant, who is a registered participant as identified on the Notice of Electronic Filing (NEF).

                                      /s/ Jeremy M. Sternberg
                                      Jeremy M. Sternberg
                                      Assistant United States Attorney

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. 05-10057-RCL |
| ) ) | |
| v.  ) | |
| ) | |
| ABDUL RAZZAQUE AHMED ) | |
| ) | |
| Defendant ) | |

### FACTUAL STIPULATION

1.  On June 15, 2000, defendant Ahmed was served with a Subpoena, Ex. __, issued under authority of Section 248 of the Health Insurance Portability and Accountability Act of 1996, Public Law No. 104-91 (18 U.S.C. §3486).

2.  The Subpoena sought from defendant Ahmed, among other things, "medical and billing records for all patients who are being treated or were treated with IVIG and for whom any part or all of the services was billed to medicare and/or any third party payor."

3.  The documents sought by the Subpoena related to the investigation of a Federal health care offense. Defendant Ahmed, through his retained attorney, produced documents responsive to the Subpoena to a criminal investigator, namely an Assistant U.S. Attorney for the United States Attorney's Office for the District of Massachusetts, who was duly authorized by the Department of Justice to conduct or engage in investigations for prosecutions of health care offenses.

4.  By not later than June 15, 2000, defendant Ahmed was aware of an ongoing criminal investigation that was investigating whether he was engaged in proper Medicare billing

1

practices concerning patients who were diagnosed with pemphigus and/or pemphigoid.

5.  Sometime before October 25, 2001, defendant Ahmed provided the chart marked as Exhibit __ to his attorney. Defendant Ahmed stipulates that the copy of the chart attached hereto is authentic.

6.  Defendant Ahmed authorized his attorney to present that chart to and discuss that chart with the prosecutors and agents who were then investigating defendant Ahmed's Medicare billing practices.

7.  On October 25, 2001, with defendant Ahmed's knowledge and consent, defendant Ahmed's attorney met with one of the prosecutors (the same one referred to above in paragraph 3) and two federal agents. One of the agents was from Department of Health and Human Services, Office of the Inspector General and one was from the Postal Inspection Service. The prosecutor and the two agents were all working on the Medicare billing investigation concerning defendant Ahmed. During that meeting, which took place at the United States Attorney's Offices, defendant Ahmed's attorney presented them with the binders attached hereto as Exhibit __. Included in these binders was the chart. With the authorization of defendant Ahmed, defendant Ahmed's attorney told the prosecutor and the two agents that Exhibit __ should convince them "beyond a doubt" that the patients appearing on Exhibit __ had a "dual diagnosis" of pemphigus and pemphigoid. Defendant Ahmed's attorney further stated on behalf of defendant Ahmed that reimbursement from Medicare for intravenous immunoglobulin

2

treatments was permitted as a result of these "dual diagnoses" and that defendant Ahmed had not defrauded Medicare.

So Stipulated:

_____
ABDUL RAZZAQUE AHMED

_____
RICHARD M. EGBERT
Counsel for Abdul Razzaque Ahmed

3