UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **CRIMINAL NO. 05-10057-RCL** |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| **ABDUL RAZZAQUE AHMED** | ) |  |
|  | ) |  |
| **Defendant** | ) |  |

### ASSENTED-TO MOTION BY THE UNITED STATES
### TO FILE THREE-PAGE REPLY BRIEF

The United States, by its attorneys Michael J. Sullivan, United States Attorney for the District of Massachusetts, and Assistant United States Attorneys James E. Arnold and Jeremy M. Sternberg, hereby moves this Court, to file a three-page Reply Brief, in the form attached hereto as Exhibit A. As grounds therefor, the United States asserts the following:

1. The proposed Reply brief is short (three pages) and addresses one of the principal points in Defendant's Response to the Supplemental Brief by the United States on its Motion to Reconsider and/or Clarify the Court's Order to Sever Counts 21 and 22.

2. Counsel for the United States had a telephone conference with counsel for Defendant on March 16, 2007, pursuant to Local Rule 7.1, and counsel for Defendant assented to the filing of this motion.

WHEREFORE, the United States respectfully requests that the Court grant it leave to file the Reply Brief attached hereto as Exhibit A.

    Respectfully submitted,

    MICHAEL J. SULLIVAN
    United States Attorney

By:   /s/ Jeremy M. Sternberg
    James E. Arnold
    Jeremy M. Sternberg
    Assistant United States Attorneys
    One Courthouse Way, Suite 9200
    Boston, MA 02210
    (617) 748-3142

March 19, 2007

## Certificate of Service

I hereby certify that the foregoing document(s) filed through the ECF system will be sent electronically to counsel for Defendant, who is a registered participant as identified on the Notice of Electronic Filing (NEF).

March 19, 2007      /s/ Jeremy M. Sternberg
    Jeremy M. Sternberg
    Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 05-10057-RCL |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
|  | ) |  |
| ABDUL RAZZAQUE AHMED, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

REPLY BY UNITED STATES TO
DEFENDANT'S RESPONSE TO SUPPLEMENTAL BRIEF

In response to the Supplemental Brief by the United States on its Motion to Reconsider and/or Clarify the Court's Order to Sever Counts 21 and 22, Defendant now seeks, for the first time, to sever all the mail fraud counts and all the money laundering counts. The reasons not to sever these additional counts are legion, and most are contained in the prior briefing submitted by the United States.

The primary purpose of this short Reply is to point out the erroneous assertion on which most of Defendant's arguments are based. In Defendant's Response at p. 4, he states as follows:

> Both obstruction of justice allegations are entirely distinct from the Government's Medicare fraud case – there has never been any suggestion that the laboratory results or the allegedly back-dated documents were ever submitted to Medicare in support of reimbursement."

(Emphasis in original).

However, Defendant's falsification of documents is not just limited to the obstruction charges, rather it pervades, and is at the heart of, all of the fraud charges as well. In fact, the Indictment charges that Defendant created and/or presented to the various governmental authorities false documents before, contemporaneous with, and after March 27, 2001, the date of

the fraudulent bills submitted to Medicare that form the basis for Counts 7 through 20. See Indictment ¶¶22, 23, 28, 33, 35, 40. In fact many of the bills Defendant submitted to Medicare that form the basis of Counts 7 through 20 of the Indictment did include bogus laboratory results. For example, attached hereto as Exhibit 1 is the bill defendant submitted on March 27, 2001 for an IVIG treatment to patient JW on August 12, 1999. This bill forms the basis for the charge in Count 20 in the Indictment. The documents submitted with this bill clearly include a laboratory test report and the evidence at trial will be that this laboratory test report is bogus. This patient is also one for whom Defendant is also accused of causing manipulated blood samples in order to procure a false positive for the disease pemphigus from an independent testing lab, thereby establishing a link between the false laboratory report submitted with the bill and the false test reports procured based on mixed blood samples from the independent lab.

In his Response at p. 5, Defendant argues that he "was receiving Medicare reimbursement for [IVIG] treatment long before the events forming the bases for the obstruction of justice allegations took place." The more relevant time line is that the Medicare fraud counts are all based on bills submitted by the Defendant to Medicare on March 27, 2001. See Indictment Counts 7 through 20. Virtually all of what Defendant refers to as "obstructive conduct" took place before he submitted these bills. The mail fraud conduct all took place before these bills were submitted (each mailing is in the year 2000). See Indictment Counts 1 through 6. The scheme to forge, back-date, cover-up, mix blood and other fraudulent conduct took place, for the most part, before, in furtherance of and in conjunction with the fraudulent bills submitted to Medicare on or about March 27, 2001.

For all the reasons stated herein, and in the prior briefing submitted by the United States,

the United States respectfully requests that the Court decline to sever any counts, including Counts 21 and 22, and instead allow those counts to be tried together with fraud and money laundering counts. In the alternative, the United States requests that the Court clarify its previous Order to make clear that the United States is permitted to present evidence relevant to the fraud scheme charged and the money laundering counts, including without limitation the evidence of bogus documents, the evidence of blood sera mixing, false laboratory test results, and DNA evidence of multiple sources in the blood sera samples.

> Respectfully submitted,
>
> MICHAEL J. SULLIVAN
> United States Attorney
>
> By:   /s/Jeremy M. Sternberg
> James E. Arnold
> Jeremy M. Sternberg
> Assistant U.S. Attorneys
> One Courthouse Way
> Boston, MA 02210
> (617) 748-3100

Date: March 19, 2007

Certificate of Service

I hereby certify that the foregoing document(s) filed through the ECF system will be sent electronically to counsel for defendant, who is a registered participant as identified on the Notice of Electronic Filing (NEF).

> /s/Jeremy M. Sternberg
> Jeremy M. Sternberg
> Assistant United States Attorney

3

# EXHIBIT 1



**New England Baptist Hospital**

70 Parker Hill Avenue, Suite 208
Boston, Massachusetts 02120

90193

A. Razzaque Ahmed, M.D.
Diseases of the Skin & Mucous Membranes

Tel: 617-738-1040
Fax: 617-754-6434

Associate Professor of Oral Medicine
Harvard University School of Dental Medicine

Medicare B
Attention: Review Department
National Heritage Insurance Company
PO Box 1000
Hingham, MA 02044

March 27, 2001

RE:           JW

HIC#

Date of Service:   8-12-99

Enclosed please find clinical documentation that supports the treatment the above named patient received on the date of service denied. Apparently the supporting documentation that was attached to the original claim submission did not accompany the claim when it was being processed.

We would appreciate it if you could review this request for payment.
If you have any questions please do not hesitate to call.

Sincerely,

Kathy Carlson
Kathy Carlson
Billing Manager
1-888-431-2299 ext. 3025

RECEIVED

MAR 27 2001



| | MEDICARE PART B |
| --- | --- |
| PLEASE DO NOT STAPLE IN THIS AREA | P.O. BOX 1212<br>HINGHAM, MA 02044 |

APPROVED OMB-0938-0008

PICA    **HEALTH INSURANCE CLAIM FORM**    PICA

| MEDICARE | MEDICAID | CHAMPUS | CHAMPVA | GROUP HEALTH PLAN | FECA BLK LUNG | OTHER | 1a. INSURED'S I.D. NUMBER (FOR PROGRAM IN ITEM 1) |
| --- | --- | --- | --- | --- | --- | --- | --- |
| (Medicare #) | (Medicaid #) | (Sponsor's SSN) | (VA File #) | (SSN or ID) | (SSN) | X (ID) | |

| 2. PATIENT'S NAME (Last Name, First Name, Middle Initial) | 3. PATIENT'S BIRTH DATE    SEX    M☐  F☒ | 4. INSURED'S NAME (Last Name, First Name, Middle Initial) |
| --- | --- | --- |
| JW | | JW |

| 5. PATIENT'S ADDRESS (No., Street) | 6. PATIENT RELATIONSHIP TO INSURED<br>Self ☒  Spouse ☐  Child ☐  Other ☐ | 7. INSURED'S ADDRESS (No., Street) |
| --- | --- | --- |
| CITY                                STATE<br>                                   MA | 8. PATIENT STATUS<br>Single ☐  Married ☐  Other ☒ | CITY                                STATE<br>                                   MA |
| ZIP CODE     TELEPHONE (Include Area Code) | Employed ☐  Full-Time Student ☐  Part-Time Student ☐ | ZIP CODE     TELEPHONE (Include Area Code) |

| 9. OTHER INSURED'S NAME (Last Name, First Name, Middle Initial) | 10. IS PATIENT'S CONDITION RELATED TO: | 11. INSURED'S POLICY GROUP OR FECA NUMBER |
| --- | --- | --- |
| JW | | |
| a. OTHER INSURED'S POLICY OR GROUP NUMBER | a. EMPLOYMENT? (CURRENT OR PREVIOUS)<br>☐ YES  ☒ NO | a. INSURED'S DATE OF BIRTH     SEX<br>                                  M☐ F☒ |
| b. OTHER INSURED'S DATE OF BIRTH     SEX<br>MM  DD  YY                M☐ F☒ | b. AUTO ACCIDENT?     PLACE (State)<br>☐ YES  ☒ NO | b. EMPLOYER'S NAME OR SCHOOL NAME |
| c. EMPLOYER'S NAME OR SCHOOL NAME | c. OTHER ACCIDENT?<br>☐ YES  ☒ NO | c. INSURANCE PLAN NAME OR PROGRAM NAME<br>MEDICARE PART B |
| d. INSURANCE PLAN NAME OR PROGRAM NAME<br>MASS BC SECONDARY | 10d. RESERVED FOR LOCAL USE | d. IS THERE ANOTHER HEALTH BENEFIT PLAN?<br>☒ YES  ☐ NO  If yes, return to and complete item 9 a-d. |

READ BACK OF FORM BEFORE COMPLETING & SIGNING THIS FORM.
12. PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE  I authorize the release of any medical or other information necessary to process this claim. I also request payment of government benefits either to myself or to the party who accepts assignment below.

SIGNED  SIGNATURE ON FILE    DATE 01-27-1997

13. INSURED'S OR AUTHORIZED PERSON'S SIGNATURE  I authorize payment of medical benefits to the undersigned physician or supplier for services described below.

SIGNED  SIGNATURE ON FILE

| 14. DATE OF CURRENT ILLNESS (First symptom) OR INJURY (Accident) OR PREGNANCY (LMP)<br>MM  DD  YY<br>01  14  1997 | 15. IF PATIENT HAS HAD SAME OR SIMILAR ILLNESS. GIVE FIRST DATE  MM  DD  YY | 16. DATES PATIENT UNABLE TO WORK IN CURRENT OCCUPATION<br>FROM  MM DD YY    TO  MM DD YY |
| --- | --- | --- |
| 17. NAME OF REFERRING PHYSICIAN OR OTHER SOURCE<br>AHMED, A. RAZZAQUE | 17a. I.D. NUMBER OF REFERRING PHYSICIAN<br>C35375 | 18. HOSPITALIZATION DATES RELATED TO CURRENT SERVICES<br>FROM  MM DD YY    TO  MM DD YY |
| 19. RESERVED FOR LOCAL USE | | 20. OUTSIDE LAB?    $ CHARGES<br>☐ YES  ☐ NO |

| 21. DIAGNOSIS OR NATURE OF ILLNESS OR INJURY. (RELATE ITEMS 1,2,3 OR 4 TO ITEM 24E BY LINE) | 22. MEDICAID RESUBMISSION CODE    ORIGINAL REF. NO. |
| --- | --- |
| 1. 694.5      3. | |
| 2. 694.4      4. | 23. PRIOR AUTHORIZATION NUMBER |

| 24. A<br>DATE(S) OF SERVICE<br>From          To<br>MM DD YY   MM DD YY | B<br>Place of Service | C<br>Type of Service | D<br>PROCEDURES, SERVICES, OR SUPPLIES<br>(Explain Unusual Circumstances)<br>CPT/HCPCS    MODIFIER | E<br>DIAGNOSIS CODE | F<br>$ CHARGES | G<br>DAYS OR UNITS | H<br>EPSDT Family Plan | I<br>EMG | J<br>COB | K<br>RESERVED FOR LOCAL USE |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 08121999  08121999 | 11 | | J1561   22<br>IMMUNE GLOBULIN 500 MG | 2 | 1764 00 | 21 | | | denied | 11-7 |
| 08121999  08121999 | 11 | | J1561   22<br>IMMUNE GLOBULIN IV PER 500 MG | 2 | 8316 00 | 99 | | | denied | 11-7 |
| 08121999  08121999 | 11 | | 90780    IV INFUSION FOR THERAPY/UP TO 1 HOUR | 1,2 | 116 00 | 1 | | | denied | 11-7 |
| 08121999  08121999 | 11 | | 90781    IV THERAPY INFUSION/1-8 HRS EACH | 1,2 | 344 00 | 4 | | | denied | 11-7 |

| 25. FEDERAL TAX I.D. NUMBER    SSN  EIN<br>211505507           ☐   ☒ | 26. PATIENT'S ACCOUNT NO.<br>35182-00002341 | 27. ACCEPT ASSIGNMENT?<br>(For govt. claims, see back)<br>☒ YES  ☐ NO | 28. TOTAL CHARGE<br>$ 10540 00 | 29. AMOUNT PAID<br>$ 0 00 | 30. BALANCE DUE<br>$ 10540 00 |
| --- | --- | --- | --- | --- | --- |

| 31. SIGNATURE OF PHYSICIAN OR SUPPLIER INCLUDING DEGREES OR CREDENTIALS<br>(I certify that the statements on the reverse apply to this bill and are made a part thereof.)<br><br>_Mohan Qu____ | 32. NAME AND ADDRESS OF FACILITY WHERE SERVICES WERE RENDERED (If other than home or office)<br><br>RECEIVED | 33. PHYSICIAN'S, SUPPLIER'S BILLING NAME, ADDRESS, ZIP CODE & PHONE #<br>DR. A. RAZZAQUE AHMED<br>70 PARKER HILL AVENUE SUITE 208<br>BOSTON, MA 02120 |
| --- | --- | --- |

### Office Notes: August 11, 1999

JW s here today for examination and evaluation of her skin. JW states that there has been an increase in bleeding from her nose the past several days. In addition, there are a few areas on her forearms, which are some what reddened. It appears that these are new nasal lesions. JW has been instructed to use a steam inhaler several times a day, and apply Aquaphor along the raw mucous membranes in both nares. Due to disease activity of the nose and forearms we will give 2 days of IVIg therapy and see JW again in 6-7 weeks or sooner if more problems. Weight is 146 lb.
Dictated 8/11/99
Transcribed 8/11/99

### Office Notes: August 12, 1999

JW tolerated the 8/11 IVIg without problems. No change in vital signs.
Dictated 8/12/99
Transcribed 8/12/99

87010861820 0448

RECEIVED

MAR 27 2001



New England
Baptist
Hospital

125 Parker Hill Avenue, Suite 380
Boston, Massachusetts 02120

A. Razzaque Ahmed, M.D.
Diseases of the Skin & Mucous Membranes

Tel: 617-738-1040
Fax: 617-278-1349

Associate Professor of Oral Medicine
Harvard University Faculty of Medicine

January 27, 1997

Dr. Steven Shama
110 Francis Street
Boston, MA 02215

Re:     JW

Dear Steve:

Thank you very much for referring Mrs.    JW    to me for evaluation of possible treatment options. I realize that you are very familiar with her clinical condition. Hence, I will briefly summarize her care and update you on the clinical outcome.

    JW    presented first with a widespread rash over 50% body surface in the summer of 1995. Topical steroids were used but did not help and the rash progressed to involve the abdomen, gluteal area and extremities. At that time in 1996, you performed a biopsy, which established the diagnosis of bullous pemphigoid. Prednisone in dosages of up to 70 mg a day was initiated immediately. It was unsuccessful in controlling the disease. Instead of increasing the Prednisone dose further, Dapsone was added. However, the Dapsone was discontinued because it produced a severe drug-induced hepatitis. I did not favor the use of an immunosuppressive agent since    JW    had a history of cervical cancer. Use of immunosuppressive agents is associated with an increase in the risk of a development of a malignancy.

    JW    developed several significant side effects to Prednisone. Most noteworthy were repeated infections and most distressing were psychological changes. This was critical because her husband suffered from Alzheimer Disease.

As a result of    JW    intolerance to Dapsone and her ineffective response to Prednisone alone and the presence of

RECEIVED

MAR 27 2001

8701086618200 0449

Page 2

significant side effects from Prednisone, I decided to initiate IvIg therapy.

Interestingly serological analysis of     JW     sera reveals that there are demonstrable levels of two distinct antibodies. There are anti-BMZ antibodies which target BPAg1 and BPAg2 and antibodies to keratinocyte cell surface or intercellular cement substance (ICS), typically seen in pemphigus. This would indicate that we have dual diagnoses. The phenotypic presentation may be similar to pemphigoid, but the serological evidence is for both diseases. In my opinion, it is this combination of both diseases that has made the clinical profile rapidly progressive and recalcitrant or non-responsive to conventional or usual therapy. Pemphigus patients favorably respond to IvIg. Hence, I was optimistically hopeful that     JW     will also respond

I am pleased to inform you that     JW     has responded very positively to the IvIg therapy. The Prednisone has been slowly tapered down and will be discontinued. There has been no acute exacerbation of the disease with the tapering of the Prednisone as had occurred in the past. Her blistering disease will be treated with IvIg as monotherapy. This will significantly enhance the quality of her life.

It has been a pleasure treating this very pleasant lady with a serious problem. I am delighted that after tremendous effort we have been able to control the disease process. While Bullous Pemphigoid is often self limiting in many patients, Mrs.    JW    has the subset in which patients have wide-spread clinical disease that is treatment resistant.

If you should have any questions about my treatment strategy, please do not hesitate to contact me.

Sincerely,

*Razzak*

A. Razzaque Ahmed, M.D.

RECEIVED

MAR 27 2001

JW

SKIN

09/05/95  09/05/95  09/07/95  COURIER

T.J. HARRIST, M.D./C. MAGRO, M.D.

STEVE SHAMA, M.D.
SUITE 7E
110 FRANCIS STREET
BOSTON, MA. 02215

PATHOLOGY REPORT

DIAGNOSIS:

\*\*\*\*\*\*\*\*\*\*\*\*SPLIT SKIN IMMUNOFLUORESCENCE STUDY\*\*\*\*\*\*\*\*\*\*\*\*
(9/12/95)

There is an intense linear band of deposition for IgG observed along the roof of the saline induced split. Such findings are characteristic and diagnostic of bullous pemphigoid.

REPORT BY:
CYNTHIA MAGRO, M.D.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

SKIN, "A-RIGHT FOREARM":  EOSINOPHILIC INTERFACE AND ECZEMATOUS DERMATITIS WITH PROMINENT EOSINOPHIL SPONGIOSIS CONSISTENT WITH BULLOUS PEMPHIGOID/EPIDERMOLYSIS BULLOSA ACQUISITA.

MICROSCOPIC DESCRIPTION:  The biopsy shows basilar vacuolopathy with tagging of eosinophils and lymphocytes along the dermoepidermal junction. There is significant spongiosis with lymphocytic and eosinophilic exocytosis, Langerhans cell rich vesicles along with subepidermal eosinophil rich abscesses present. A moderately dense perivascular lymphohistiocytic infiltrate is noted within the superficial dermis. There is striking interstitial and angiocentric superficial tissue eosinophilia.

COMMENT:  The differential diagnosis of this biopsy includes a hypersensitivity reaction to systemic antigens such a drug or a primary vesicular bullous disorder. The latter namely being epidermolysis bullosa

MAR 27 2001

```
JW                                             08 OCT 1996      F95-43290
                                            Date of Birth/Age   Specimen Number
              SKIN
                                            SKIN, B RIGHT FOREARM-DIRECT IF
  09/05/95   09/05/95   09/07/95   COURTER
  T.J. HARRIST, M.D./C. MAGRO, M.D.          GENERALIZED JOINT ACHES

              STEVE SHAMA, M.D.              TENSE BULLOUS ERUPTION
              SUITE 7A
              110 FRANCIS STREET
              BOSTON, MA.  02215
```

## PATHOLOGY REPORT

acquisita and bullous pemphigoid. The immunofluorescence studies are those of bullous pemphigoid/epidermolysis bullosa acquisita. (CM)

**************DIRECT IMMUNOFLUORESCENCE****************

SKIN, "B-RIGHT FOREARM-DIRECT IF": PEMPHIGOID/EPIDERMOLYSIS BULLOSA ACQUISITA. SEE NOTE.

NOTE: There is linear deposition of IgG and C3 along the dermoepidermal junction. These findings are consistent with and characteristic of bullous pemphigoid. However, epidermolysis bullosa acquisita and bullous systemic lupus erythematosus are additional considerations. Bullous systemic lupus erythematosus is usually readily excludable by the clinical and routine light microscopic findings. However, there are presentations of epidermolysis bullosa acquisita which may mimic pemphigoid histologically and clinically. In order to help solve this diagnostic dilemma, SPLIT SKIN IMMUNOFLUORESCENCE STUDY WILL BE UNDERTAKEN AND A SUBSEQUENT REPORT ISSUED AT THAT TIME. (TJH)

GROSS DESCRIPTION:
Received in formalin is a cylindrical specimen of skin measuring 5 mm in diameter labeled "right forearm" and coded A.
Received in Michel's medium is a cylindrical specimen of skin measuring 5 mm in diameter and coded B.
The tissue is submitted in cassette A.
Due to loss of elastic tension and to formalin shrinkage, the measurements in the laboratory description may be less than those taken at the time of surgical removal.

RECEIVED
MAR 27 2001

# THE CENTER FOR BLOOD RESEARCH, INC.

800 Huntington Avenue, Boston, Massachusetts 02115  (617) 731-6470  FAX (617) 278-3493

# IMMUNOPATHOLOGY REPORT

### INDIRECT IMMUNOFLUORESCENCE ASSAY

Name:   JW

Date Specimen Collected: 10-10-95

Serum sample was tested by indirect immunofluorescence assay, using monkey esophagus as substrate. Serial dilutions of the test sera were made.

Patient's serum demonstrated the presence of an autoantibody that bound to the basement membrane zone at 1: 1280

These findings are consistent with the diagnosis of **pemphigoid**.

A. Razzaque Ahmed, M.D.

Date of Report: 10-17-95

RECEIVED

MAR 27 2001



# THE CENTER FOR BLOOD RESEARCH, INC.

800 Huntington Avenue, Boston, Massachusetts 02115   (617) 731-6470   FAX (617) 278-3493

# IMMUNOPATHOLOGY REPORT

## INDIRECT IMMUNOFLUORESCENCE ASSAY

Name:   JW

**Date Specimen Collected: 10-10-95**

Serum sample was tested by indirect immunofluorescence assay, using monkey esophagus as substrate. Serial dilutions of the test sera were made.

Patient's serum demonstrated the presence of an autoantibody that bound to the intercellular cement substance at titer of 1:160.

These findings are consistent with the diagnosis of **pemphigus**.

*AR Ahmed*

A. Razzaque Ahmed, M.D.

Date of Report: 10-17-95

RECEIVED

MAR 27 2001

Medicare B - A.R.



8701086182000454