UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. 05-10057-RCL |
| ) |  |
| v. ) |  |
| ) |  |
| ABDUL RAZZAQUE AHMED, ) |  |
| ) |  |
| Defendant. ) |  |

### GOVERNMENT'S MOTION IN LIMINE
### TO EXCLUDE EVIDENCE OF PATIENT SATISFACTION OR PATIENT OUTCOMES

The United States hereby moves, in limine to exclude evidence of the satisfaction, healing or cure of any of Defendant's patients. As set forth more fully below, the United States expects Defendant will seek to offer evidence, primarily through testimony of his patients or former patients, that he cured, healed, or otherwise satisfied patients with his treatment of them with intravenous immunoglobulin ("IVIG"). Such evidence, however, is not relevant to the fraudulent billing scheme and associated obstructive conduct charged in the Indictment, and should be excluded.

### BACKGROUND

At the core of the Indictment[1] in this case is a scheme by Defendant to defraud Medicare by falsifying diagnoses of a rare blistering skin disease, pemphigus vulgaris ("pemphigus"), for patients who actually suffered from a different and distinct skin disease, pemphigoid. The Indictment charges that Defendant falsified these diagnoses because during the relevant period Medicare allowed reimbursement for expensive intravenous immunoglobulin ("IVIG") treatments for pemphigus, but not for pemphigoid. Defendant is charged with fraudulently

---

[1] The Indictment charges 6 counts of mail fraud, 14 counts of health care fraud, 2 counts of obstruction and 2 counts of money laundering.

billing Medicare, by falsifying a diagnosis of pemphigus, for over $5 million for IVIG treatments for patients who did not have the pemphigus, but rather had pemphigoid.  The Defendant is accused of a "scheme and artifice to defraud Medicare the Medicare Program and to obtain money (and once obtained, protect and further his ability to keep that money) by means of materially false and fraudulent pretenses, representation. . ."  Indictment ¶20.

Intertwined with the fraud scheme are two obstruction counts.  Count Twenty One charges obstruction of a criminal investigations of health care offenses, in violation of 18 U.S.C. §1518, in connection with creating "false documents, including Immunopathology Reports and letters to referring physicians of many of his Medicare patients, purporting to show that the patients suffered from a 'dual diagnosis' of pemphigus and pemphigoid, when in fact they only suffered from pemphigoid. . ."  Indictment ¶38.

The second obstruction charge, Count Twenty Two, charges obstruction of criminal investigations of health care offenses, in violation of 18 U.S.C. §1518, in connection with causing false documents to be produced to the United States Attorney's Office for the District of Massachusetts, which documents were false and fraudulent because the were created using results obtained by mixing blood sera of pemphigoid patients with that of pemphigus patients and then sending the mixed sera to a testing lab in order to obtain false test results.  Indictment ¶40.

The United States expects that Defendant will seek to introduce evidence at the trial that his IVIG treatments of patients, perhaps even ones that did not have pemphigus, helped them to heal or cure whichever disease they did have.  This expectation is substantial, particularly given

a recent trial deposition taken on April 17, 2007 of one of Defendant's former patients, RH.[2] The Indictment alleges that RH is one of the patients who did not have pemphigus but for whom Defendant billed Medicare for IVIG treatments with a diagnosis of pemphigus. Indictment ¶26. At that trial deposition, Defendant sought to elicit testimony about whether she thought Defendant had "cured" her disease and whether his treatments had caused her pain to subside. The United States objected to the relevance of these questions. Deposition Transcript of RH at pp. 43-44, attached hereto as Exhibit A. This motion addresses the relevance of that sort of inquiry with respect to any of Defendant's patients.

## ARGUMENT

1.  Evidence of Patient Satisfaction, Healing or Cure Is Not Relevant to This Billing Fraud and Obstruction Prosecution.

    Any evidentiary dispute regarding the relevance of certain evidence must begin with Federal Rule of Evidence 401:

    > "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would without the evidence.

The satisfaction, healing or cure of any of Defendant's patients would not make the existence of any fact of consequence in this case any more or less probable. The billing fraud scheme charged in the Indictment requires that the United States demonstrate that Defendant intended to defraud Medicare. There is no suggestion in the Indictment that Defendant defrauded or even mistreated his patients. The testimony of any of his patients that he cured or healed them would not tend to prove whether or not he defrauded Medicare, though it would have the potential to

---

[2] RH is one of Defendant's former patients. She is so identified in this motion in light of the protective order entered in this case.

distract the jurors from that crucial inquiry.  See United States v. Biesiadecki, 933 F.2d 539, 544 (7th Cir. 1991)(affirming exclusion of testimony from "non-deceived" clients of stockbroker because such evidence would have "improperly shifted the jury's attention away from the knowledge and intent of Biasiadecki and focused instead on the beliefs of the victims of the alleged scheme to defraud.").

To admit the evidence of patient cure or satisfaction would transform this criminal prosecution for billing fraud and obstruction, which has nothing to do with the quality of the treatment provided, but rather focuses on the billing and the documents created by Defendant to make the billing appear true, into a referendum on the quality of Defendant's treatment.  The Defendant would seek to introduce evidence from certain satisfied patients; the United States would seek to introduce evidence from certain unsatisfied patients, and none of that evidence would tend to prove whether Defendant engaged in a fraudulent billing scheme and associated obstructive activities.

In analogous circumstances, courts have excluded such evidence.  For example, in United States v. Ciccone, 219 F.3d 1078, 1082 (9th Cir. 2000), the defendant was charged with operating a telemarketing Ponzi scheme, ostensibly on behalf of a charity.  The defendant sought to offer evidence of satisfied donors to support a good faith defense.  The Ninth Circuit affirmed the conviction and the district court's decision to exclude such evidence, noting:

> Where, as here, the proffered evidence relates not to the nature of the scheme or the defendant's intent, but rather to the uninformed opinion of the victims, it is not an abuse of discretion to exclude it.

Id.

Similarly, in United States v. Elliott, 62 F.3d 1304, 1307-08 (11th Cir. 1996), the defendant, who was ringleader of a Ponzi scheme, sought to introduce testimony from certain satisfied customers. The Eleventh Circuit in Elliott affirmed the district court's exclusion of such evidence and focused on the Federal Rule of Evidence 401 relevance definition and the nature of the intent at issue in the crimes charged. Id. In finding that the testimony of "satisfied customers" would be irrelevant, the court stated as follows:

> Proving intent in this case, however, is not a simple matter of accounting for economic surplus. The material misrepresentations here center on the purported financial health of the Elliott Enterprises businesses and the performance and safety of its investments. No amount of testimony from satisfied customers could "average out" Elliott and Melhorn's intent to defraud when they continued to solicit new investments and reassure old investors while concealing millions of dollars in losses per year with fictitious audits and phantom collateral.

Id. at 1308. The same relevance/intent inquiry obtains here. The material misrepresentations in this case center on the disease diagnosis submitted by Defendant to Medicare for IVIG treatments. No amount of testimony from satisfied patients can have any impact on Defendant's intent to defraud Medicare with respect to the bills charged in the Indictment. The existence of satisfied patients is not a defense to the fraud scheme charged. See Federal Trade Commission v. Amy Travel Service, Inc., 875 F.2d 564, 572 (7th Cir. 1989)("[t]he existence of some satisfied customers does not constitute a defense under the [Federal Trade Commission Act]").

In sum, testimony of "happy patients" is not relevant to a case in which the quality of care and treatment outcomes are not at issue, and should therefore be excluded.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court allow its motion in limine and exclude evidence of patient satisfaction and/or patient outcomes.

                                      Respectfully submitted,

                                      MICHAEL J. SULLIVAN
                                      United States Attorney


                       By:    /s/ Jeremy M. Sternberg
                             James E. Arnold
                             Jeremy M. Sternberg
                             Assistant United States Attorneys
                             One Courthouse Way, Suite 9200
                             Boston, MA 02210
                             (617) 748-3142
July 18, 2007

Local Rule 7.1(A)(2) Certification

     I hereby certify that I conferred, in good faith, by telephone on July 17, 2007, with Richard Egbert, counsel for Defendant, in an unsuccessful attempt to resolve or narrow the issue raised in this motion.

                                      /s/ Jeremy M. Sternberg
                                      Assistant U.S. Attorney


Certificate of Service

     I hereby certify that I served a copy of the foregoing pleading on Richard M. Egbert, Law Offices of Richard M. Egbert, 99 Summer Street, Suite 1800, Boston, MA 02110, this day by mail and by electronic filing.

                                      /s/ Jeremy M. Sternberg
                                      Jeremy M. Sternberg
                                      Assistant U.S. Attorney

IN THE UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

```
UNITED STATES OF AMERICA,    )
                  Plaintiff, )
                             )
-V-                          )    CRIMINAL DOCKET NO.
                             )    05-10057-RCL
ABDUL RAZZAQUE AHMED,        )
                  Defendant. )
```

THE VIDEOTAPED DEPOSITION OF R          H

held pursuant to Order and Rule 15 of the Federal Rules of Criminal Procedure, before Jeffrey Mocanu, a Court Reporter and Notary Public, within and for the Commonwealth of Massachusetts, at the offices of Brown, Rudnick, Berlack & Israels, LLP, 1 Financial Center, Boston, Massachusetts, on Tuesday, April 17, 2007, commencing at 10:07 a.m.

ORIGINAL

*APEX Reporting*
(617) 426-3077

```
 1            I've given you a document, Exhibit H-4, to take a
 2   look at.  Have you ever seen that document before?
 3       A    No, I have not.
 4       Q    And does that appear to be a letter written from
 5   Dr. Van Orman to Dr. Dorr?
 6       A    Yes, it does.
 7       Q    All right.  And in that letter, does it appear
 8   that the question of what the actual disease that you had is
 9   not written in?
10       A    Yes.
11       Q    And that it's left blank?
12       A    Yes.
13       Q    And you've indicated before, when you said you
14   don't know to this date whether you had pemphigus or
15   pemphigoid or what; is that correct?
16       A    Yes.
17       Q    When you went to Dr. Ahmed, right, no other
18   physician, whether it be medical doctor, primary care
19   physician, dentist, oral surgeon, ear, nose and throat
20   person, was able to cure your disease; is that correct?
21       A    That's right.
22       Q    Did Dr. Ahmed cure your disease?
23       A    Yes, he did.
24            MR. STERNBERG:  Just one moment, Mrs. H        .
25            Objection.  Relevance.
```

*APEX Reporting*
(617) 426-3077

```
 1            BY MR. EGBERT:
 2        Q   Did Dr. Ahmed cure your disease?
 3        A   Yes, he did.
 4        Q   After you were done seeing Dr. Ahmed, were you any
 5   longer in pain in your mouth?
 6            MR. STERNBERG:  Objection to the relevance.  If
 7   you'd like I'm going to just make a standing objection to
 8   ---
 9            MR. EGBERT:  I don't think standing objections are
10   permitted, and I'm not the one who can permit it, let's put
11   it that way.  Only someone -- a judge can do it.
12        A   Go ahead, ask me the question again, please.
13            BY MR. EGBERT:
14        Q   After you were done treating with Dr. Ahmed, was
15   the pain gone from your mouth?
16            MR. STERNBERG:  Objection.  Relevance.
17            BY MR. EGBERT:
18        Q   Go ahead and answer it.
19        A   Yes.
20        Q   And let me step back.  When you went to see
21   Dr. Ahmed the first time and you showed us an exhibit.
22   Could I have that?
23        A   This?
24        Q   Yes.  An exhibit with this bunch of handwriting,
25   that's Exhibit 106.  Do you recall that?
```