UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 05-10057-RCL |
| v. ) | |
| ABDUL RAZZAQUE AHMED, ) | |
| Defendant ) | |

**DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE
TO EXCLUDE EVIDENCE OF PATIENT SATISFACTION OR PATIENT OUTCOMES**

The government's motion to exclude what it refers to as "evidence of patient satisfaction or patient outcomes" must be denied. Such a limitation on the defense's evidence would gut the defense's ability to challenge the government's theory of the case and it would threaten to distort the facts in a manner that would be highly prejudicial to the defendant, Dr. Abdul Razzaque Ahmed. At the heart of this case is the question whether Dr. Ahmed properly diagnosed and treated twenty-three specific patients. At trial, the government will seek to show that: (1) none of these twenty-three patients suffered from a blistering disease called pemphigus, (2) that Dr. Ahmed treated these patients with Intravenous Immunoglobulin ("IVIg"), and (3) that he then billed Medicare fore the IVIg treatments falsely claiming that these twenty-three individuals suffered from pemphigus. In that context, the government's suggestion – that the symptoms that these twenty-three individuals suffered, the progress of their disease, and the disease's responsiveness to the IVIg treatments Dr. Ahmed provided are all irrelevant – is nonsensical. Rather, these are the very facts that will allow the defense to attack the government's claim that these patients did not suffer from pemphigus and that they could have been cured through a different, cheaper treatment program.

Case law also compels the conclusion that the government's motion should be denied. In a similar case where the government charged that a doctor falsified patient data and diagnoses to obtain Medicare reimbursement, the Ninth Circuit relied extensively on patient testimony to determine whether the doctor's claims to Medicare had been accurate. *See United States v. Rutgard*, 116 F.3d 1270 (9th Cir. 1997). Conversely, the three cases on which the government's motion relies are all cases of financial fraud where the victim's opinions of the defendants' actions were properly excluded as irrelevant. These cases are inapposite here. As in *Rutgard*, patient testimony regarding their symptoms and responsiveness to treatment are highly relevant and admissible.

**A.     Background**

Dr. Ahmed has been indicted for providing a treatment called Intravenous Immunoglobulin ("IVIg") to patients who suffer from two rare, but excruciating and potentially life-threatening skin blistering diseases: pemphigus and pemphigoid. While Medicare currently provides reimbursement for IVIg treatments for both pemphigus and pemphigoid, between 1997 and 2002, Medicare only reimbursed IVIg treatment for pemphigus. The government asserts that it has identified twenty-three patients to whom Dr. Ahmed provided IVIg treatment between 1997 and 2002 who were "merely" suffering from pemphigoid, not pemphigus, and that he improperly billed those treatments to Medicare.

The defense intends to challenge this claim and to demonstrate that the IVIg treatments for these twenty-three individuals were properly submitted to Medicare for treatment of pemphigus. The defense intends to show that Dr. Ahmed is a renowned blistering disease specialist who runs the Center for Blistering Diseases in Boston. The defense also intends to show that Dr. Ahmed sees the most complicated and most difficult to treat cases of blistering

diseases. Often patients who have failed to respond to treatment under the care of another physician are referred to Dr. Ahmed for more refined diagnosis and treatment. It is therefore not surprising that at times Dr. Ahmed's diagnosis and treatment regimen differs from the initial diagnosis and course of treatment issued by a doctor with less experience in the area of blistering diseases. The defense intends to show that this is particularly true with pemphigus and pemphigoid because these two diseases have a very similar set of symptoms and cause blisters in similar parts of a patient's body.

Moreover, the defense will show that Dr. Ahmed has done pioneering research work revealing that patients at times suffer from <u>both</u> pemphigus and pemphigoid. While many doctors would only know to look for one or the other disease, Dr. Ahmed has on multiple occasions found that patients are suffering from both diseases simultaneously. The existence of such "dual-diagnosis" patients is critical to the defense in this case because it will show that even a patient who tests positively for pemphigoid may also be suffering from pemphigus.

**B.      The Symptoms and Progression of the Blistering Disease of the Twenty-Three Patients at Issue Are Highly Relevant And Must Be Admitted.**

The government itself concedes that the proper diagnosis and treatment of the twenty-three patients it has identified are central issues in this case. In fact, the government's motion sets forth that at the "core" of its case is the allegation that Dr. Ahmed engaged in a "scheme" of "falsifying diagnoses of a rare skin disease, pemphigus" for twenty-three patients. Government's Motion in Limine to Exclude Evidence of Patient Satisfaction or Patient Outcomes ("Gov't Motion in Limine") at 1. At trial, the government will attempt to prove that these patients were suffering instead from a different skin blistering disease called pemphigoid. *Id.* at 1. The government also has disclosed that at trial its expert, Dr. Russell Hall, will provide testimony regarding pemphigus and pemphigoid including "the differences between them, including

3

clinical, diagnostic, treatment and prognosis differences." Government's Summary of Dr. Hall's Intended Expert Testimony. The government itself therefore intends to make the symptoms and disease progression of these twenty-three patients a central part of its case against Dr. Ahmed.

The patients' symptoms and disease progression as well as their responsiveness to various treatments is also a crucial part of Dr. Ahmed's defense. At trial, the defense will show that while some of these patients may have received an initial diagnosis of pemphigoid from their physicians, they did not respond to the treatment typically given to pemphigoid patients. The defense also intends to show that the symptoms suffered by these twenty-three patients are consistent with pemphigus, which responds to IVIg treatment. Therefore, it will be important for the jury to know that it was only after these patients were referred to Dr. Ahmed and were given IVIg treatment that their disease symptoms truly began to subside. The logical conclusion from these facts is that the twenty-three patients were <u>not</u> suffering from pemphigoid alone. Instead, they either had pemphigus or they had <u>both</u> pemphigoid and pemphigus simultaneously.

**C.     Evidence of Patient Response to IVIg Treatment Must Be Admitted to Prevent Improper and Unwarranted Jury Prejudice Against the Defendant.**

The defense must be allowed to introduce evidence that these twenty-three patients needed and benefited from receiving IVIg treatment to prevent misleading the jury. If the jurors are not permitted to hear that these twenty-three patients' condition improved after receiving IVIg treatment, the jury will be left with the erroneous impression that Dr. Ahmed recklessly injected his patients with medication that was unnecessary. Without evidence of these patients' need for and response to IVIg treatment, the jurors also will be misled to believe that Dr. Ahmed defrauded his patients. However, even the government admits that there is no evidence that Dr. Ahmed defrauded or mistreated his patients. *See* Gov't Motion in Limine at 3. Accordingly,

4

evidence of the patients' need for IVIg treatment and their positive responses to the treatment must be admitted to avoid improperly prejudicing the jurors against Dr. Ahmed.

**D.     The Case Law Cited By the Government Does Not Support the Exclusion of Evidence Regarding Patient Symptoms and Outcomes.**

The cases cited by the government are inapposite and do not warrant excluding evidence of patient symptoms and treatment in this case. The cases on which the government relies, *United States v. Biesiadecki*, 933 F.2d 539 (7th Cir. 1991), *United States v. Ciccone,* 219 F.3d 1078 (9th Cir. 2000), and *United States v. Elliot*, 62 F.3d 1304 (11th Cir. 1996) are all financial fraud cases where the defendants sought to introduce testimony by victims who were satisfied in their dealings with the defendants. However, the victims in these financial fraud cases were in a very different situation from the twenty-three patients at issue in the present case. In those cases, the Courts held that the "uninformed opinion" of these so-called satisfied victims was irrelevant because their sense of satisfaction and their opinions about the defendants did not shed any light on the criminal acts of the defendants. *Ciccone*, 219 F.3d at 1982; *Elliot* at 1308-09. As the Court in *Biesadecki* pointed out, "the mail fraud statute punishes the scheme to defraud, and does not require that the intended victim actually have been defrauded. … Those who are gullible, as well as those who are skeptical, are entitled to the protection of the mail fraud statute." 933 F.2d at 544. In contrast, the charge here is not that Dr. Ahmed defrauded his patients, it is that he misrepresented their medical condition to the government. As a result, the patients are a source of critical information about the nature of the disease from which they suffered. They are the best evidence of the symptoms and disease progression that they experienced.

Patient testimony was permitted and played an important role in a more analogous case, *United States v. Rutgard*, 116 F.3d 1270 (9th Cir. 1997). In *Rutgard*, the defendant was an opthomologist who faced numerous charges, including Medicare fraud. Specifically, the

5

government charged in part that the defendant had falsified his patients' medical records to support reimbursement for cataract surgeries. *Id.* at 1289. The appeals court held that for at least eleven specific patients who had testified as to their symptoms and the improvement in their eyesight resulting from the cataract surgeries, the government had not shown that Medicare had been improperly billed for their surgeries. *Id.* at 1289. While the appeals court agreed with the government that "patient satisfaction was not an issue in this case" it nevertheless relied heavily on the testimony of the individual patients to determine whether the government had met its burden to show that the defendant had submitted fraudulent Medicare claims. *Id.* at 1289-90. The Court also specifically recounted the testimony offered at trial by some of the patients. For example, for one patient, the court recited that she had testified to having "glare problems" and that she "benefited from the surgery. No reasonable juror could conclude from her testimony that there were material false statements made by [the defendant] to justify cataract surgery upon her." *Id.* at 1282. In other words, the Court found the patients themselves to be reliable sources of information regarding their symptoms, their true medical condition, and their responsiveness to appropriate treatment. *Id.*

Like the defendant in *Rutgard*, Dr. Ahmed should be permitted to present testimony from his patients to challenge the government's claim that he falsified their medical records to justify reimbursement from Medicare. As in *Rutgard*, testimony from Dr. Ahmed's patients describing their symptoms, the progress of their disease, and the disease's responsiveness to various treatments will allow the jury to determine whether they suffered from pemphigoid alone, or whether they suffered from pemphigus or a combination of conditions. Failure to allow such patient testimony would unconstitutionally and irreparably harm Dr. Ahmed's ability to mount a proper defense.

**C.     Conclusion**

Patient testimony regarding symptoms, disease progression, and their response to treatment is relevant and admissible. Such testimony is essential to the defense in at least two distinct ways. First, patient testimony will help establish what disease or diseases the patients suffered from. Second, evidence of the necessity of the IVIg treatments will dispel the otherwise erroneous and harmful inference that the government's case will create that, motivated by greed alone, Dr. Ahmed provided patients with treatments that were not required or warranted by their medical condition. In accordance with Dr. Ahmed's Sixth Amendment right to present witnesses on his own behalf, testimony of patients he successfully treated with IVIg must be admitted and the government's motion must be denied.

> Respectfully submitted,
> **Dr. Abdul Razzaque Ahmed,**
> By his attorney,
>
>  /s/ Richard M. Egbert
> Richard M. Egbert
> 99 Summer Street
> Boston, MA 02110
> (617) 737-8222

Dated: August 2, 2007

**Certificate of Service**

I, Richard M. Egbert, hereby certify that I have, on this 2nd day of August, 2007, caused the above document to be electronically served by hand upon Assistant U.S. Attorneys Michael K. Loucks, James Arnold, and Jeremy Sternberg, Office of the United States Attorney, District of Massachusetts, One Courthouse Way, Boston, MA 02210.

>  /s/ Richard M. Egbert
> Richard M. Egbert