**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 05-10057-RCL |
| v. ) | |
| ) | |
| ABDUL RAZZAQUE AHMED, ) | |
| ) | |
| Defendant ) | |

**DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION TO STRIKE**
**DEFENDANT'S UNTIMELY DISCLOSED EXPERTS**

The government's motion to strike two of defendant Dr. Abdul Razzaque Ahmed's experts should be denied because Dr. Neil Korman and Dr. Moschella are qualified experts in the medical and scientific issues that relate to this case. Just like the government's expert, Dr. Russell Hall, they are qualified "to provide an overview of [pemphigoid and pemphigus] and the differences between them, including clinical, diagnostic, treatment and prognosis differences." Government's Summary of Dr. Hall's Intended Expert Testimony ("Hall Summary") at 2. In fact, much of what the government now claims to be "irrelevant" testimony by Dr. Korman and Dr. Moschella is a direct response to statements set forth in the government's expert disclosure for Dr. Hall. The government cannot have it both ways. It cannot offer an expert to explain the proper diagnosis and treatment of the two diseases at issue, and then claim those topics are not relevant when the defense offers its own experts on the same topics.

Moreover, the government's claim that these defense experts have been disclosed too late is misleading. Because the trial date has been pushed back by almost two months since the expert disclosure date was set, the defense's recent disclosure of these experts still leaves the government almost four months to prepare for the testimony of Dr. Moschella and Dr. Korman.

Notably, the government does not allege that it has been prejudiced by these disclosures. *See United States v. Melucci*, 888 F.2d 200, 203 (1st Cir. 1989) (since there was no prejudice to the other side, court properly admitted testimony by expert whose testimony was not disclosed until two days before trial).

A.      **Background on the Government's Claims Against Dr. Ahmed**

The government's case against Dr. Ahmed focuses on his provision of a treatment called Intravenous Immunoglobulin ("IVIg") to patients suffering from two rare, but excruciating and potentially life-threatening skin blistering diseases: pemphigus and pemphigoid. The government asserts that Dr. Ahmed wrongfully billed Medicare for IVIg treatment of patients suffering from pemphigoid between 1997 and 2002, when Medicare was only providing IVIg coverage for patients suffering from pemphigus. Today, Medicare covers IVIg treatment for both diseases.

In order to meet its burden at trial, the government will have to show that there were specific patients who suffered only from pemphigoid – not from pemphigus – who Dr. Ahmed treated with IVIg and billed to Medicare. Accordingly, at trial, Dr. Ahmed intends to challenge the government's assertion that certain of the patients whose IVIg treatment he billed to Medicare were suffering from pemphigoid alone. As Dr. Moschella's and Dr. Korman's disclosures reflect, the defense's experts will testify not only that it can be very difficult to distinguish pemphigoid from pemphigus, but that there is an increasing awareness in the scientific and dermatological community that patients may suffer from both pemphigus and pemphigoid. The existence of such "dual diagnosis" cases is central to Dr. Ahmed's defense.

**B.  Dr. Moschella and Dr. Korman Will Provide Critical Support to Dr. Ahmed's Defense, and Will Rebut Erroneous Assertions by the Government.**

**1.  A Single Witness May Serve as Both a Fact and an Expert Witness.**

To the extent that the government seeks to exclude Dr. Moschella from serving as an expert witness because he may also serve as a fact witness, this is not a proper basis for excluding Dr. Moschella. Courts routinely allow witnesses to serve in such dual capacity. *See e.g., United States. v. Dukagjini*, 326 F.3d 45, 56 (2d Cir. 2003) (finding that investigating agents may provide both expert and fact testimony at trial).

**2.  Basic Information About the Symptoms and Diagnosis of Pemphigus and Pemphigoid Is Necessary and Relevant.**

In order to properly render decisions in this matter, both the court and the jury will need experts to explain and describe the two diseases at the heart of this case – pemphigus and pemphigoid. Such education by an expert of the jury is a the heart of the kind of evidence permitted under Federal Rule of Evidence 702. *See also United States v. Angiulo*, 897 F.2d 1169, 1189 (1st Cir. 1990) ("The permissible scope of expert testimony under Fed.R.Evid. 702 is quite broad … The only significant limitation is that the expert opinion be helpful to the trier of fact.").

Dr. Moschella is a renowned dermatologist who has helped treat and diagnose hundreds of cases of pemphigus and pemphigoid. *See* Expert Disclosure of Dr. Samuel L. Moschella ("Moschella Disclosure") at 1. Dr. Korman is a dermatologist who, like Dr. Ahmed, specializes in researching and treating blistering diseases such as pemphigus and pemphigoid. *See* Expert Disclosure of Dr. Neil Korman ("Korman Disclosure") at 1-2. Together, Dr. Moschella and Dr. Korman will educate the jury regarding the similarities in the presentation, the symptoms, the treatment, and the prognosis between the two diseases. These similarities are an important

aspect of Dr. Ahmed's defense. The government will seek to argue that certain patients treated by Dr. Ahmed clearly suffered from pemphigoid, not pemphigus. However, because the diseases are so similar, and because they can occur simultaneously in a single patient, the defense needs the testimony of Dr. Moschella and Dr. Korman to help demonstrate that the proper diagnosis of these patients is more complicated than the government claims.

In particular, Dr. Moschella and Dr. Korman will rebut the government's claim that pemphigus is readily distinguishable from pemphigoid by explaining that the lesions or blisters that characterize both diseases occur in similar locations and have such a similar appearance that they can be indistinguishable on visual inspection. *See* Moschella Disclosure at 2; Korman Disclosure at 2-3. They will also explain that because in both diseases these lesions or blisters occur in places such as the eye, the oral cavity, nasal tissue, vocal cords, esophagus, anus, or vagina, they can be very difficult to inspect visually or to biopsy properly. *See id.*

Dr. Moschella and Dr. Korman also both will testify that the diseases are similar in their effects on patients. *See* Moschella Disclosure at 2; Korman Disclosure at 2-3. For example, both diseases can cause excruciating pain while swallowing, can lead to anal leaking, and can lead to difficulty breathing. *See id.* Such similarities in the symptoms of the two diseases are important because they explain why many physicians who do not routinely see patients suffering from pemphigus and pemphigoid may diagnose patients incorrectly. To the extent that the government's assertion that certain patients "merely" suffered from pemphigoid, not pemphigus, rests on the initial diagnosis of these patients by a doctor who lacks special expertise in the area of blistering diseases, the similarity in presentation and symptoms will demonstrate that these initial diagnoses may be erroneous.

### 3. Disease Outcomes and Proper Treatment Are Relevant Because They Are Central to the Government's Case and Themes.

Dr. Korman and Dr. Moschella will also challenge the government's assertion that pemphigoid is a relatively harmless disease with a good prognosis. This claim plays an important role in the government's case in two ways. First, it helps the government explain to the jury why Medicaid failed to provide coverage for IVIg treatments for pemphigoid patients from 1997 until 2002. Second, it supports the government's central theme that Dr. Ahmed is a greedy doctor who charged for expensive, medically unnecessary treatments for personal financial gain. To support these arguments, the government has retained an expert, Dr. Russell P. Hall, who is expected to testify that pemphigoid generally is a "self-limited disease with good prognosis" that can be cured with medications over a four to six month period. *See* Hall Summary at 5. The defense intends to firmly discredit the government's arguments and will demonstrate that instead, Dr. Ahmed's patients received appropriate and necessary treatment.

Contrary to the government's assertions, pemphigoid cannot be so readily distinguished from pemphigus on the basis of potential outcomes. As is outlined in Dr. Korman's expert disclosure statement, "Some studies from Europe have shown that even with treatment, as many as 40% of patients suffering from bullous pemphigoid die within twelve months, while a study that Dr. Korman has just completed demonstrates that over 20% of patients with bullous pemphigoid die within the first twelve months." Korman Disclosure at 3. Dr. Korman will also explain that "pemphigoid is often exacerbated by the fact that the mean onset age of pemphigoid patients is over seventy, and many of its victims therefore have other conditions such as diabetes, cancer, osteoporosis, or high blood pressure which require multiple drug therapies." *Id.*

The complexity of treating pemphigoid is also relevant to this case. Dr. Moschella and Dr. Korman will explain that there is no published standard of care for pemphigoid. *See* Korman

5

Disclosure at 4; Moschella Disclosure at 2. This evidence regarding the variability in proper disease treatment helps to explain why patients with pemphigoid come to Dr. Ahmed, a specialist who treats rare and unusual cases of blistering disease. The government would like this Court and the jury to believe that patients diagnosed with pemphigoid can easily be cured by a brief treatment with steroids and therefore Dr. Ahmed's use of IVIg was inappropriate and must have been motivated by greed. However, Dr. Korman and Dr. Moschella will testify that treating pemphigoid is difficult, especially when a patient suffers from multiple conditions simultaneously.

      **4.** **Evidence of Dr. Ahmed's Pioneering Research and the Success of His Blistering Disease Center Explain Why Dr. Ahmed's Patients Are Atypical.**

Dr. Moschella will also establish that Dr. Ahmed's patients do not represent a typical sampling of pemphigus and pemphigoid sufferers. He will testify that Dr. Ahmed is a world renowned expert in the treatment of pemphigus and pemphigoid, and therefore the most severe and difficult to treat cases generally are referred to Dr. Ahmed. *See* Moschella Disclosure at 3-4. Dr. Moschella will testify that despite his own expertise in the area of dermatology, he has referred blistering disease patients to Dr. Ahmed for diagnosis and treatment. *Id.* The expected testimony by Dr. Moschella regarding Dr. Ahmed's qualifications and the reputation and successes of his Center for Blistering Diseases in Boston is not "character" testimony as the government asserts; it is being offered to show that Dr. Ahmed's and his Center's patients are often sicker and require more careful diagnosis and treatment than patients that are typically seen by dermatologists. The fact that the patients who are the most difficult to diagnose and treat are referred to Dr. Ahmed will also explain why Dr. Ahmed has seen a higher than average number of patients suffering from both pemphigus and pemphigoid – so-called "dual diagnosis" patients. Since most doctors will not be able to recognize the existence of both diseases simultaneously,

such patients will often become the very type of treatment dilemmas in which Dr. Ahmed and his Center specialize.

Dr. Ahmed's status as a pioneer in the area of studying and diagnosing dual diagnosis patients also explains Dr. Ahmed's particular ability to identify patients suffering from both pemphigus and pemphigoid. Dr. Korman will explain that the coincidence of the two diseases is not entirely surprising since they are both autoimmune diseases. Patients with an autoimmune disease have a diminished ability to resist diseases and are therefore susceptible to developing additional diseases. *See* Korman Disclosure at 5. However, Dr. Ahmed's study and publication of dual diagnosis cases has been pioneering work in the field of dermatology. As a result, awareness of the existence of a "dual diagnosis," or the presence of two autoimmune diseases of the skin in a single patient, is only now beginning to emerge in the community of dermatology. *See* Korman Disclosure at 5. Since Dr. Ahmed was among the first to recognize the existence of dual diagnosis patients, the fact that more of his patients have a dual diagnosis of pemphigoid and pemphigus is not sinister or even suspect as the government plans to try to show.

**C.    Dr. Moschella and Dr. Korman's Testimony Will Directly Address and Rebut the Expected Testimony of the Government's Own Expert.**

In addition to their relevance to Dr. Ahmed's defense, Dr. Moschella and Dr. Korman are critical to Dr. Ahmed's ability to rebut the government's expert, Dr. Russell Hall. In fact, a review of Dr. Hall's expected testimony shows that the government plans to offer Dr. Hall for precisely the same points that it complains are "irrelevant" to the case in its motion to exclude Dr. Moschella and Dr. Korman. *See* Hall Disclosure. For example, in its expert disclosure statement, the government recognizes the need to educate the jury about the two diseases at issue, and it has disclosed that it intends to offer Dr. Hall for the following general information: "Dr. Hall is expected to provide an overview of [pemphigus and pemphigoid] and the differences

7

between them, including clinical, diagnostic, treatment and prognosis differences." Hall Disclosure at 2. Clearly, the government intends to offer the same type of non-patient specific background information as the defense intends to provide through Dr. Moschella and Dr. Korman.

The government's expert disclosure further shows that the government is well aware that the similarities between pemphigus and pemphigoid in their presentation, prognosis, and outcomes will be central issues at trial. Accordingly, the government has stated that it intends to elicit testimony from its own expert in all of these areas. In its expert disclosure, the government states:

- "Dr. Hall will testify that each type of pemphigoid is distinct from pemphigus vulgaris. … Pemphigoid and pemphigus vulgaris often have different prognoses and different likely outcomes, … ." Hall Disclosure at 2-3

- "Dr. Hall will testify that in general pemphigoid and pemphigus vulgaris have different clinical presentations. For example, pemphigus vulgaris commonly begins with the manifestation of oral lesions. The lesions or 'bullae' of pemphigus vulgaris, in the mouth or on the skin are typically flaccid an characterized by slow healing areas of denudation. He will also testify that pemphigus vulgaris is rare in the eye … Dr. Hall will testify that the mucosal form of pemphigoid is more common in the eye and more serious in the eye, than pemphigus vulgaris." Hall Disclosure at 3.

- "Dr. Hall will also explain the diagnostic differences between pemphigus vulgaris and pemphigoid." Hall Disclosure at 3.

- "Dr. Hall is expected to highlight these clinical and diagnostic differences by referring to photographs of patients with each of the two different diseases …" Hall Disclosure at 5.

- "It is also Dr. Hall's opinion that there are some differences between pemphigus vulgaris and the various types of pemphigoid in terms of treatment and prognosis. Most bullous pemphigoid patients have a self-limited disease with good prognosis" Hall Disclosure at 5.

8

As outlined in the disclosures for Dr. Korman and Dr. Moschella, the defense intends to demonstrate that these two diseases are far more similar in terms of symptoms and prognosis than Dr. Hall will testify.

The government's claim that whether Dr. Ahmed's diagnostic methods and the course of treatment he supplied to his patients was appropriate is irrelevant is similarly belied by its own expert disclosure. The government's expert is expected to testify that:

- "during the 1990s, the standard of care in dermatology for diagnosing these disease was based, at minimum, on clinical presentation, the histological findings from blisters, and the findings from the [direct immunofluorescence, ("DIF")] test." Hall Disclosure at 4.

- "Dr. Hall will testify that during the 1990s through the present, the standard of care was not to use [indirect immunofluoresence ('IIF')] tests as the sole basis for diagnosing these diseases." Hall Disclosure at 5.

- "An average bullous pemphigoid patient is treated with medications for 4-6 months. Pemphigus vulgaris on the other hand is typically a more serious, more difficult to treat disease. Patients must be followed closely, even those who appear to be in remission, because relapses can occur. Prior to the advent of systemic corticosteroids pemphigus vulgaris was a fatal disease; even today with the use of corticosteroids, there is still a meaningful mortality rate associated with pemphigus vulgaris. The mortality rate is approximately 5-10%, most often due to complications from therapy." Hall Disclosure at 5-6.

The government clearly intends to offer Dr. Hall to support its claim that Dr. Ahmed's practice of using IIF to diagnose patients was improper and did not meet with the "standard of care" in place at the time. The defense therefore is entitled to present Dr. Moschella and Dr. Korman who will both testify to the usefulness and effectiveness of IIF to diagnose patients with blistering diseases, particularly when a biopsy has provided inconclusive or insufficient information. *See* Korman Disclosure at 4-5; Moschella Disclosure at 2-3. Similarly, the defense is entitled to present testimony by Dr. Moschella and Dr. Korman that for some pemphigoid patients, more aggressive treatment than a 4-6 month course of corticosteroids is necessary and

that for a subset of those patients, IVIg treatment is proper and even life-saving. *See* Moschella Disclosure at 4; Korman Disclosure at 5.

Finally, he government's expert disclosure makes clear that the government understands that the issue of whether patients may suffer from both pemphigus and pemphigoid simultaneously will be a critical issue at trial. Accordingly, the government intends to offer Dr. Hall's testimony that: "he has never seen a patient who has both pemphigoid and pemphigus vulgaris, although he is aware of reports of this rare phenomena from scientific literature." Hall Disclosure at 3. Both Dr. Moschella and Dr. Korman are being offered to testify that dual-diagnosis patients exist and ,as outlined above, that Dr. Ahmed is likely to have seen and recognized many more such patients than a typical dermatologist.

**D.    The Government Has Not Been Prejudiced by the Recent Disclosure of the Defense's Experts.**

The government's claim that these defense experts have been disclosed too late is misleading. The May 15, 2007 deadline that the government references for expert disclosures was set when the trial was scheduled to begin on September 17, 2007. *See* Pretrial Order of 1/16/2007. Since that time, trial has been pushed back by almost two months to November 5, 2007. *See* Electronic Order of 3/22/2007. Under the original schedule, the government would have received the expert disclosures approximately four months before trial. With a new trial date of November 5, the government still has received the disclosures almost four months before trial, giving the government ample time to prepare for the testimony of Dr. Korman and Dr. Moschella. It is notable that the government's motion does not allege that it has been prejudiced by these disclosures. *See United States v. Melucci*, 888 F.2d 200, 203 (1st Cir. 1989) (since there was no prejudice to the other side, court properly admitted testimony by expert whose testimony was not disclosed until two days before trial).

The length of time required by the defense to locate and to secure appropriate expert witnesses also is not the result of dalliance. Since pemphigus and pemphigoid are very rare skin blistering diseases, the number of doctors qualified to serve as experts is limited. Once proper doctors were identified and contacted, it proved to be very difficult to obtain their final assent to providing testimony in this matter. Doctors and the hospitals that employ them are understandably reluctant to provide testimony for a party that is adverse to the government, particularly to the Medicare program and to the Department of Health and Human Services. Ultimately, one expert whom the defense initially had pursued had to be replaced and a significant amount of dialogue between the experts and their employers had to be carried out before the defense was able to submit its expert disclosures.

> Respectfully submitted,
> **Dr. Abdul Ahmed,**
> By his attorney,
>
> /s/ Richard M. Egbert _____
> Richard M. Egbert
> 99 Summer Street
> Boston, MA 02110
> (617) 737-8222

Dated: August 2, 2007

## Certificate of Service

I, Richard M. Egbert, hereby certify that I have, on this 2nd day of August, 2007, caused the above document to be electronically served by hand upon Assistant U.S. Attorneys Michael K. Loucks, James Arnold, and Jeremy Sternberg, Office of the United States Attorney, District of Massachusetts, One Courthouse Way, Boston, MA 02210.

> /s/ Richard M. Egbert
> Richard M. Egbert