UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | Case No. 05-10057-RCL |
| v. | ) ) |  |
| ABDUL RAZZAQUE AHMED, | ) ) |  |
| Defendant | ) ) |  |

**DEFENDANT'S SURREPLY IN OPPOSITION TO
GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE
EVIDENCE OF PATIENT SATISFACTION OR PATIENT OUTCOMES**

The government's attempt to exclude what it labels evidence of "patient satisfaction or patient outcomes" is both inappropriate and unworkable. First, evidence of the medical progress of defendant Dr. Razzaque Ahmed's patients over the course of their treatment is relevant evidence of which skin blistering disease they were suffering from. Second, if evidence of the effectiveness of Dr. Ahmed's treatment is withheld from the jury, the jurors may be misled into believing that Dr. Ahmed recklessly administered an unnecessary treatment to his patients purely for his own financial gain. Such a misimpression would give rise to grave and erroneous juror prejudice against Dr. Ahmed. Third, the doctrine of completeness bars the government from selecting merely those portions of a witness's testimony that are favorable to the prosecution, and then seeking to exclude those portions that it fears will aid the defense. Finally, even if the Court were to agree with the government that evidence of "patient satisfaction or patient outcomes" is properly excluded, this category of evidence is too amorphous for the Court to draw a consistent, logical distinction between patient testimony relating to diagnosis, treatment,

and outcome. These three categories of evidence are all relevant and are so intertwined that they cannot be easily be separated from one another.

A.     **Patient Testimony Will Provide Critical, Relevant Evidence Demonstrating Which Disease or Diseases the Twenty-Three Patients at Issue Had Contracted.**

Despite the government's fervent efforts to convince the Court otherwise, the trial in this case will focus squarely on the question of what disease the twenty-three patients at issue were suffering from. The government will argue that it has identified twenty-three patients that the defendant, Dr. Razzaque Ahmed, treated with IVIg, who were suffering only from a skin blistering disease called pemphigoid. This necessarily will be the centerpiece of the government's argument because the government intends to show that Dr. Ahmed "lied about patients' pemphigus diagnosis in order to obtain Medicare reimbursement" for their IVIg treatments. Government's Reply to Defendant's Opposition to Motion in Limine to Exclude Evidence of Patient Satisfaction or Patient Outcomes ( "Gov't Reply") at 2. The defense, on the other hand, will challenge the government's assertion and will seek to show that the twenty-three patients did suffer from pemphigus or that they suffered from both pemphigus and pemphigoid simultaneously.

Testimony regarding the twenty-three patients' response to the treatments they received will help to establish that they were not suffering from pemphigoid or that they were suffering from pemphigoid and pemphigus simultaneously. Dr. Ahmed is an expert in the field of blistering diseases. Patients typically do not come to Dr. Ahmed directly; instead, they initially receive a diagnosis and treatment from another doctor (such as their primary care physician), who then refers them to Dr. Ahmed when treatment efforts have failed. Dr. Ahmed re-evaluates the patients' diagnosis and alters the course of treatment based on his own assessment of the patient. In this case, patients will testify that they initially received the standard medical

treatment for pemphigoid, but that their symptoms and suffering did not diminish. They will testify that it was not until they were referred to Dr. Ahmed and he administered IVIg treatment that their health finally improved. The initial failure of pemphigoid treatment followed by success of IVIg treatment is relevant, admissible evidence that these patients were not "merely" suffering from pemphigoid as the government seeks to show. It is relevant, admissible evidence that these patients were suffering either from pemphigus or that they were dual-diagnosis patients who were suffering from pemphigus and pemphigoid simultaneously.

      The fact that Dr. Ahmed has publicly stated that IVIg treatment is an effective treatment for certain types of pemphigoid patients does not vitiate the relevance of the twenty-three patients' responsiveness to IVIg treatment. The government's own expert, Dr. Russell Hall, intends to testify that in the typical case, pemphigoid patients "have a self-limited disease with a good prognosis" and can be successfully treated "with medication for 4-6 months." Government's Summary of Dr. Hall's Intended Expert Testimony at 5 ("Hall Summary"). Testimony by the patients at issue in this case will show that the course of their disease did not fit Dr. Hall's profile of a pemphigoid patient. Instead, their testimony will show that the course of their condition and their response to treatment is more consistent with pemphigus, which Dr. Hall describes as follows: "Pemphigus vulgaris … is typically a more serious, more difficult to treat disease. Patients must be followed closely, even those who appear to be in remission, because relapses can occur. … [E]ven today with the use of corticosteroids, there is still a meaningful mortality rate associated with pemphigus vulgaris." Hall Summary at 5. Patient testimony will show that this description of pemphigus fits the course of their medical condition – the patients were initially treated with steroids, and though some initially appeared to experience a remission of their disease, they then relapsed and were not cured through the use of

3

steroids. It was not until they were finally treated with IVIg that their disease went into prolonged, sustainable remission. The failure of standard pemphigoid treatment followed by the success of IVIg treatments is relevant evidence that supports the conclusion that these patients were either suffering from pemphigus or were dual-diagnosis patients.

  The government's argument that this type of retrospective proof of the patients' condition is "inconsistent with both the practice of medicine and with defendant's obligations under Medicare" is beside the point. Gov't Reply at 3. The defendant is <u>not</u> claiming that he reached his diagnosis by studying how patients responded to treatment, nor is he claiming that he billed Medicare on the basis of how his patients responded to treatment. Nevertheless, patients' response to treatment is relevant evidence of the patients' condition. This point can be illustrated with the following hypothetical: A patient suffering from chest congestion receives a prescription from his doctor for an anti-viral medication because the doctor believes the patient is suffering from a cold caused by a virus. The patient's condition does not improve; it worsens. The doctor conducts some additional tests and determines that the patient is likely suffering from a bacterial infection and prescribes an anti-bacterial medication instead. Once the patient is on the new medication, his chest congestion clears. The fact that the condition failed to improve on anti-viral medication combined with the fact that the condition did improve once the patient was on anti-bacterial medication is evidence that the patient was suffering from a bacterial infection. As this hypothetical illustrates, patient response to treatment is relevant evidence which the defense is entitled to present to the jury for consideration. *See also Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense").

Moreover, the government's efforts to distinguish *United States v. Rutgard*, 116 F.3d 1270 (9th Cir. 1997) underscore why patient testimony is relevant and admissible here. The government points out that in *Rutgard* patient testimony about symptoms and the effects of treatment helped determine whether the defendant, Dr. Rutgard, lied to the government when he asserted that his patients suffered from medical conditions warranting specific kinds of eye surgery. Gov't Reply at 4-5. Similarly, in this case, patient testimony about symptoms and the effects of treatment will help will help the jury to determine whether Dr. Ahmed lied to the government when he stated that these patients were all suffering from pemphigus. The government also points out that in *Rutgard*, a patient named Jean Elwood testified about her symptoms prior to cataract surgery and further testified that the cataract surgery had benefited her. *Rutgard*, 116 F.3d at 1281. As the government recounts, "her testimony as to the benefit of the surgery was directly linked to whether or not she was properly diagnosed with a need for cataract surgery." Gov't Reply at 5. In this case, patient testimony about the effects of various treatments will be directly linked to whether or not patients were properly diagnosed with pemphigus. *Rutgard* is analogous to this case and supports a finding that patient testimony about the "benefit" of IVIg treatment will help the jury determine whether Dr. Ahmed's diagnosis of pemphigus was truthful.

B. **There Is a Substantial Risk of Jury Confusion and Prejudice If the Jurors Are Not Informed of Patient Outcomes.**

If patients are barred from testifying how their disease responded to IVIg treatment, there is a substantial likelihood that the jury will be left with the erroneous impression that the IVIg treatment Dr. Ahmed administered was unnecessary and possibly even harmful. If patients testify about their symptoms, their diagnoses, and their treatment, but are precluded from stating how they responded to the treatment, the jury will be left to speculate that Dr. Ahmed

5

administered a worthless treatment for the sole purpose of obtaining Medicare reimbursement. Even worse, they may speculate that this information is being withheld because the treatment worsened rather than improved the patients' condition.

The government suggests that any juror prejudice could be remedied through "simple jury instructions," but this argument is backwards. Gov't Reply at 3. The government is most likely filing this motion to exclude because it is concerned that the jury will be reluctant to find Dr. Ahmed guilty of a crime once it learns that patients who were in excruciating pain made a remarkable recovery once they were under Dr. Ahmed's care and received IVIg treatment. If this is the government's concern, the proper course is to allow the defense to present the relevant evidence of the impact of IVIg treatment on the patients, and then to give limiting instructions to the jury about the relevance of the testimony. The government cannot be allowed to allege that Dr. Ahmed falsely diagnosed his patients and then bar the defense from demonstrating that the treatment Dr. Ahmed prescribed to treat this "false" diagnosis was appropriate and effective.[1] *See also* Fed. R. Evid. 403 (relevant evidence is excludable only if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.")

C.  **The Doctrine of Completeness Requires Admission of Patients' Positive Response To IVIg Treatment.**

A full presentation of the patients' symptoms, diagnosis, treatment, and subsequent health is also required under the doctrine of completeness. As the First Circuit has explained, the doctrine of completeness "operates to ensure fairness where a misunderstanding or distortion" would occur if only a portion of a witnesses' prior statements is admitted at trial. *United States*

---

[1] One wonders if the government would still take the position that patient outcomes were irrelevant if the patients' condition had deteriorated after IVIg treatment was administered.

6

*v. Simonelli*, 237 F.3d 19, 28 (1st Cir. 2001). *See also United States v. Millan*, 230 F.3d 431, 434 (1st Cir. 2000) ("Under the doctrine of completeness codified in Federal Rule of Evidence 106, a party wishing to introduce only a portion of a recorded statement may be precluded from doing so where partial disclosure out of context would result in unfairness to the other party.") In this case, when interviewed or deposed by the government, the government has solicited patient testimony regarding the earlier failure of pemphigoid treatment and the subsequent success of IVIg treatment. Many of the government's documentary exhibits also include both evidence of diagnosis and evidence of patient outcomes. The government may not now ask that portions of these earlier statements and exhibits be excluded in a manner that will distort the patients' testimony and raise unfounded doubts about the propriety of Dr. Ahmed's medical treatment decisions.

**D.     The Government's Request for the Exclusion of Evidence Regarding "Patient Outcomes and Patient Satisfaction" Is Unworkable.**

Even if the Court were to agree with the government that evidence of "patient outcomes and patient satisfaction" is properly excluded in this case, this is not a workable category of evidence. Since the proper diagnosis of the twenty-three patients is critical to this case, the patient witnesses will be asked to testify about all of the following: (1) their initial symptoms; (2) how those symptoms progressed over time; (3) what symptoms they suffer from today; (4) what treatments they received prior to being referred to Dr. Ahmed, and why, despite those treatments, they were referred to Dr. Ahmed; and (5) what treatments they received from Dr. Ahmed. During the course of such questioning, patients will necessarily disclose information about outcomes and satisfaction. In providing testimony about the course and nature of their condition, patients will inevitably describe the effect of the various treatments they received and how those

7

treatments affected their symptoms. Trying to extricate all evidence of outcomes and satisfaction from patient testimony is simply not possible.

**E.     Conclusion**

For the foregoing reasons and for the reasons outlined in the defendant's original opposition memorandum, the government's motion to exclude evidence of "patient satisfaction or patient outcomes" should be denied.

**REQUEST FOR ORAL ARGUMENT**

Pursuant to Local Rule 7.1(d) the Defendant respectfully requests a hearing on this motion.

Respectfully submitted,
**Dr. Abdul Razzaque Ahmed,**
By his attorney,

 /s/ Richard M. Egbert
Richard M. Egbert
99 Summer Street
Boston, MA 02110
(617) 737-8222

Dated: August 31, 2007

**Certificate of Service**

I, Richard M. Egbert, hereby certify that I have, on this 31st day of August, 2007, caused the above document to be electronically served by hand upon Assistant U.S. Attorneys Michael K. Loucks, James Arnold, and Jeremy Sternberg, Office of the United States Attorney, District of Massachusetts, One Courthouse Way, Boston, MA 02210.

　　/s/ Richard M. Egbert
　　Richard M. Egbert