UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CRIMINAL NO. 05-10057-RCL |
| ) | |
| v. ) | VIOLATIONS: |
| ) | |
| ABDUL RAZZAQUE AHMED ) | 18 U.S.C. §2 (aiding and abetting) |
| ) | 18 U.S.C. §1341 (mail fraud) |
| ) | 18 U.S.C. §1347 (health care fraud) |
| ) | 18 U.S.C. §1518 (obstruction of justice) |
| ) | 18 U.S.C. §1956 (money laundering) |
| _____ ) | |

## SUPERSEDING INDICTMENT

The Grand Jury Charges that:

## PRELIMINARY ALLEGATIONS

At all times material hereto, unless otherwise alleged:

### The Defendant

1. The defendant **ABDUL RAZZAQUE AHMED** was a resident of Brookline,

Massachusetts, was licensed by the Commonwealth of Massachusetts as a physician and had a

principal place of business in Boston, Massachusetts.

### Background

2. The Center For Blistering Diseases ("CBD"), formerly known as Blistering Diseases

Treatment Center, Inc., was a corporation, owned and operated by defendant **ABDUL**

**RAZZAQUE AHMED**, through which he ran his medical practice from on or about October 26,

1998 onward. At all relevant times, defendant **ABDUL RAZZAQUE AHMED** was the

President and owner of CBD.



3. At various relevant times, including in or about 1997 and 1998, defendant **ABDUL RAZZAQUE AHMED** opened and controlled bank accounts in his own name and in the name of CBD.

4. Defendant **ABDUL RAZZAQUE AHMED's** clinical and research practice focused on various autoimmune blistering skin diseases, including pemphigus vulgaris (referred to in this Indictment as "pemphigus") and pemphigoid.

5. Beginning on a date unknown to the Grand Jury and continuing through 2001, defendant **ABDUL RAZZAQUE AHMED** treated patients suffering from various autoimmune blistering skin diseases, including pemphigus and pemphigoid, with intravenous immunoglobulin ("IVIG").

6. Beginning in or about 1997 and continuing through 2001, defendant **ABDUL RAZZAQUE AHMED** treated various patients who were beneficiaries of the Medicare program. These Medicare patients are referred to in this Indictment by their initials.

7. Pemphigus and pemphigoid were separate and distinct autoimmune blistering skin diseases. They attacked the skin in different ways and at different levels of the skin. They were also diagnostically different. Both diseases were extremely rare.

8. Pemphigus attacked the body's immune system by sending antibodies to attack the inter-cellular cement, the mortar holding the cells of the skin in place. Pemphigus increased the body's susceptibility to infection. These infections could be fatal.

9. Pemphigoid differed from pemphigus in at least two respects. First, it was generally not a fatal disease. In addition, pemphigoid attacked the foundation of the skin known as the basement membrane zone.

2

10. At all times material hereto, pemphigus and pemphigoid could generally be diagnosed by biopsies of tissue or by laboratory analysis of blood sera. Biopsy involved taking tissue from a patient and analyzing the tissue under a microscope. Typically reports of such tests were called biopsy reports. Sera testing involved drawing blood from a patient, separating the blood sera from the red and white blood cells, and performing laboratory tests on the sera. Reports of such sera tests were commonly called Immunopathology Reports.

## The Medicare Program

11. The Medicare program was a federally subsidized health insurance program for the elderly and for persons with certain disabilities pursuant to title XVIII of the Social Security Act. The program was administered by the Health Care Financing Administration of the United States Department of Health and Human Services, which on July 1, 2001 became the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services (collectively referred to in this Indictment as "CMS") and by private contractors or carriers. In the Commonwealth of Massachusetts, the Medicare carrier was the National Heritage Insurance Company ("NHIC").

12. Medicare was a health care benefit program, in that it was a public plan affecting commerce, under which medical benefits, items and services were provided to individuals, and included individuals and entities who were providing medical benefits, items, and services for which payment may be made under the plan.

13. Prior to 1997, Medicare did not, absent exceptional circumstances, reimburse health care providers for intravenous immunoglobulin ("IVIG") treatments for patients suffering from any autoimmune blistering skin disease – pemphigus or pemphigoid.

3

14. In 1997, NHIC issued a regional coverage decision, applicable in New England, authorizing billing for IVIG treatment for the disease pemphigus. This coverage decision will be referred to in this Indictment as the "Medicare Coverage Decision." The Medicare Coverage Decision did not authorize billing for IVIG for patients suffering only from the disease pemphigoid.

## Defendant ABDUL RAZZAQUE AHMED's Billings for IVIG Treatment for Pemphigoid

15. In or about 1997, Defendant **ABDUL RAZZAQUE AHMED** entered into a contract with a Rhode Island-based company specializing in infusion therapy (referred to in this Indictment as the "Infusion Company"). Among other provisions in the contract, the Infusion Company agreed: (1) to assist defendant **ABDUL RAZZAQUE AHMED** in setting up an infusion suite in his office; (2) to supply him with the drug (IVIG); (3) to supply him with nursing services; and (4) to perform billing, on his behalf, to Medicare and other insurers. In exchange, defendant **ABDUL RAZZAQUE AHMED** agreed, among other things, to pay the Infusion Company a "management fee" of 50% of the profit on IVIG treatments.

16. In or about 1997 and 1998, defendant **ABDUL RAZZAQUE AHMED** diagnosed numerous patients with pemphigus, but not pemphigoid, and treated many of those patients with IVIG. Also in or about this period, defendant **ABDUL RAZZAQUE AHMED** diagnosed other patients, including Medicare patients, with pemphigoid, but not pemphigus, and treated many of these patients with IVIG as well.

17. In or about 1997, defendant **ABDUL RAZZAQUE AHMED** caused claims to be submitted to the Infusion Company, for the purpose of billing Medicare, for patients whom he had diagnosed with pemphigoid, but not pemphigus, and treated with IVIG. In or about 1997,

4

employees of the Infusion Company informed defendant **ABDUL RAZZAQUE AHMED** of the Medicare Coverage Decision, and that Medicare would not pay for IVIG treatments for patients diagnosed with pemphigoid only.

18. On or about June 15, 2000, a federal investigation of defendant **ABDUL RAZZAQUE AHMED's** billings commenced and a subpoena was served on defendant **ABDUL RAZZAQUE AHMED** seeking documents concerning, among other things, his Medicare patients treated with IVIG.

### The Scheme To Defraud

19. From in or about January 1997 through in or about 2001, defendant **ABDUL RAZZAQUE AHMED**, devised and intended to devise a scheme and artifice to defraud the Medicare Program and to obtain money (and once obtained, protect and further his ability to keep that money) by means of materially false and fraudulent pretenses, representations and promises, well knowing that the pretenses, representations and promises were false and fraudulent when made.

### The Purpose of the Scheme

20. The purpose of the scheme was to enrich defendant **ABDUL RAZZAQUE AHMED** (and protect and further his ability to keep his fraudulently obtained monies) and to defraud the Medicare program of money by causing false and fraudulent claims for IVIG treatment to be submitted and paid.

### Manner and Means

21. It was a part of the scheme and artifice to defraud that defendant **ABDUL RAZZAQUE AHMED,** knowing that Medicare would not reimburse for IVIG treatments for

5

patients with pemphigoid, falsified a so-called "dual diagnosis" of pemphigus and pemphigoid for certain of his Medicare patients, despite knowing that these patients only suffered from the uncovered disease, pemphigoid.

22. It was further part of the scheme and artifice to defraud that defendant **ABDUL RAZZAQUE AHMED** falsely represented to the Infusion Company that certain of his Medicare patients had "dual diagnoses" in order to obtain money from Medicare for the expensive IVIG treatments.

23. It was further part of the scheme and artifice to defraud that defendant **ABDUL RAZZAQUE AHMED** caused Medicare to be billed for IVIG treatments for the false "dual diagnosis" of pemphigus and pemphigoid for various of his Medicare patients, despite knowing that these patients only suffered from the uncovered disease, pemphigoid.

24. It was further part of the scheme and artifice to defraud that defendant **ABDUL RAZZAQUE AHMED** did not tell certain of these Medicare patients that they suffered from pemphigus, the more serious disease.

25. It was further part of the scheme and artifice to defraud that defendant **ABDUL RAZZAQUE AHMED**, from in or about 1997 through in or about 2001, fraudulently caused Medicare to be billed for IVIG treatments provided to patients who never had a disease which was approved by Medicare for such treatment.

26. It was further part of the scheme and artifice to defraud that defendant **ABDUL RAZZAQUE AHMED** from in or about 1997 through in or about 2001, fraudulently collected money from Medicare for IVIG treatments provided to patients who never had a disease which was approved by Medicare for such treatment.

6

27. It was further part of the scheme and artifice to defraud that defendant **ABDUL RAZZAQUE AHMED**, in order to conceal his fraudulent activity and further his continued receipt of Medicare funds for IVIG treatments for pemphigoid patients, caused the creation of false documents, including backdated letters to treating physicians for some of his Medicare patients, and bogus Immunopathology Reports that falsely indicated that a number of his Medicare patients had tested positive for pemphigus.

28. It was further part of the scheme and artifice to defraud that defendant **ABDUL RAZZAQUE AHMED** caused to be mixed blood sera from one or more patients known by him to have the disease pemphigus in the blood sera of other patients, including certain Medicare patients, known by him to have only the disease pemphigoid.

29. It was further part of the scheme and artifice to defraud that defendant **ABDUL RAZZAQUE AHMED** caused the vials of mixed blood to be sent to a testing laboratory in Buffalo, New York (referred to in this Indictment as the "Buffalo Lab"), knowing that the tests would falsely reveal the presence of the disease pemphigus for a number of patients, including certain Medicare patients.

30. It was further part of the scheme and artifice to defraud that defendant **ABDUL RAZZAQUE AHMED** paid the Buffalo Lab for testing the vials of mixed blood with checks drawn on an account that contained the proceeds of his fraudulent Medicare billings.

7

## COUNTS ONE THROUGH FOUR: 18 U.S.C. §1341 (MAIL FRAUD)

31. Paragraphs one through thirty of this Indictment are herein realleged and incorporated by reference.

32. On or about the dates set forth in the chart below, in the District of Massachusetts and elsewhere, the defendant

### ABDUL RAZZAQUE AHMED

having devised and intending to devise the aforementioned scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice, did place and caused to be placed in a post office and authorized depository for mail matter the matters indicated below to be sent and delivered by the Postal Service and deposited and caused to be deposited the matters indicated below to be sent and delivered by private and commercial interstate carrier, each such

8

instance being a separate and additional Count of this Indictment, as set forth below:

| Count | Date | Item | Sent From |
|---|---|---|---|
| 1 | September 11, 2000 | Letter to DB's treating physician purporting to diagnose DB with pemphigus | Massachusetts |
| 2 | September 11, 2000 | Letter to BG's treating physician purporting to diagnose BG with pemphigus | Massachusetts |
| 3 | September 11, 2000 | Letter to EM's treating physician purporting to diagnose EM with pemphigus | Massachusetts |
| 4 | June 26, 2000 | Letter to Buffalo Lab enclosing sera samples for testing | Massachusetts |

All in violation of Title 18, United States Code, Sections 1341 and 2.

9

## COUNTS FIVE THROUGH ELEVEN: 18 U.S.C. §1347 (HEALTH CARE FRAUD)

33. Paragraphs one through thirty of this Indictment are herein realleged and incorporated by reference.

34. On or about the dates set forth in the chart below, in the District of Massachusetts and elsewhere, the defendant

### ABDUL RAZZAQUE AHMED

knowingly and willfully executed a scheme and artifice to defraud Medicare, a health care benefit program, and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property under the custody and control of the Medicare program, in connection with the delivery of and payment for the health care benefits, items and services, each such instance being a separate and additional Count of this Indictment, as set forth below:

| Count | Patient | Claim Number | Claim Date |
|-------|---------|--------------|------------|
| 5 | DB | 8701086192000 | 3/27/01 |
| 6 | BG | 8701086902125 | 3/27/01 |
| 7 | RL | 8701086182000 | 3/27/01 |
| 8 | JO | 8701086901798 | 3/27/01 |
| 9 | JP | 8701086901809 | 3/27/01 |
| 10 | AP | 8701086901823 | 3/27/01 |
| 11 | RW | 8701086901921 | 3/27/01 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

10

## COUNT TWELVE: 18 U.S.C. §1518
## (OBSTRUCTION OF CRIMINAL INVESTIGATIONS OF HEALTH CARE OFFENSES)

35. Paragraphs one through thirty of this Indictment are herein realleged and incorporated by reference.

36. On or about June 15, 2000, defendant **ABDUL RAZZAQUE AHMED** was served with a subpoena in a federal criminal health care fraud investigation.

37. From in or about June 2000 and continuing through at least in or about October 2000, in the District of Massachusetts and elsewhere, the defendant

### ABDUL RAZZAQUE AHMED

did willfully prevent, obstruct, mislead, delay and attempt to prevent, obstruct, mislead and delay the communication of information and records relating to a violation of a Federal health care offense to a criminal investigator by creating and causing to be created false documents, including Immunopathology Reports and letters to referring physicians of certain of his Medicare patients, purporting to show that the patients suffered from a "dual diagnosis" of pemphigus and pemphigoid, when in fact they only suffered from pemphigoid, and further causing those false documents to be produced to individuals duly authorized by a department and agency of the United States to conduct and engage in investigations for prosecutions for violations of health care offenses.

All in violation of Title 18, United States Code, Section 1518.

11

## COUNT THIRTEEN: 18 U.S.C. §1518
## (OBSTRUCTION OF CRIMINAL INVESTIGATIONS OF HEALTH CARE OFFENSES)

38. Paragraphs one through thirty of this Indictment are herein realleged and incorporated by reference.

39. On or about October 25, 2001, in the District of Massachusetts and elsewhere, the defendant

### ABDUL RAZZAQUE AHMED

did willfully prevent, obstruct, mislead, delay and attempt to prevent, obstruct, mislead and delay the communication of information and records relating to a violation of a Federal health care offense to a criminal investigator by causing false documents, to be prepared and produced, through his retained defense counsel, to individuals duly authorized by a department and agency of the United States to conduct and engage in investigations for prosecutions for violations of health care offenses, including individuals employed by the United States Attorney's Office for the District of Massachusetts, which documents were false and fraudulent in that they were created using results obtained by: (1) causing blood sera samples for certain of his pemphigoid patients (including several Medicare patients) to be mixed with the blood of other of his patients who suffered from pemphigus; and (2) causing the mixed blood sera to be sent to the Buffalo Lab for testing in order to obtain test results which would falsely show that these pemphigoid patients also suffered from pemphigus.

All in violation of Title 18, United States Code, Section 1518.

12

## COUNTS FOURTEEN AND FIFTEEN: 18 U.S.C. §1956(a)(1) (MONEY LAUNDERING)

40. Paragraphs one through thirty of this Indictment are herein realleged and incorporated by reference.

41. Fleet Bank was a financial institution within the meaning of Title 18, United States Code, Section 1956(c)(6), and Title 31 United States Code, Section 5312(a)(2). Fleet Bank was engaged in, and has activities which affect, interstate and foreign commerce.

42. On the dates set forth below, in the District of Massachusetts and elsewhere, the defendant

### ABDUL RAZZAQUE AHMED

did, knowingly conduct and attempt to conduct financial transactions affecting interstate commerce, as set forth below, knowing that the property involved in the transactions represented the proceeds of some form of unlawful activity, which transactions in fact involved the proceeds of specified unlawful activity, that is, violations of Title 18, United States Code, Section 1347, with the intent to promote such specified unlawful activity, each such instance being a separate and additional Count of this Indictment as set forth below:

Count 14    On or about June 27, 2000, signing and sending a check on his Fleet Bank account #XXXX3605 to Buffalo Lab for $3,283.00 to pay for the testing of blood sera marked with the names of defendant **ABDUL RAZZAQUE AHMED's** patients (including certain Medicare patients), including the vials of mixed blood.

Count 15    On or about July 6, 2000, signing and sending a check on his Fleet Bank account #XXXX3605 to Buffalo Lab for $6,418.60 to pay for the testing of blood sera marked with the names of defendant **ABDUL RAZZAQUE AHMED's** patients (including certain Medicare patients), including the vials of mixed blood.

All in violation of Title 18, United States Code, Section 1956.

13

## HEALTH CARE FRAUD FORFEITURE ALLEGATION
### (18 U.S.C. §982(a)(7) and 28 U.S.C. §2461(c))

43. Upon conviction of one or more Federal health care offenses alleged in Counts 5 to 11 of this Indictment, defendant

### ABDUL RAZZAQUE AHMED

shall forfeit to the United States pursuant to 18 U.S.C.§982(a)(7), all property, real and personal, that constituted and was derived, directly and indirectly, from gross proceeds traceable to the commission of the offense, including but not limited to the following:

a. **Money Judgment:** A sum of money representing the amount of proceeds obtained as a result of the health care fraud offenses for which the defendant is liable.

b. **Real Property:** All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 260 Fisher Avenue, Brookline, Massachusetts, more particularly described in the Norfolk County (Massachusetts) Registry of Deeds Book 10596, Page 409 as bounded and described as follows:

NORTHEASTERLY by said Fisher Avenue, one hundred and ten (110) feet;

SOUTHEASTERLY in part by land now or lately of Oppenheim and in part by land now or lately of Noonan, one hundred and forty (140) feet; and

SOUTHWESTERLY by land now or lately of Adler, eighty-three (83) feet; and

NORTHWESTERLY by land now or lately of Keller, one hundred and forty (140) feet;

14

Containing 13,658 square feet, more or less, as said parcel is shown on a plan of land entitled

"Plan of Land in Brookline, Mass.," by Ernest W. Bowditch, Engineer, dated October 10, 1894,

and recorded with Norfolk Deeds, Book 726, Page 253.

         c. **Investment Accounts**: All United States currency funds or other monetary

instruments or funds credited to account number XXX-11072, in the name of Dr. A. Razzaque

Ahmed, at Quick & Reilly Brokerage, c/o Banc of America Investment Services, Inc. NY5-513-

15-15, 26 Broadway, New York, NY 10004.

         d. **Bank Accounts**: All United States currency funds or other monetary

instruments or funds credited to:

         (i) account number XXXXXX4640, in the name of Blistering Diseases
Ambulatory Treatment Center, Inc., at Fleet Bank, c/o Bank of America, 175 Federal Street,
Boston, Massachusetts;

         (ii) account number XXXXXX3508, (including without limitation sub-
accounts XXXXXX3508 and XXXXXX3605) in the name of Abdul Razzaque Ahmed, at Fleet
Bank, c/o Bank of America, 175 Federal Street, Boston, Massachusetts;

         (iii) account number XXXXXX6195, in the name of Blistering Diseases
Ambulatory Treatment Ctr, Inc., at Fleet Bank, c/o Bank of America, 175 Federal Street, Boston,
Massachusetts.

    44. If any of the above-described forfeitable property, as a result of any act or omission

of the defendant:

        a. cannot be located upon the exercise of due diligence;

        b. has been transferred or sold to, or deposited with a third party;

        c. has been placed beyond the jurisdiction of the court;

        d. has been substantially diminished in value; or

15

e. has been commingled with other property which cannot be divided without

difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. §853(p) as incorporated by 18 U.S.C.

§982(b), to seek forfeiture of any other property of said defendant up to the value of the

forfeitable property described above, including but not limited to the following:

(i) Quick & Reilly Account A/C #XXX-04071 in the name of Rana Noor
and A. Razzaque Ahmed as Joint Tenants;

(ii) Fleet Bank Account #XXXXXX0172 (including without limitation
subaccount XXXXXX0172) in the name of Razzaque Ahmed or Noor Jahan Begum;

(iii) Fleet Bank Account #XXXXXX4330, in the name of Razzaque
Ahmed;

(iv) Fleet Bank Account #XXXXXX7625, in the name of Center For
Blistering Diseases, Inc.; and

(v) Brookline Savings Bank Account #XXXX7900, in the name of Abdul
R. Ahmed or Rana Noor or Naiyar Jahan.

16

## MAIL FRAUD FORFEITURE ALLEGATION (18 U.S.C. §981(a)(1)(C))

45. Upon conviction of one or more mail fraud offenses alleged in Counts 1 through 4 of this Indictment, defendant

### ABDUL RAZZAQUE AHMED

shall forfeit to the United States pursuant to 18 U.S.C.§982(a)(7), all property, real and personal, that constituted and was derived, directly and indirectly, from gross proceeds traceable to the commission of the offense, including but not limited to the following:

a. **Money Judgment**: A sum of money representing the amount of proceeds obtained as a result of the mail fraud offenses for which the defendant is liable.

b. **Real Property**: All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 260 Fisher Avenue, Brookline, Massachusetts, more particularly described in the Norfolk County (Massachusetts) Registry of Deeds Book 10596, Page 409 as bounded and described as follows:

NORTHEASTERLY by said Fisher Avenue, one hundred and ten (110) feet;

SOUTHEASTERLY in part by land now or lately of Oppenheim and in part by land now or lately of Noonan, one hundred and forty (140) feet; and

SOUTHWESTERLY by land now or lately of Adler, eighty-three (83) feet; and

NORTHWESTERLY by land now or lately of Keller, one hundred and forty (140) feet;

Containing 13,658 square feet, more or less, as said parcel is shown on a plan of land entitled "Plan of Land in Brookline, Mass.," by Ernest W. Bowditch, Engineer, dated October 10, 1894, and recorded with Norfolk Deeds, Book 726, Page 253.

17

    c. **Investment Accounts**: All United States currency funds or other monetary

instruments or funds credited to account number XXX-11072, in the name of Dr. A. Razzaque

Ahmed, at Quick & Reilly Brokerage, c/o Banc of America Investment Services, Inc. NY5-513-

15-15, 26 Broadway, New York, NY 10004.

    d. **Bank Accounts**: All United States currency funds or other monetary

instruments or funds credited to:

        (i) account number XXXXXX4640, in the name of Abdul Razzaque
Ahmed, at Fleet Bank, c/o Bank of American, 175 Federal Street, Boston, Massachusetts;

        (ii) account number XXXXXX3508 (including without limitation sub-
accounts XXXXXX3508 and XXXXXX3605), in the name of Abdul Razzaque Ahmed, at Fleet
Bank;

        (iii) account number XXXXXX6195, in the name of Blistering Diseases
Ambulatory Treatment Ctr, Inc., at Fleet Bank.

    46. If any of the above-described forfeitable property, as a result of any act or omission

of the defendant:

        a. cannot be located upon the exercise of due diligence;

        b. has been transferred or sold to, or deposited with a third party;

        c. has been placed beyond the jurisdiction of the court;

        d. has been substantially diminished in value; or

        e. has been commingled with other property which cannot be divided without

difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. §853(p) as incorporated by 18 U.S.C.

§982(b), to seek forfeiture of any other property of said defendant up to the value of the

forfeitable property described above, including but not limited to the following:

(i) Quick & Reilly Account A/C #XXX-04071 in the name of Rana Noor and A. Razzaque Ahmed as Joint Tenants;

(ii) Fleet Bank Account #XXXXXX0172 (including without limitation subaccount XXXXXX0172) in the name of Razzaque Ahmed or Noor Jahan Begum;

(iii) Fleet Bank Account #XXXXXX4330, in the name of Razzaque Ahmed;

(iv) Fleet Bank Account #XXXXXX7625, in the name of Center For Blistering Diseases, Inc.; and

(v) Brookline Savings Bank Account #XXXX7900, in the name of Abdul R. Ahmed or Rana Noor or Naiyar Jahan.

19

A TRUE BILL

_____
FOREPERSON OF THE GRAND JURY

_____
ASSISTANT U.S. ATTORNEY

DISTRICT OF MASSACHUSETTS; October 10 2007

Returned into the District Court by the Grand Jurors and filed.

_____
DEPUTY CLERK          3:20pm

10/10/07

20

JS 45 (5/97) - (Revised USAO MA 11/15/05)

| Criminal Case Cover Sheet | U.S. District Court - District of Massachusetts |

**Place of Offense:**  Massachusetts    **Category No.** I            **Investigating Agency** HHS-OIG

**City** Boston

**Related Case Information:**

**County** Suffolk

Superseding Ind./ Inf.  X            Case No.  05-CR-10057-RCL
Same Defendant  X            New Defendant
Magistrate Judge Case Number
Search Warrant Case Number
R 20/R 40 from District of

**Defendant Information:**

Defendant Name  Abdul Razzaque Ahmed            Juvenile    ☐ Yes    ☒ No

Alias Name

Address    260 Fisher Avenue, Brookline, MA

Birth date (Year only):    1948   SSN (last 4 #):   5507  Sex  M  Race:    Indian    Nationality:   Naturalized American Native of India

Defense Counsel if known:    Richard Egbert            Address:  99 Summer Street, Boston, MA 02110
**Bar Number:**

U.S. Attorney Information:

**AUSA**   Jeremy M. Sternberg            **Bar Number if**

**Interpreter:**    ☐ Yes  ☒ No        **List language and/or dialect:**

**Victims:** ☐ Yes ☐ N      If Yes, are there multiple crime victims under 18 U.S.C.        ☐ Yes ☐ No

**Matter to be SEALED:**    ☐ Yes    ☒ No

☐ **Warrant Requested**        ☒ **Regular Process**        ☐ **In Custody**

**Location Status:**

**Arrest Date:**

☐ **Already in Federal Custody**                    in
☐ **Already in State**            ☐ **Serving Sentence**  ☐ **Awaiting Trial**
☒ **On Pretrial**    **Ordered**    **Magistrate Judge Dein**    on    **March 21, 2005**

**Charging Document:**    ☐ Complaint    ☐ Information    ☒ Indictment

**Total # of Counts:**    ☐ Petty            ☐ Misdemeano            ☒ Felony   15

Continue on Page 2 for Entry of U.S.C. Citations

☞    I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

Date    10/10/07        Signature of

JS 45 (5/97) - (Revised USAO MA 11/15/05) Page 2 of 2 or Reverse

**District Court Case Number** (To be filled in by deputy) _____

**Name of Defendant**   Abdul Razzaque Ahmed _____

## U.S.C. Citations

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1   18 U.S.C. § 1341 | mail fraud | 1 - 4 |
| Set 2   18 U.S.C. § 1347 | health care fraud | 5 - 11 |
| Set 3   18 U.S.C. § 1518 | obstruction | 12 - 13 |
| Set 4   18 U.S.C. § 1956 | money laundering | 14 - 15 |
| Set 5 | | |
| Set 6 | | |
| Set 7 | | |
| Set 8 | | |
| Set 9 | | |
| Set 10 | | |
| Set 11 | | |
| Set 12 | | |
| Set 13 | | |
| Set 14 | | |
| Set 15 | | |

**ADDITIONAL INFORMATION:**