**U.S. Department of Justice**

*Michael J. Sullivan*
*United States Attorney*
*District of Massachusetts*

---

Main Reception: (617) 748-3100

John Joseph Moakley United States Courthouse
1 Courthouse Way
Suite 9200
Boston, Massachusetts 02210

October 31, 2007

Richard M. Egbert, Esq.
Law Offices of Richard M. Egbert
99 Summer Street
Boston, MA 02110

    Re:    <u>United States v. Abdul Razzaque Ahmed, Criminal No. 05-CR-10057-RCL</u>

Dear Mr. Egbert:

    This letter sets forth the Agreement between the United States Attorney for the District of Massachusetts ("the U.S. Attorney") and your client, Abdul Razzaque Ahmed ("Defendant"), in the above-captioned case. The Agreement is as follows:

    1.    <u>Change of Plea</u>

    At the earliest practicable date but in no event later than November 5, 2007, Defendant shall plead guilty to count 12 of the Superseding Indictment in the above-captioned case. Defendant expressly and unequivocally admits that he committed the crime charged in count 12 of the Superseding Indictment, did so knowingly, intentionally and willfully, and is in fact guilty of that offense. The U.S. Attorney agrees to dismiss counts 1 through 11 and 13 through 15 following imposition of sentence.

    2.    <u>Penalties</u>

    Defendant faces the following maximum penalties on count 12, 18 U.S.C. §1518 (obstruction of criminal investigations of health care offenses): 5 years imprisonment, $250,000 fine, 3 years of supervised release and $100 special assessment.

3. <u>Sentencing Guidelines</u>

The sentence to be imposed upon Defendant is within the discretion of the sentencing court, subject to the statutory maximum penalties set forth above, and the provisions of the Sentencing Reform Act, and the United States Sentencing Guidelines promulgated thereunder. The Sentencing Guidelines are advisory, not mandatory and, as a result, the Court may impose a sentence up to and including the statutory maximum term of imprisonment and statutory maximum fine. In imposing the sentence, the Court must consult and take into account the Sentencing Guidelines, along with the other factors set forth in 18 U.S.C. §3553(a).

The parties agree to take the following positions at sentencing with respect to the application of the Sentencing Guidelines:

   (a)   the applicable guideline for this offense is U.S.S.G. § 2J1.2;

   (b)   pursuant to U.S.S.G. § 2J1.2(c)(1), the offense level calculated under this guideline is the greater of the following:

      (i)   the offense level calculated pursuant to U.S.S.G. §§ 2J1.2(a), 2J1.2(b), or

      (ii)  in cases in which the defendant's offense involved the obstruction of an investigation of a criminal offense, the offense level calculated pursuant to U.S.S.G. § 2X3.1 (Accessory After the Fact);

   (c)   the offense level calculated pursuant to U.S.S.G. § 2X3.1 for Defendant is greater than the offense level calculated pursuant to U.S.S.G. §§ 2J1.2(a), 2J1.2(b);

   (d)   pursuant to U.S.S.G. § 2X3.1, Defendant's offense level is 16, which is calculated as follows:

      (i)   Defendant's offense level is 6 levels lower than the offense level for the underlying offense under criminal investigation;

      (ii)  the underlying offense under criminal investigation had an offense level of 22, which was calculated as follows:

         (A)   defendant's obstruction was directed toward an investigation of a criminal health care fraud offense, which has a base offense level of 6 pursuant to U.S.S.G. § 2F1.1(a);

         (B)   the criminal fraud offense under investigation concerned Defendant's submission of suspicious claims to Medicare for

        IVIG treatments given to his patients which resulted in Medicare paying him $5,418,601.07, thereby increasing the offense level by 14 pursuant to U.S.S.G. § 2F1.1(b)(1)(O);

   (C) the criminal fraud offense under investigation involved more than minimal planning, thereby increasing the offense level by 2 pursuant to U.S.S.G. § 2F1.1(b)(2);

(e) the offense level should be reduced by 3 levels on the basis of Defendant's acceptance of responsibility pursuant to U.S.S.G. §§ 3E1.1(a), (b); and

(f) the total offense level is 13, which, when coupled with a criminal history of I, yields a Sentencing Guideline Range of 12 to 18 months.

  The U.S. Attorney and Defendant agree that there is no basis for a departure from the Sentencing Guidelines.

  The U.S. Attorney and Defendant agree that there is a basis for a deviation from the advisory Sentencing Guidelines pursuant to 18 U.S.C. §3553(a) under the unique facts of this case -- namely, that the fraud loss under investigation of $5,418,601.07 set forth above overstates the seriousness of the offense in the following manner:

   Defendant obstructed a criminal investigation concerning billings for actual medical treatments of intravenous immunoglobulin (IVIG) that Defendant, in the course of his medical practice, administered to Medicare patients who were suffering from an autoimmune blistering skin disease called pemphigoid. A number of these Medicare patients were debilitated from this disease, including some in whom it was causing partial or total blindness. Many of Defendant's Medicare pemphigoid patients who received IVIG treatments from him had not previously responded to other therapies and suffered serious side-effects from those therapies, but benefited from these IVIG treatments, including some whose pemphigoid symptoms were arrested or halted. During the period under investigation (1997-2001), Medicare did not reimburse for IVIG treatments for patients who suffered from pemphigoid; however, in 2002, Medicare revised its policy to cover the administration of IVIG to patients suffering from pemphigoid.

  As set forth in subparagraph (e) above, based on Defendant's prompt acceptance of personal responsibility for the offense of conviction in this case, and information known to the U.S. Attorney at this time, the U.S. Attorney agrees to recommend that the Court reduce by three levels Defendant's Adjusted Offense Level under U.S.S.G §3E1.1.

  The U.S. Attorney specifically reserves the right not to recommend a reduction under U.S.S.G §3E1.1 if, at any time between his execution of this Agreement and sentencing Defendant:

      (i)      Fails to admit a complete factual basis for the plea;

      (ii)     Fails to truthfully admit his conduct in the offenses of conviction;

      (iii)    Falsely denies, or frivolously contests, relevant conduct for which Defendant is accountable under U.S.S.G. §1B1.3;

      (iv)    Fails to provide truthful information about his financial status;

      (v)     Gives false or misleading testimony in any proceeding relating to the criminal conduct charged in this case and any relevant conduct for which Defendant is accountable under U.S.S.G. §1B1.3;

      (vi)    Engages in acts which form a basis for finding that Defendant has obstructed or impeded the administration of justice under U.S.S.G. §3C1.1;

      (vii)   Intentionally fails to appear in Court or violates any condition of release;

      (viii)  Commits a crime;

      (ix)    Transfers any asset protected under any provision of this Agreement; and/or

      (x)     Attempts to withdraw his guilty plea.

Defendant expressly understands that he may not withdraw his plea of guilty if, for any of the reasons listed above, the U.S. Attorney does not recommend that he receive a reduction in Offense Level for acceptance of responsibility.

Defendant expressly understands that, in addition to declining to recommend an acceptance-of-responsibility adjustment, the U.S. Attorney may seek an upward adjustment pursuant to U.S.S.G. §3C1.1 if Defendant obstructs justice after date of this Agreement.

4.    <u>Sentence Recommendation</u>

The parties agree to recommend the following sentence before the District Court:

      (a)    a sentence of probation within Zone B of the Sentencing Guidelines pursuant to U.S.S.G. § 5C1.1(c)(3) that does not include imprisonment or jail pursuant to U.S.S.G. § 5C1.1(e)(1), but does include, at minimum, 6 months home confinement. The U.S. Attorney reserves the right to seek up to an additional 6 months of either community confinement or home confinement, which the defendant reserves the right to contest;

  (b)  that Defendant provide 400 hours of free medical service for a non-profit organization in the Boston area pursuant to U.S.S.G. § 5B1.3(e)(3);

  (c)  that Defendant pay a fine of $20,000;

  (d)  forfeiture as set forth in paragraph 10 below; and

  (e)  that Defendant pay a mandatory special assessment of $100.

  The parties agree that for purposes of restitution there is no victim as contemplated by 18 U.S.C. §3663 for the obstruction crime of conviction, and that therefore the parties will take the position that no restitution is warranted.

  The parties also agree that on or before the date of the Rule 11 hearing, Defendant shall, in writing to the appropriate publishers, in a form previously agreed upon by the parties, retract the following articles co-authored by him and published in 2001: (1) Dermatology, <u>Diagnostic Features of Pemphigus vulgaris in Patients with Bullous Pemphigoid</u>; and (2) Clinical Immunology, <u>Simultaneous Presence of Mucous Membrane Pemphigoid and Pemphigus Vulgaris: Molecular Characterization of Both Autoantibodies</u>.

  Defendant agrees that he will provide to the U.S. Attorney not later than 14 days before sentencing any expert reports, motions, memoranda of law and documentation of any kind on which he intends to rely at sentencing. If Defendant provides such report, motion, memoranda or documentation to the U.S. Attorney less than 14 days prior to sentencing, and the U.S. Attorney moves to continue the sentencing date, Defendant agrees to assent to such motion. Any basis for sentencing with respect to which all expert reports, motions, memoranda of law and documentation have not been provided to the U.S. Attorney at least 14 days before sentencing shall be deemed waived.

  In the event of an appeal from, or collateral challenge to, Defendant's sentence, the U.S. Attorney reserves his right to argue the correctness of Defendant's sentence and the manner in which the District Court determines it.

  5.  <u>Payment of Mandatory Special Assessment</u>

  Defendant agrees to pay the mandatory special assessment to the Clerk of the Court on or before the date of sentencing, unless Defendant establishes to the satisfaction of the Court that Defendant is financially unable to do so.

  6.  <u>Protection of Assets for Payment of Forfeiture</u>

Defendant agrees that amounts payable for forfeiture shall be payable from the monies that are currently subject to the Court's restraining order, and that those monies shall be transferred in accordance with this Agreement. The parties agree to seek appropriate orders from the Court to direct that these transfer take place out of the monies that are currently subject to the Court's restraining order. The United States agrees upon such payment that it will file papers to dissolve the restraining order.

Defendant further agrees that, prior to sentencing, he will truthfully and accurately complete the sworn financial statement enclosed with this Agreement.

7.    Waiver of Rights to Appeal and to Bring Collateral Challenge.

a.    Defendant has conferred with his attorney and understands that he has the right to challenge both his conviction and his sentence on direct appeal. Defendant also understands that he may, in some circumstances, be able to argue that his conviction and/or sentence should be set aside or reduced in a collateral challenge, such as pursuant to a motion under 28 U.S.C. §2255 or 18 U.S.C. §3582(c).

b.    The defendant waives any right he has to challenge his conviction on direct appeal or in collateral challenge.

c.    Defendant agrees that he will not file a direct appeal nor collaterally challenge any sentence of 12 months or less of home or community confinement. This provision is binding even if the Court employs a Guidelines analysis different from that set forth in this Agreement

d.    This Agreement does not affect the rights of the United States as set forth in 18 U.S.C. §3742(b). Defendant expressly acknowledges that he understands the U.S. Attorney has retained his appeal rights.

8.    Other Post-sentence Events

a.    In the event that notwithstanding the waiver provision of ¶7, Defendant appeals or collaterally challenges his sentence, the U.S. Attorney reserves the right to argue the correctness of the sentence imposed by the district court (in addition to arguing that any appeal or collateral challenge is waived as a result of the waiver in ¶7).

b.    If notwithstanding the waiver provision of ¶7, the defendant seeks re-sentencing, he agrees that he will not seek to be re-sentenced with the benefit of any change to the criminal history category that the Court calculated at the time of the defendant's original sentencing. Thus, for example, the defendant will not seek to be re-sentenced based on the set aside of a prior state-court conviction that occurs after sentencing.

c.    In the event of a re-sentencing following an appeal from or collateral challenge to Defendant's sentence, the U.S. Attorney reserves the right to seek a departure from the Sentencing

Guidelines and a sentence outside the Sentencing Guidelines if, and to the extent, necessary to reinstate the sentence advocated by the U.S. Attorney at Defendant's initial sentencing pursuant to this agreement.

    9.    <u>Waiver of Hyde Amendment Claim</u>

Defendant is aware that 111 Stat. 2440, 2520 (1997), the so-called "Hyde Amendment," authorizes courts in criminal cases to award to certain prevailing defendants attorneys' fees and other litigation expenses. In exchange for concessions made by the U.S. Attorney in this Agreement, Defendant voluntarily and knowingly waives any claim that he might assert under this statute based in whole or in part on the U.S. Attorney's agreement in paragraph 1 to dismiss counts 1 through 11 and 13 through 15 of the Superseding Indictment.

    10.    <u>Forfeiture</u>

Defendant will forfeit to the United States any and all assets subject to forfeiture pursuant to 18 U.S.C. § 982(a)(7) as a result of his guilty plea. The assets to be forfeited include, but are not limited to, cash, stocks, bonds, certificates of deposit, tangible and intangible personal property and real estate.

The assets to be forfeited specifically are $2.9 million in United States currency contained in Bank of America account number L71-149659 (the "Currency"). Defendant admits that the Currency is subject to forfeiture on the grounds that it constitutes or was derived, directly or indirectly, from gross proceeds traceable to the commission of the offense charges in Count 12 of the Superseding Indictment. Defendant therefore consents to the forfeiture of all of Defendant's interests in the Currency to United States. The forfeitures may be carried out criminally, civilly, or administratively in the U.S. Attorney's discretion.

Defendant agrees to assist law enforcement agents and government attorneys in locating, liquidating, recovering, returning to the United States, and forfeiting the Currency. Defendant shall promptly take whatever steps are deemed necessary by the U.S. Attorney to transfer possession of, and clear title to, the Currency to the United States. Such steps may include, but are not limited to, executing and surrendering all title documents, and signing consent decrees of forfeiture, deeds, sworn statements relating the factual bases for forfeiture, and any other documents deemed necessary by the U.S. Attorney to complete the criminal, civil, or administrative forfeiture proceedings which may be brought against the assets identified in this section and against any other forfeitable assets involved in or related to any of the criminal acts charged in the indictment.

The forfeitures set forth herein shall not satisfy or offset any fine, restitution, cost of imprisonment, or other penalty imposed upon Defendant, nor shall the forfeitures be used to offset Defendant's tax liability or any other debt owed to the United States.

In addition to all other waivers or releases set forth in this Agreement, Defendant hereby waives any and all claims arising from or relating to the forfeitures set forth in this section,

including, without limitation, any claims arising under the Double Jeopardy Clause of the Fifth Amendment, or the Excessive Fines Clause of the Eighth Amendment, to the United States Constitution, or any other provision of state or federal law.

The United States District Court for the District of Massachusetts shall retain jurisdiction to enforce the provisions of this section.

Defendant hereby waives and releases any and all claims he may have to any vehicles, currency, or other personal property seized by the United States, or seized by any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, and consents to the forfeiture of all such assets. This waiver of claims specifically excludes any funds in excess of the $2.9 million subject to this agreement held in Bank of America account number L71-149659, as which the United States has agreed to move for the release of the Post-Indictment Restraining Order endorsed May 2, 2005, and as to which Defendant hereby waives any and all claims arising from or relating to the seizure, detention, and return of the property.

Defendant agrees to consent to the entry of orders of forfeiture for the Currency, and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the court to advise him of this, pursuant to Rule 11(b)(1)(J), at the time his guilty plea is accepted.

11.  Court Not Bound by Agreement

The sentencing recommendations made by the parties and their respective calculations under the Sentencing Guidelines are not binding upon the U.S. Probation Office or the sentencing judge. Within the maximum sentence which Defendant faces under the applicable law, the sentence to be imposed is within the sole discretion of the sentencing judge. Defendant's plea will be tendered pursuant to Fed. R. Crim. P. 11(c)(1)(B). Defendant may not withdraw his plea of guilty regardless of what sentence is imposed. Nor may Defendant withdraw his plea because the U.S. Probation Office or the sentencing judge declines to follow the Sentencing Guidelines calculations or recommendations of the parties. In the event that the sentencing judge declines to follow the Sentencing Guidelines calculations or recommendations of the U.S. Attorney, the U.S. Attorney reserves the right to defend the sentencing judge's calculations and sentence in any subsequent appeal or collateral challenge.

12.  Civil Liability

By entering into this Agreement, the U.S. Attorney does not compromise any civil liability or administrative remedies, including but not limited to any tax liability, which Defendant may have incurred or may incur as a result of his conduct and his plea of guilty to the charges specified in paragraph 1 of this Agreement.

13. <u>Rejection of Plea by Court</u>

Should Defendant's guilty plea not be accepted by the Court for whatever reason, or later be withdrawn on motion of Defendant, this Agreement shall be null and void at the option of the U.S. Attorney.

14. <u>Breach of Agreement</u>

If the U.S. Attorney determines that Defendant has failed to comply with any provision of this Agreement, has violated any condition of his pretrial release, or has committed any crime following his execution of this Agreement, the U.S. Attorney may, at his sole option, be released from his commitments under this Agreement in their entirety by notifying Defendant, through counsel or otherwise, in writing. The U.S. Attorney may also pursue all remedies available to him under the law, irrespective of whether he elects to be released from his commitments under this Agreement. Further, the U.S. Attorney may pursue any and all charges which have been, or are to be, dismissed pursuant to this Agreement. Defendant recognizes that no such breach by him of an obligation under this Agreement shall give rise to grounds for withdrawal of his guilty plea. Defendant understands that, should he breach any provision of this agreement, the U.S. Attorney will have the right to use against Defendant before any grand jury, at any trial or hearing, or for sentencing purposes, any statements which may be made by him, and any information, materials, documents or objects which may be provided by him to the government subsequent to this Agreement without any limitation. In this regard, Defendant hereby waives any defense to any charges which he might otherwise have under any statute of limitations or the Speedy Trial Act.

15. <u>Who Is Bound By Agreement</u>

This Agreement is limited to the U.S. Attorney for the District of Massachusetts, and cannot and does not bind the Attorney General of the United States or any other federal, state or local prosecutive authorities.

16. <u>Complete Agreement</u>

This letter contains the complete and only agreement between the parties relating to the disposition of this case. No promises, representations or agreements have been made other than those set forth in this letter. This Agreement supersedes prior understandings, if any, of the parties, whether written or oral. This Agreement can be modified or supplemented only in a written memorandum signed by the parties or on the record in court.

If this letter accurately reflects the Agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Agreement below. Please also sign below as Witness. Return the original of this letter to Assistant U.S. Attorney Jeremy Sternberg.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By: *[signature]*
DIANE C. FRENIERE, Chief
White Collar Crime Section

## ACKNOWLEDGMENT OF PLEA AGREEMENT

      I have read this letter in its entirety and discussed it with my attorney. I hereby acknowledge that it fully sets forth my agreement with the United States Attorney's Office for the District of Massachusetts. I further state that no additional promises or representations have been made to me by any official of the United States in connection with this matter. I understand the crimes to which I have agreed to plead guilty, the maximum penalties for those offenses and Sentencing Guideline penalties potentially applicable to them. I am satisfied with the legal representation provided to me by my attorney. We have had sufficient time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Plea Agreement and whether I should go to trial. I am entering into this Agreement freely, voluntarily, and knowingly because I am guilty of the offenses to which I am pleading guilty and I believe this Agreement is in my best interest.

 

_____
Abdul Razzaque Ahmed
Defendant

Date: 11/1/07

      I certify that Defendant's Name has read this Agreement and that we have discussed its meaning. I believe he understands the Agreement and is entering into the Agreement freely, voluntarily and knowingly.

_____
Richard M. Egbert
Attorney for Defendant

Date: 11/1/07

11




Harvard
Medical
School

**A. Razzaque Ahmed, MD**

*Director*
*Center for Blistering Diseases*

<u>**Via Certified Mail / Return Receipt Requested**</u>

November 5, 2007

Andrew Saxon, Editor-in-Chief
Journal, Clinical Immunology
Division of Clinical Immunology
Department of Medicine
UCLA School of Medicine
Los Angeles, CA 90095-1680

Dear Mr. Saxon:

I am co-author of the article entitled "Simultaneous presence of mucous membrane pemphigoid and pemphigus vulgaris: Molecular characterization of both autoantibodies" that was published in your Journal; please reference Clinical Immunology, Vol. 100, No.2, August, pp. 000-000, 2001.

It has recently come to my attention that much of the sera reported in that manuscript contained the DNA of more than one individual. Consequently, much of those results are not reliable. Therefore, I am requesting that my authorship be retracted.

Please note that I am communicating this information to the other co-authors.

Sincerely,

*A Razzaque Ahmed*

A Razzaque Ahmed, M.D.

Cc:    C. Stephen Foster, M.D.
       Ernest H. Beutner, Ph.D., Director
       Richard W. Plunket, Ph.D.
       Kristin M. Leiferman, M.D.
       Naveed Sami, M.D.
       Kailash C. Bhol, Ph.D.

70 Parker Hill Avenue
Suite 208
Boston, MA 02120

(617) 738-1040
fax (617) 754-6434
arahmedmd@msn.com

  

NEW ENGLAND BAPTIST HOSPITAL

Harvard Medical School

A. Razzaque Ahmed, MD

*Director*
*Center for Blistering Diseases*

<u>**Via Certified Mail / Return Receipt Requested**</u>

November 5, 2007

Editorial Office "Dermatology"
S. Karger AG
P.O. Box
CH-4009 Basel, SWITZERLAND
Tel. 011 41 61 306 1356
Fax 011 41 61 306 1434

Dear Editor:

I am co-author of the article entitled "Diagnostic features of pemphigus vulgaris in patients with Bullous pemphigoid" that was published in your Journal; please reference Dermatology 2002;204:108-117.

It has recently come to my attention that much of the sera reported in that manuscript contained the DNA of more than one individual. Consequently, much of those results are not reliable. Therefore, I am requesting that my authorship be retracted.

Please note that I am communicating this information to the other co-authors.

Sincerely,

*A Razzaque Ahmed*

A Razzaque Ahmed, M.D.

Cc:  Ernest H. Beutner, Ph.D., Director
     Richard W. Plunket, Ph.D.
     Kristin M. Leiferman, M.D.
     Naveed Sami, M.D.
     Kailash C. Bhol, Ph.D.

70 Parker Hill Avenue
Suite 208
Boston, MA 02120

(617) 738-1040
fax (617) 754-6434
arahmedmd@msn.com

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
### PRETRIAL SERVICES

**JOHN R. RILEY**
CHIEF PRETRIAL SERVICES OFFICER
UNITED STATES COURTHOUSE
ONE COURTHOUSE WAY, SUITE 1-300
BOSTON, MA 02210
TEL: 617-748-9213
FAX. 617-748-4114

1550 MAIN STREET, RM 534
SPRINGFIELD, MA 01103
TEL: 413-785-0251
FAX: 413-785-0264

595 MAIN STREET, RM 401
WORCESTER, MA 01608
TEL: 508-793-0444
FAX: 508-793-0443

November 5, 2007

Honorable Reginald C. Lindsay,
U.S. District Judge
District of Massachusetts
One Courthouse Way
Boston, MA 02210

**RE: Abdul Razzaque Ahmed**
**CR#05cr10057**
**Release Status Letter**

Dear Judge Lindsay:

Mr. Ahmed is scheduled to appear before Your Honor this morning for a Rule 11 Hearing in the above matter. This letter is being submitted to apprize Your Honor of the defendant's pretrial release status.

Mr. Ahmed has been named in an indictment charging him with counts 1-6: Mail Fraud; counts 7-20: Health Care Fraud; counts 21, 22: Obstruction of Criminal Investigations of Health Care Offenses; and counts 23, 24: Money Laundering.

The defendant appeared before Magistrate Judge Judith G. Dein on March 16, 2005, for an Initial Appearance. At that time, Judge Dein ordered the defendant released on a $5,000,000 unsecured appearance bond with the following conditions.

1. Surrender passport and not to apply for any other
2. Electronic monitoring

The defendant appeared before Magistrate Judge Dein on March 21, 2005 for a Detention Hearing. At that time Judge Dein ordered the defendant released on $5,000,000 unsecured appearance bond with the following conditions:

Honorable Reginald C. Lindsay,
U.S. District Judge                                  - 2 -                                  November 5, 2007

1. Report to Pretrial Services as directed.
2. Surrender passport and do not obtain any new ones
3. Maintain residence at 260 Fisher St., Brookline, MA
4. Travel Restricted to the District of Massachusetts
5. Do not sell/transfer property at 827 Wilson Dr., Santa Monica, CA

The defendant has complied with his conditions of release. A recent records check reveals that there have not been any new arrests or outstanding warrants.

This letter is being submitted for informational purposes only.

Respectively submitted,

Eric G. Gray,
U.S. Pretrial Services Officer Asst.

Reviewed by:

Basil F. Cronin, Supervising
U.S. Pretrial Services Officer

cc:   Jeremy Sternberg, AUSA
      Richard M. Egbert, Counsel for the defendant